UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:14CR246 AGF/NAB |
| v. | ) | |
| | ) | |
| THOMAS ANDERSON, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS BASED ON EVIDENTIARY RECORD**

COMES NOW Defendant Thomas Anderson, Jr. ("Anderson"), by and through his undersigned counsel, and submits this brief in support of his previously-filed motion to dismiss.

**INTRODUCTION**

Anderson was indicted in the United States District Court for the Eastern District of Missouri on August 14, 2014 on charges of conspiracy to distribute and possess with intent to distribute one thousand kilograms of marijuana, in violation of Title 21, United States Code, Section 846, and conspiracy to launder the proceeds of drug trafficking, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1956(h).  (Doc. 2.)  Since his voluntary surrender in August 2014, Anderson has been detained in federal custody in the jail at Warren County, Missouri.

Anderson had been represented in this case since as early as 2012 by Rosenblum, Schwartz, Rogers & Glass, P.C. ("RSRG").  After the case was indicted, Anderson learned that RSRG had also been representing a co-defendant in the case who had not only been proffering against him but who, in fact, testified against him at his detention hearing. RSRG also represented an individual who was a defendant in a separate federal case but who had been

1

providing information to the Government against Anderson.   The Government, in fact, characterized that assistance as "the genesis" of the case against Anderson.  *See* Government's Motion for Inquiry.

Upon learning that RSRG had simultaneously represented him and two witnesses who cooperated against him, Anderson terminated the services of RSRG and retained undersigned counsel in January 2015.   Various allegations of prosecutorial misconduct and ineffective assistance of counsel against Anderson's previous attorneys have been brought to the attention of this Court and a hearing was held on these allegations on June 23 and June 24, 2015.

## SUMMARY OF ARGUMENT

*First*, the prosecution interfered with Anderson's right to have a fair hearing about the Government's misconduct and ineffective assistance of counsel by disclosing at least two sealed pleadings to a material witness in advance of the witness's testimony.  *See* Tr., Vol. II, pg. 101 (Direct Examination of Scott Rosenblum by Justin Gelfand):

> Q: Okay.  Now, you were asked on cross-examination about receiving documents from the United States.  You testified about the motion for inquiry filed by the Government and an addendum filed in this case.
> A: Yes.
> Q: Have you received any other documents that were filed under seal in this case?
> A: I think those are the only things I received.
> Q: And to be crystal clear for the record, the documents that you received that were filed under seal in this case, you received from the United States Government?
> A: Yes.
> Q: Not from us?
> A: No.

A review of the record in this case reveals that the Government never sought leave to disclose sealed pleadings to a witness, this Court never permitted such disclosures, and the Government adamantly opposed the unsealing of other documents properly requested by the defense. This egregious violation of a court order is alone sufficient to warrant dismissal.

Furthermore, it is unknown whether any other witnesses who testified at this hearing had access to sealed documents disclosed by the Government.  The bottom line is that the integrity of this hearing was irreparably compromised when the Government disclosed sealed pleadings to at least one material witness: Scott Rosenblum.

*Second*, in advance of the hearing, the Government extended a plea offer to Anderson threatening Anderson with a life-shattering sentence unless Anderson waived (a) his right to have this hearing; (b) claims of ineffective assistance of counsel; and (c) claims of prosecutorial misconduct.  *See* Exhibit A (Plea Letter).  By requiring a waiver of claims of ineffective assistance of counsel and prosecutorial misconduct, the plea offer blatantly violates the Missouri Rules of Professional Conduct and a written Justice Department policy directly on point.  *See* Exhibit B (Missouri Bar Ethics Opinion) and Exhibit C (Justice Department Policy).  After the defense confronted the Government about the ethical and policy implications of the plea offer, the Government's only response was to re-extend the *same* plea offer with a later deadline. Incredibly, the demand that Anderson waive his right to raise the issues of ineffective assistance of counsel and prosecutorial misconduct remain in the pending plea offer and the Government changed only the deadline for response.

*Third*, there is no dispute that the same law firm represented Anderson when he was the known target of a federal criminal investigation and simultaneously represented the Government's two star cooperating witnesses against Anderson: Corey Nuspl and CS#1.  *See* Tr., Vol. II, pg 37 (Scott Rosenblum admitted RSRG represented Nuspl and Anderson and that the conflict "does not appear that it will be a waivable conflict"); *Id*. at 22 (Scott Rosenblum testified that RSRG represented CS#1 since November 2011); *Id*. at 37 (Scott Rosenblum testified that he continued to represent Anderson for approximately four months *after* identifying

the conflicts of interest at least as late as the detention hearing); *Id*. at 136 (DEA Special Agent Brandon Moles testified that CS#1 "cooperated against Anderson" in approximately "14 separate meetings" with the DEA).

*Fourth*, Assistant United States Attorney John Davis, the prosecutor building a case against Anderson, admits he sat across the table in a proffer with Nuspl and Nuspl's attorney, Joel Schwartz, because "Mr. Schwartz was almost begging me, pleading with me that if an indictment were to come down that Mr. Nuspl not even be included in it because he was such a low-hanging fruit in the investigation." TR., Vol. II at 189.  But Davis testified under oath that he did not know whether Schwartz was representing Nuspl at that time.  *Id*. at 189-190.  When asked why Schwartz spent half a day at the U.S. Attorney's Office in Nuspl's proffer session if he was not representing Nuspl, Davis's only response was, "I don't know what Mr. Schwartz had going on that day." *Id*. at 190.  The lead special agent on this case, DEA Special Agent Brandon Moles, however, testified that Nuspl was represented at the proffer by Joel Schwartz, whom he knew practices with Scott Rosenblum. *Id*. at 141.  Moles also testified in no uncertain terms that Davis knew Nuspl was represented by Schwartz at the proffer. *Id*. at 143 (Q: "John Davis, the Assistant United States Attorney, knew that Corey Nuspl was being represented by Joel Schwartz, correct?"  A: "Yeah, correct").  In fact, Davis's under-oath representation that he did not know Schwartz was representing Nuspl is inconsistent with Davis's own questioning of Nuspl during Anderson's detention hearing and also inconsistent with Davis's own pleading filed in this case.  *See* Government's Response to Motion to Dismiss ("With respect to Nuspl, AUSA Davis knew of his cooperation against defendant Anderson in July 2014, shortly before the Anderson indictment.  At that time, Nuspl was *represented* by a different attorney within RSRG, Joel Schwartz") (emphasis added); *see also United States v. Anderson*, Detention Hearing (Aug.

4

29, 2014), pgs. 63-64 (Davis: "To that end, you and I, *with counsel*, have had multiple – a few conversations where it has been explained to you that if you provide substantial assistance to the Government, the Government will file a motion later on that would allow the sentencing judge to give you a lesser sentence than you might otherwise receive") (emphasis added).

*Fifth*, both before and after the initiation of charges, Anderson was denied his Constitutional right to conflict-free counsel – and the Government exploited it.  The record is clear that, even though both Anderson's lawyer and Davis claim they raised the conflict of interest with the Court, they did not.  *See* Tr., Vol. II at 41 (Scott Rosenblum testified that "Davis, before we even started the [August 27, 2014 detention] hearing, made a reference on the record to the potential conflict.  He wanted to make sure Mr. Anderson was informed of it, as did I"); Defense Exhibit C, Transcript of August 27, 2014 Detention Hearing (reflecting no such record); Tr., Vol. II. at 45 (Rosenblum testified that his review of Defense Exhibit C reveals no such record); *Id*. at 195 (AUSA Davis testified that he has "a memory of counsel and I standing at a podium and [raising the conflict of interest issue], but I can't tell you in front of which Judge it was or when it was").  A review of the record before this Court – including the transcripts from both detention hearings – reveals that neither the prosecutor, nor Rosenblum, raised this issue with the Court even though Rosenblum testified that both he and Davis "wanted to make sure Mr. Anderson was informed of it." TR., Vol. II at 41.  Instead, Davis and Rosenblum continued on with this case for months through critical stages, proceedings, and plea negotiations, until Anderson, on his own volition, decided to retain conflict-free counsel as was always his Constitutional right.

*Sixth*, Anderson's previous counsel was ineffective by committing a crime and subsequently advising Anderson about a plea offer which would have required Anderson to

provide information about his attorney's crime to the Government.  Marc Johnson admitted in no uncertain terms that he brought Anderson's cellular telephone to Anderson at the Warren County Jail and handed it to Anderson for the purpose of obtaining legal fees owed to the RSRG law firm.  *See* TR., Vol. I at 64-69.  However, the same lawyers at the same law firm represented Anderson when Anderson rejected a plea offer with the possibility that Anderson could earn a sentence below the mandatory minimum of ten years *if* Anderson provided information about all known criminal activity.  *See* TR., Vol. II at 87-88.  If an attorney's representation of a client during a post-indictment plea negotiation where the client, to benefit, would have to proffer against his own attorney does not constitute ineffective assistance of counsel under the Sixth Amendment, what possibly could?

The Government labels the remedy Anderson is seeking – dismissal – "extraordinary" and "inappropriate."  (Government's Response to Motion to Dismiss, pg. 1.)  But the record reflects that the Government's conduct in this case has been both extraordinary and inappropriate.  Dismissal is the only just remedy.

## I.   Background

On June 23, 2015 and June 24, 2015, this Court held an evidentiary hearing on the Government's Motion for Inquiry and Defendant Anderson's Motion to Dismiss.  As of the date of the two-day hearing, all pleadings in this case regarding these particular issues – including the Government's Motion for Inquiry and Defendant's Addendum to the Motion for Inquiry – were sealed by this Court.  *See* Docket Sheet.  No party ever sought to unseal any of those pleadings and this Court never issued an order unsealing them.  *Id.*

At the hearing, this Court heard the testimony of Rachel Anderson, four RSRG Attorneys (Marc Johnson, Scott Rosenblum, Adam Fein, and Joel Schwartz), DEA Special Agent Brandon

Moles, Brian Hounsom, and Assistant United States Attorney John Davis.  *See* TR., Vols. I and II.

## II.      Legal Standard

"The right to counsel is the right to effective assistance of counsel." *See Missouri v. Frye*, 132 S.Ct. 1399, at 1404 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). The "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Id*. at 1405 (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). The "negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010).

As the U.S. Supreme Court made clear in 2012, "In today's criminal justice system . . . the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant." *Frye*, 132 S.Ct. at 1407. Thus, "criminal defendants *require* effective counsel during plea negotiations." *Id*. (emphasis added). "*Anything less*…might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." *Id*. at 1407-08 (emphasis added) (internal citations and quotations omitted). The Court, therefore, recognized an absolute Constitutional right under the Sixth Amendment to effective assistance of counsel during the plea negotiation process in a criminal case. *See id*.

That same day in a separate case, the U.S. Supreme Court rejected the Government's argument "that defendants have no right to be offered a plea . . . nor a federal right that the judge accept it" in the Government's unsuccessful attempt to persuade the Court against a meaningful remedy for ineffective assistance of counsel during the plea negotiation process. *See Lafler v. Cooper*, 132 S.Ct. 1376, 1387 (2012) (internal citations and quotations omitted). Citing *Frye*, the

Court emphasized that it "is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process." *Id*. at 1388 (internal citations and quotations omitted). Narrowing in on the remedy question, the Court directed that "Sixth Amendment remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Id*. (internal citations and quotations omitted).  Where ineffective assistance of counsel occurs, the trial court thus has discretion to implement a proper remedy based on the unique facts and circumstances of each case, and the U.S. Supreme Court expressly refused to limit "the boundaries of proper discretion." *Id*. at 1389 ("In implementing a remedy . . ., the trial court must weigh various factors; and the boundaries of proper discretion need not be defined here").

Representing multiple defendants in the same criminal investigation and/or prosecution "does not violate the Sixth Amendment *unless it gives rise to a conflict of interest*." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) (emphasis added).  However, where – as in this case – it does rise to a conflict of interest, the right to effective assistance of counsel is unambiguously violated. *Id*. at 349-50 (explaining that "unconstitutional multiple representation is *never* harmless error" and holding that, even in a habeas corpus context, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation *need not demonstrate prejudice* in order to obtain relief") (emphasis added).

The U.S. Supreme Court provided direction in how to evaluate the adequacy of representation question. *Frye*, 132 S.Ct. at 1408 ("Though the standard for counsel's performance is not determined solely by reference to codified standards of professional practice, these standards can be important guides"). The codified Missouri Rules of Professional Conduct governing attorneys speak forcefully to the circumstances of this case. Where, as here, the

conflict of interest analysis applies to a current client (Anderson), "a lawyer *shall not* represent a client if the representation involves a concurrent conflict of interest" – *i.e.* if either "the representation of one client will be directly adverse to another client" (CS#1 and Nuspl) or if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer" (Anderson, CS#1, and Nuspl).   *See* Missouri Rule of Professional Conduct 4-1.7 (emphasis added); *see also* Missouri Rule of Professional Conduct 4-1.10 ("[W]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 4-1.7 or 4-1.9 [the conflict of interest rules], unless the prohibition is based on a personal interest of the prohibited lawyer and does not represent a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm").

Thus, if this Court finds that Anderson suffered ineffective assistance of counsel, *Lafler* gives this Court the discretion to craft a remedy based on the unique facts and circumstances of this case and there is no limit on "the boundaries of proper discretion." *Lafler*, 132 S.Ct. at 1389. Furthermore, this Court has the discretion in any case to use its "supervisory power to redress conduct not injuring defendants if the conduct is plainly improper, indisputably outrageous, and not redressable through the utilization of less drastic disciplinary tools." *United States v. Flores-Rivera*, 56 F.3d 319, 328, n. 7 (1st Cir. 1995).

Under either standard, dismissal is necessary and appropriate.

### III.    The Government's Disclosure of Sealed Documents to a Material Witness In Advance of the Witness's Testimony Constituted Clear-Cut Government Misconduct and Violated Anderson's Due Process Rights

In its Motion for Inquiry, the Government itself acknowledged in no uncertain terms that

"a determination by the Court of whether any prejudice exists and if so, the remedy therefore, is necessary before the case may proceed to conclusion."  (Government's Motion for Inquiry, pg. 1.)  The Government raised alleged possible misconduct by RSRG attorneys and requested an inquiry by this Court.  (*Id*. at 9.)

At the evidentiary hearing before this Court, Scott Rosenblum testified that the Government disclosed under-seal pleadings to him prior to his testimony:

> Q: Okay.  Now, you were asked on cross-examination about receiving documents from the United States.  You testified about the motion for inquiry filed by the Government and an addendum filed in this case.
> A: Yes.
> Q: Have you received any other documents that were filed under seal in this case?
> A: I think those are the only things I received.
> Q: And to be crystal clear for the record, *the documents that you received that were filed under seal in this case, you received from the United States Government*?
> A: *Yes.*
> Q: Not from us?
> A: No.

Tr., Vol. II, at 101 (Direct Examination of Scott Rosenblum by Justin Gelfand) (emphasis added).

A review of the entire record in this case reveals that these documents were under seal at the time they were disclosed and that the Government never requested – and never received – leave from this Court to disclose sealed documents.  *See* Docket Sheet.

Furthermore, Scott Rosenblum testified that he learned the Government's motion for inquiry "was going to be filed and filed under seal" and that he heard that "from Mr. Callahan." Tr., Vol. II, at 83.  In particular, Rosenblum "learned that this motion would be filed under seal from Mr. Callahan" and learned "the topics that would be addressed in it" *before* the Government filed it with the Court.  *Id*.  These topics included "the cell phone incident."  *Id*.

On cross-examination, the Government did not in any way suggest that the Government had not disclosed sealed pleadings to Rosenblum.  Instead, the Government actually confirmed

that was the case:

> Q: With respect to the motion for inquiry you testified about earlier, you indicated you've reviewed that document; is that correct?
> A: I did yes.

> *Id*. at 92 (Cross-Examination of Scott Rosenblum by Tiffany Becker).

> …

> Q: You indicated that you had read the motion for inquiry, the Government's motion. Were you ever privy to a supplement to that motion that was offered by counsel for Tommy Anderson?"
> A: I read it, and it was offensive.

> *Id*. at 98.

To be clear, this material witness became "privy" to the under-seal pleadings because, as he admitted, the Government disclosed them to him.  *Id*. at 101.  Doing so violated the law and directly obstructed Anderson's right to have a fair hearing – a hearing on the Government's misconduct in this case.  If the tables were turned and if somebody other than a federal prosecutor disclosed a sealed document to a material witness before the Government called the material witness to testify, one can only imagine how the Government would respond.

Indeed, on May 7, 2015, the United States prosecuted a defendant for criminal contempt, 18 U.S.C. § 401, for "disclosing the existence of" a sealed document.  *See United States v. Michelle Lee Davis*, Case Number 8:15-CR-250-PJM (Doc. 1) (May 7, 2015) (D. Md.).  The defendant, an employee of U.S. Probation and Pretrial Services for the District of Maryland, pled guilty to the charge, for which as per the written plea agreement entered into by the defendant and the United States, "the maximum term of imprisonment is life." *Id*. (Doc. 6).  Under the plea agreement, the anticipated advisory Guidelines range calls for a term of imprisonment.  *Id*. Under the written statement of facts justifying the guilty plea, the violation of law for which Ms. Davis was being convicted was the knowing and willful violation of a "sealing order."  *Id*. (Doc.

11

6-1).   In another case in 2010, the United States sought a criminal contempt order for a defendant's alleged disclosure of sealed documents.   *See United States v. Joseph Francis*, Case number 2:08-CR-494-SJO (Doc. 498) (May 21, 2010) (C.D. Cal.).   The United States should not be allowed to *prosecute* and *imprison* people for violating sealing orders while simultaneously violating a sealing order.

Even more, the Government in this particular case fought tooth and nail to prohibit the defense from legally accessing certain sealed documents from the CS#1 case.   That the Government would simultaneously argue in response to a defense motion to unseal that Anderson is not entitled to documents that the defense argued were helpful to the defense while, at the same time, disclosing sealed documents to a material witness without even filing a motion to unseal in the same case is astounding.

Furthermore, the law requires federal prosecutors to *oppose* the sealing of documents unless specified criteria exist, such as where failure to seal the relevant documents will produce a "substantial likelihood of denial of the right of any person to a fair trial."   28 C.F.R. § 50.9(c)(6). Thus, unless the Government's position in this case is that it violated its own legally-binding federal regulations, the Government acknowledged that these documents needed to be sealed to protect Anderson's rights.   That the Government would then disclose them to a material witness before the witness testified is shocking.

## IV.   The Government's Attempt to Prevent this Hearing from Occurring By Extending an Unethical Plea Offer Constituted Misconduct

In advance of the hearing, the Government extended a plea offer to Anderson threatening Anderson with a life-shattering sentence unless Anderson waived his right to have this hearing, and forever waived his legal recourse based on deprivations of his rights to effective assistance of counsel and due process free of Governmental misconduct.

12

Specifically, on May 15, 2015, the Government extended a plea offer which would have required Anderson to sign an appellate waiver regarding allegations of prosecutorial misconduct and allegations of ineffective assistance of counsel.  *See* Exhibit A.  While the Government eventually extended the deadline, the plea offer contained an expiration date of May 21, 2015, which was five days *before* the date on which the evidentiary hearing was scheduled.  *Id*.

The plea offer was unethical on its face.  As the Advisory Committee of the Supreme Court of Missouri explained in no uncertain terms, "It is *not permissible* for defense counsel to advise the defendant regarding waiver of claims of ineffective assistance of counsel by defense counsel." *See* Exhibit B, Advisory Committee of the Supreme Court of Missouri Formal Opinion 126, "Waiver of Post-Conviction Relief," May 19, 2009 (emphasis added). The Committee determined such advice creates a conflict of interest for defense counsel and that "this conflict is not waivable." *Id*.  The Committee went on to explain, "We believe that it is *inconsistent with the prosecutor's duties* as a minister of justice and the duty to refrain from conduct prejudicial to the administration of justice *for a prosecutor to seek a waiver of post-conviction rights based on ineffective assistance of counsel or prosecutorial misconduct*." *Id*. (emphasis added).

In addition to violating the Missouri Rules of Professional Conduct, the plea offer also violated the U.S. Department of Justice's written policy precisely on point. *See* Exhibit C, U.S. Department of Justice Department Policy on Waiver of Claims of Ineffective Assistance of Counsel, Memorandum for All Federal Prosecutors (October 14, 2014) ("Federal prosecutors should no longer seek in plea agreements to have a defendant waive claims of ineffective assistance of counsel whether those claims are made on collateral attack or, when permitted by circuit law, made on direct appeal").

This plea offer was unethical, violated U.S. Department of Justice policy, and

13

underscores the Government's misconduct in this case.

Remarkably, the defense immediately notified the Government of the unethical nature of the plea offer – providing a letter setting out why it was unethical and providing the Missouri Supreme Court ethics opinion and the Justice Department written policy with the letter.  *See* Exhibit D (letter from defense to Government).  The Government's only response was to re-extend the same plea offer with the same unethical provisions – with a new deadline.  *See* Exhibit E (May 19, 2015 Email).  Incredibly, the demand that Anderson waive his right to raise the issues of ineffective assistance of counsel and prosecutorial misconduct remain in the offer and the Government changed only the deadline for response.  *Id*.

The Government should not be allowed to disobey the law and its own written policies and doing so inherently constitutes misconduct.

## V.   Anderson Was Denied the Right to Effective Assistance of Counsel Before the Initiation of Charges and After the Initiation of Charges

Based on the testimony at the evidentiary hearing, there is no dispute whatsoever that the same law firm represented Anderson when he was the known target of a federal criminal investigation and simultaneously represented the Government's two star cooperating witnesses against Anderson: Corey Nuspl and CS#1.  *See* Tr., Vol. II, pg 37 (Scott Rosenblum admitted RSRG represented Nuspl and Anderson and that the conflict "does not appear that it will be a waivable conflict"); *Id*. at 22 (Scott Rosenblum testified that RSRG represented CS#1 since November 2011); *Id*. at 37 (Scott Rosenblum testified that he continued to represent Anderson for approximately four months *after* identifying the conflicts of interest at least as late as the detention hearing).  In fact, Nuspl testified against Anderson at a detention hearing at which Anderson was ordered detained pending trial.  Anderson's counsel, Scott Rosenblum, cross-examined Nuspl but did not ask Nuspl a single question about his criminal record or a single

14

question to attack Nuspl's credibility in any way, shape, or form.  *Id*. at 61.

Before this hearing, the briefing by the parties identified the fact that whether the right to effective assistance extends to the plea negotiation process before charges are initiated is a question of first impression after *Frye* and *Lafler*.   However, the evidence before this Court reveals that Anderson's rights were violated before the indictment was handed down *and* after the indictment was handed down.

The Government extended a plea offer while Rosenblum was counsel.   *See* Defense Exhibit J (plea offer).   The plea anticipated the possibility of a sentence below the statutory mandatory minimum of ten years.   *See id*. at 87-88 (email from AUSA Davis "references a number of potential considerations under which there is a possibility that Mr. Anderson could earn such a sentence [below the mandatory minimum]").   It is undisputed that RSRG represented Anderson "when this offer was not accepted."   *Id*. at 88.   At this time – November 2014 – well after the indictment was handed down and well after the conflicts of interest were recognized by all parties, Anderson had the right to effective assistance of counsel.   *See Padilla*, 559 U.S. at 373 (the "negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel").   At this point, Nuspl may have had conflict-free counsel after RSRG withdrew from his case – but Anderson did not have conflict-free counsel because the conflicts of interest did not somehow disappear simply by withdrawing from one case.   Furthermore, the Government's plea offer was never as favorable to Anderson as it was during this plea negotiation time period.   This *is* the *Frye* and *Lafler* situation – where a defendant was denied the right to effective assistance of conflict-free counsel during the plea negotiation process.

Furthermore, RSRG represented CS#1, Nuspl, and Anderson – all pre-indictment.

During this time period, Anderson maintains that the right to effective assistance of counsel had attached and that he was denied his Sixth Amendment right even before the indictment was handed down in this case.  Anderson acknowledges that this is a question of first impression and maintains that the law provides the right to effective assistance of counsel once a defendant has retained counsel at any stage in the criminal process including a grand jury investigation.

### V.     The Government Committed Misconduct and Violated Anderson's Constitutional Rights By Exploiting RSRG's Conflict of Interest

Assistant United States Attorney John Davis's testimony is telling.

As an initial matter, Davis testified under oath that he did *not* know RSRG represented Anderson before indictment.  *See* TR., Vol. II at 180 ("I don't think they represented Mr. Anderson").  This testimony directly conflicts with the Government's Motion for Inquiry in this case in which the Government expressly stated that RSRG's "*representation* of Anderson was conveyed to the government early in 2014 long before the actual indictments were returned." (Government's Motion for Inquiry, pgs. 2-3) (emphasis added).

Furthermore, Davis testified under oath that he did *not* know that RSRG represented Nuspl before indictment – and, in particular, during a July 2014 proffer session at which Nuspl cooperated against Anderson.   *See* TR., Vol. II at 189-190 (Davis testified, "So for me, in my mind, to think someone is formally being represented – it just hadn't gelled to that point yet"). Davis admitted he sat across the table from Nuspl and RSRG attorney Joel Schwartz at the U.S. Attorney's Office in a proffer and that "Mr. Schwartz was almost begging me, pleading with me that if an indictment were to come down that Mr. Nuspl not even be included in it because he was such a low-hanging fruit in the investigation." *Id*. at 189.  Even though Schwartz apparently begged Davis not to prosecute Nuspl, Davis again testified under oath that he did not know whether Schwartz was representing Nuspl at that time.  *Id*. at 189-190.   When asked why

Schwartz spent half a day at the U.S. Attorney's Office with Davis in Nuspl's proffer session if he was not representing Nuspl, Davis's only response was, "I don't know what Mr. Schwartz had going on that day."  *Id*. at 190.

Davis's testimony that he did not know whether Schwartz was representing Nuspl at the proffer session is inconsistent with Davis's own pleadings in this case.  *See* Government's Response to Motion to Dismiss ("With respect to Nuspl, AUSA Davis knew of his cooperation against defendant Anderson in July 2014, shortly before the Anderson indictment.  At that time, Nuspl was *represented* by a different attorney within RSRG, Joel Schwartz") (emphasis added). In fact, even in the August 29, 2014 detention hearing, Davis questioned Nuspl and asked Nuspl: "To that end, you and I, *with counsel*, have had multiple – a few conversations where it has been explained to you that if you provide substantial assistance to the Government, the Government will file a motion later on that would allow the sentencing judge to give you a lesser sentence than you might otherwise receive."  *United States v. Anderson*, Detention Hearing (Aug. 29, 2014), pgs. 63-64 (emphasis added).

The truth is, AUSA Davis knew exactly who was representing Nuspl (RSRG) and who was representing Anderson (RSRG).  However, instead of raising this issue with the Court, with RSRG, or with Anderson, Davis powered ahead and went to the grand jury with the benefit of Nuspl's cooperation against Anderson.  Even Scott Rosenblum testified that it is common in this District to be told by the U.S. Attorney's Office that there might be a conflict of interest so that the lawyer can evaluate that possibility.  *Id*. at 16-17.  ("Oftentimes, we discuss it with the U.S. Attorney's Office and we rely on their opinions as well as to whether or not there's a potential conflict or a waivable conflict or whether or not a person is going to be a witness in a case and things of that nature").  There is no dispute that RSRG never obtained any sort of waiver, nor is

there any dispute between the parties that this conflict was unwaivable.

In this case, when RSRG either did not figure out the conflict of interest affecting Anderson or chose to proceed with the conflicted representation anyway, the Government was the only party in a position to protect Anderson's Constitutional rights.  Instead of doing the right thing, the Government exploited the situation to obtain an indictment against Anderson – and even after the case was charged, the Government never raised this with the Court.

### VI.    Anderson's Counsel Was Ineffective By Violating a Federal Law Prohibiting an Attorney from Bringing Contraband (a Cellular Telephone) into a Jail

RSRG Attorney Marc Johnson's testimony speaks for itself.   Johnson admitted to meeting Brian Hounsom – who was represented by another attorney and whom Johnson had frequently met in person, called, and texted without his attorney's knowledge – in a hospital parking lot.  TR., Vol. I at 64.  The purpose of the meeting was to obtain "a cell phone" from Hounsom.  *Id*.  Johnson admitted that he "took" the phone "from him," and that he took it with him to Warren County Jail.  *Id*.  Johnson admitted to a federal crime:

> Q: Okay.  Did you take the cell phone into the jail and give it to Tom Anderson during your meeting with him that day?"
> A: Yes.

*Id*. at 65 (Direct Examination of Marc Johnson by William Margulis).

> Q: What did you do with the cell phone in the visitation room?
> A: Gave it to Mr. Anderson.
> Q: And what was the purpose of giving that cell phone to Mr. Anderson at that time?
> A: Mr. Hounsom had informed me that Mr. Anderson owed Mr. Rosenblum money and needed a phone number out of that phone to communicate with that person or to relay it back to Mr. Hounsom so that that person could get money to our office.
> Q: And that was the purpose of you bringing the cell phone into the jail at that time?
> A: Yes.
> Q: And to your knowledge, did Mr. Anderson use that cell phone to make any telephone calls?
> A: Mr. Anderson was not supposed to use the cell phone in the jail. I didn't even know if the cell phone worked. I'm not sure. He put the phone up to his ear. I'm not sure if he spoke with anyone or not.

*Id.* at 68-69.  *See also* 18 U.S.C. § 1791.

Davis acknowledged that Johnson's conduct constituted a violation of federal law if the purpose was to make a phone call.  *Id.* at 215, 217; *see* 18 U.S.C. § 1791 (federal offense not limited to making phone call).  And, as Davis himself eventually conceded, if Johnson violated federal law, to accept the plea offer, Anderson would have had to proffer against his own attorneys.  *Id.* at 218.  The Government's response to this issue at the evidentiary hearing was unbelievable.  Davis was asked by the U.S. Attorney's Office, "Additionally, when you proffer a defendant, are you interested in federal misdemeanors that were directed by that defendant?"  TR., Vol. II at 219.  Davis's response: "I've never been interested in a misdemeanor since I was a misdemeanor prosecutor in 1990."  *Id.*  While Davis's personal lack of interest in misdemeanors is completely irrelevant to the issues before the Court, one can only imagine whether the Government would be okay with a proffer in which a defendant intentionally withheld known federal misdemeanors from the Government.

Additionally, Johnson was ineffective by violating the Missouri Rules of Professional Conduct regarding unauthorized contact with a represented co-defendant.  *See* TR., Vol. I at 55 ("Q: Okay.  And at any time, did you ever have any unauthorized contact with Mr. Hounsom while he was represented by Mr. Shostak?" A: "Yes.").

Davis testified that he "talked to Scott [Rosenblum] individually and asked him the same thing, was he aware of this," referring to Johnson's contact with Hounsom and "[h]e said he was not aware of it and said he would talk to Marc Johnson."  TR., Vol. II at 171.  Davis clarified that his memory is that "Mr. Rosenblum indicated to [him] in [his] telephone conversation that he was not – that he was unaware of Johnson's activities and would speak to him about it."  *Id.*  Mr. Johnson denied having contact with Hounsom when AUSA Davis questioned him about this.  *Id.*

19

at 178.  The Government's Motion for Inquiry sums it up:

> Upon reviewing the jail calls and concluding that Hounsom was conversing with Attorney Marc Johnson regarding this matter, counsel for the government contacted Hounsom's attorney, Burton Shostak. Attorney Shostak advised that he was unaware that his client was speaking with Attorney Johnson and suggested the next course of action would be to inquire of Attorney Scott Rosenblum. Counsel for the government spoke with Mr. Rosenblum who also stated that he was unaware of Johnson's activities and would speak to him about it. Mr. Johnson called counsel for the government later that day and explained that Hounsom repeatedly reached out to him about the case. Mr. Johnson stated he told Hounsom he could not discuss the matter with him.   (Motion for Inquiry, pg. 6.)

Thus, Rosenblum apparently represented to a federal prosecutor that he "was unaware" that Johnson was conversing with Hounsom.  *Id*.  And Johnson apparently represented to a federal prosecutor that the extent of his contact with Hounsom was that "Hounsom repeatedly reached out to him about the case" and "he told Hounsom he could not discuss the matter with him." *Id*.

Reconciling these representations with the evidence before this Court is difficult, if not impossible.  First, Johnson admitted that he regularly communicated with Hounsom by phone and text message, that in just a one-month period there were 62 text messages, 28 of which were initiated by Johnson, and that he met personally with Hounsom in the RSRG offices – all without Housom's attorney's knowledge or consent.  TR., Vol. I at 57-62.  Second, Rosenblum testified about a recorded telephone call in which Rosenblum answered Hounsom's phone on September 9, 2014.  TR., Vol. II at 75-79.  Rosenblum testified that there was a meeting between Hounsom and Johnson at the RSRG office in September 2014 and that he happened to be with Hounsom in Johnson's office when Anderson called Hounsom.  *Id*. at 75-79.  Hounsom testified that the meeting with Rosenblum and Johnson lasted for approximately "ten minutes" before the phone rang and that the three of them were discussing "the indictment in general."  TR., Vol. II at 107.

What the record reflects is that Anderson's attorneys at the time were having

20

unauthorized contact with a represented co-defendant, that one attorney admitted to smuggling a cell phone into jail so Anderson could arrange for the law firm to get paid, and that they were in the position in September 2014 of advising Anderson as to whether to accept a plea deal in which Anderson would have had to proffer against his own attorney(s).  If that is not a conflict of interest and ineffective assistance of counsel during the post-indictment plea negotiation process, what is?

### VII.    Conclusion

Anderson was Constitutionally-entitled to conflict-free counsel and fair treatment by the Government.  Instead, because his prior attorneys and the Government exploited the clear-cut conflicts of interest that arose out of RSRG's simultaneous representation of Anderson, CS#1 and Nuspl, Anderson suffered very real prejudice.  Before indictment, the Government never should have exploited the cooperation by one defendant represented by RSRG against the target of its investigation also represented by RSRG.  After indictment, Anderson forever lost his right to a speedy trial, a detention hearing in which his attorney asked Nuspl a single question about Nuspl's credibility, and effective counsel during the November 2014 plea negotiation process. *See* 18 U.S.C. § 3162(a)(2) (dismissal is *the* remedy for a violation of the Speedy Trial Act).

The only reason Anderson has been deprived of his right to a speedy trial is that he was denied conflict-free counsel and the Government decided to turn a blind eye – apparently because, as AUSA Davis testified, he did not *know* RSRG was represented Anderson or Nuspl. The only reason Anderson is currently detained pending trial is because he was represented through multiple detention hearings by conflicted attorneys and, to this day, he has not had a detention hearing in which he was represented by conflict-free counsel. The only reason the only plea offer that is on the table is unethical on its face is because Anderson was denied the right to

21

conflict-free counsel during plea negotiations before indictment *and* after indictment – where Anderson rejected a plea offer with the possibility that Anderson could earn a sentence below the mandatory minimum of ten years *if* Anderson provided information about all known criminal activity – including criminal activity perpetrated by his attorney(s).  *See* TR., Vol. II at 87.

As Anderson argued before this hearing, this Court's remedy for the serious deprivation of Anderson's Constitutional rights should send a message that this kind of conduct will not be tolerated.  Anything short of dismissal will only send the message to the Government that everything that has happened to Anderson is not a problem.  But it is a problem – a real problem with real-life consequences.  Prosecutors charged with upholding the law should not be permitted to violate it.  A judicial system that guarantees defendants like Anderson the right to a fair hearing to inquire about misconduct by the Government should not put up with a Government which unlawfully discloses sealed pleadings to a material witness so that the witness may prepare for the hearing.  A state bar and a Justice Department that say no to certain kinds of plea offers should not be ignored by a U.S. Attorney's Office required to comply with their shared mandate.

This Court has the power and the responsibility to demand more – and Anderson's rights cannot be restored short of dismissal.  The issues before this Court have substantial ramifications.  If this Court rules as the Government requests and grants no relief to Anderson, this Court will send a loud and clear message that this conduct will be tolerated with no consequences.  If, on the other hand, this Court grants Anderson relief as the law requires, this Court will send a loud and clear message that this conduct cannot – and will not – be tolerated.

As such, Anderson respectfully requests that this Court dismiss this case.

Respectfully Submitted,

*/s/ Arthur Margulis*
*/s/ William Margulis*
*/s/ Justin Gelfand*
Arthur Margulis
William Margulis
Justin Gelfand
Capes, Sokol, Goodman & Sarachan, P.C.
7701 Forysth Blvd., 12th Floor
Clayton, MO 63105
Telephone: 314.721.7701
Facsimile: 314.721.0554
gelfand@capessokol.com
**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

I hereby certify that I filed this pleading electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney and all other counsel in this case.

*/s/ Arthur Margulis*
*/s/ William Margulis*
*/s/ Justin Gelfand*
Arthur Margulis
William Margulis
Justin Gelfand
Capes, Sokol, Goodman & Sarachan, P.C.
7701 Forysth Blvd., 12th Floor
Clayton, MO 63105
Telephone: 314.721.7701
Facsimile: 314.721.0554
gelfand@capessokol.com
*Attorneys for Defendant*