UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CR246 AGF (NAB) |
| | ) | |
| THOMAS GREGORY ANDERSON, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S POST-HEARING BRIEF IN OPPOSITION TO DEFENDANT
ANDERSON'S MOTION TO DISMISS INDICTMENT**

COMES NOW the United States of America, by and through Richard G. Callahan, United

States Attorney for the Eastern District of Missouri, and states as follows:

**INTRODUCTION**

Defendant Thomas Gregory Anderson, Jr. ("Anderson") is charged in a conspiracy to

distribute and possess with intent to distribute 1,000 kilograms or more of marijuana.   This matter

is before the Court on the Government's Motion for Inquiry into Potential Conflicts of Interest

(with Addendum) and Anderson's Motion to Dismiss for Irreparable Denial of Defendant's

Constitutional Right to Effective Assistance of Counsel.   The Court held a hearing on these

motions on June 23 and 24, 2015.   Evidence presented at the hearing established that any potential

conflicts of interest under which Anderson's prior counsel operated have been cured and that he

did not suffer any prejudice as a result.   The evidence further demonstrated that the Government

did not commit any misconduct.   For these reasons, the Government respectfully requests that the

Court find that any alleged conflict of interest has been cured, that no prejudice to Anderson

resulted, and that Anderson's motion to dismiss indictment should be denied.

## SUMMARY OF ARGUMENT

Anderson argues six separate bases in support of his motion to dismiss; however, all six are properly categorized into two primary contentions.   First, Anderson contends that that his constitutional right to effective assistance of counsel was violated by conflicts of interest under which the law firm of Rosenblum Schwartz Rogers and Glass (RSRG) allegedly labored during its representation of Anderson, Nuspl and CS#1.

Second, Anderson alleges Government misconduct by reason of:   (1) its service of a copy of its motion for inquiry, filed under seal, on RSRG; (2) a plea offer conditioned on certain waivers; and (3) the Government's capitalization on RSRG's alleged conflicts of interest.

Anderson's Six Claims

Addressing each basis in turn:

*First*, there is no Court rule or order that prevented the Government from serving a copy of its own motion for inquiry on RSRG.   Indeed, the Government had the right and the duty to investigate the allegations Anderson was making against RSRG, particularly in light of Anderson's claim that it tainted the Government's prosecution of Anderson.   The certificates of service on the Government's motion and the addendum thereto clearly state that they were served on RSRG.

*Second*, although not addressed prior to or during the hearing through the presentation of evidence or testimony, Anderson cites communications from Government counsel that were never introduced into evidence as a basis for dismissing the indictment.   Anderson failed to substantiate his allegations that a proposed plea agreement was unethical.

*Third*, although Anderson did successfully present evidence that RSRG represented Anderson at the same time as it represented Corey Nuspl and CS#1, he was unsuccessful in

showing any Sixth Amendment violation arising from that simultaneous representation.   For the brief time that attorney Joel Schwartz represented Corey Nuspl and attorney Scott Rosenblum represented Anderson after the indictment, Anderson has failed to show any actions taken by RSRG that adversely affected its representation of him.   Nor has Anderson show any improper action by the Government during this period.   As such, he is not entitled to any relief, much less dismissal of the indictment.

*Fourth*, Anderson argues that AUSA Davis was aware that Nuspl was represented by attorney Schwartz while he was cooperating against Anderson, who was represented by attorney Rosenblum.   As the proffer about which Anderson complains occurred prior to the indictment in this case, he fails to raise a cognizable Sixth Amendment claim or show any misconduct.

*Fifth*, Anderson argues that, both pre- and post-indictment, the Government exploited Anderson's denial of his "constitutional right to conflict-free counsel."   It is well established that the constitutional right to effective assistance of counsel does not arise until an indictment is filed. Anderson has made no showing whatsoever that he suffered any adverse effect related to the alleged conflict of interest post-indictment.   Instead, the evidence showed that once the case was indicted, when it came to the attorneys' attention that their firm represented two defendants in the case, attorney Schwartz withdrew and his client obtained conflict-free counsel.   Additionally, the parties contacted the Court to have a conflicts hearing set.   The evidence further demonstrated that attorney Rosenblum notified Anderson of the potential conflict and his right to obtain a new lawyer, an offer Anderson firmly declined.

*Sixth and finally*, Anderson argues that his previous counsel was ineffective by "committing a crime" and "subsequently advising Anderson about a plea offer which would have required Anderson to provide information about his attorney's crime to the Government."   There

was no evidence presented by Anderson that this allegation, even if true, resulted in any prejudice. Thus it cannot be a proper basis for dismissing a valid indictment issued by the Grand Jury.

## SUMMARY OF TESTIMONY PRESENTED AT THE HEARING

At the hearing held June 23 and 24, 2015, the Government indicated that it had no additional information to present on its motion for inquiry. Anderson's counsel proceeded to call eight witnesses to provide testimony related to the issues raised in the motion to dismiss. Anderson himself did not testify. Additionally, no testimony or evidence was adduced related to the plea offers extended by the Government to Anderson's current defense team, Capes Sokol.

A summary of the relevant testimony presented by each witness follows:

Rachel Anderson

Anderson first called Rachel Anderson to the stand. Rachel Anderson is Anderson's sister and co-defendant Brian Hounsom's fiancée. Tr. I at 7-8. She identified the cell phone numbers used by Brian Hounsom and attorney Marc Johnson and testified regarding records demonstrating contact between those two numbers between August 29 and September 28, 2014. Tr. I at 16-18; Defense Exhs. A & B. Rachel Anderson also testified that she met with attorney Marc Johnson and Brian Hounsom three times after the indictment in this case was issued, but did not describe the substance or subject matter of those meetings.[1] Tr. I at 19-20.

Rachel Anderson testified on cross-examination that in mid-September 2014, Johnson told her to look in Anderson's phone and call an 818 phone number, but did not tell her why or what to say. Tr. I at 21-22.

---

[1] When asked if the Rosenblum law firm ever represented Hounsom, Rachel Anderson said no, but that "they would give him legal advice and talk with him about this case," but she did not specify how she knew that or when that took place. *See* Tr. I at 18.

<u>Attorney Marc Johnson</u>

Attorney Marc Johnson testified that he has been employed as an associate at RSRG since 2010. Tr. I at 31. He initially assisted Anderson with a forfeiture issue related to the case in the summer of 2013, but did not personally meet him at that time. Tr. I at 32-33. Around this same time, Johnson assisted Brian Hounsom with an asset forfeiture matter as well, but again did not personally meet with Hounsom at that time. Tr. I at 48. After Anderson was indicted (on August 13, 2014), attorney Johnson became aware that CS#1 was providing information about Anderson. Tr. I at 37. Attorney Johnson never worked on CS#1's case and had no specific knowledge as to any proffers or meetings that CS#1 had with DEA or the Government. Tr. I at 37-39.

Prior to Anderson's indictment, attorney Johnson did not have any knowledge that RSRG was representing Corey Nuspl. Tr. I at 42, 45. He became aware of attorney Joel Schwartz's representation of Nuspl only when the court scheduled a conflict hearing. Tr. I at 42.

After the indictment in August 2014, Johnson was aware that attorney Burt Shostak had entered his appearance on behalf of Brian Hounsom. Tr. I at 48. Hounsom contacted Johnson incessantly on multiple occasions to explore the possibility of Johnson representing him and to relay communications from Anderson. Tr. I at 54. They communicated via phone, text message and in person. Tr. I at 61-62. During their communications, attorney Johnson told Hounsom that he could not have substantive conversations with him about the details of the case, but could do his best to answer generic questions. Tr. I at 57-58. Johnson did not inform attorney Shostak of those communications or obtain his consent to speak with Hounsom. Tr. I at 54-55, 58. In September 2014, Johnson communicated with AUSA John Davis about the possibility of representing Hounsom; however, AUSA Davis believed it would be a conflict. Tr. I at 49-51.

Attorney Johnson visited Anderson on multiple occasions while he was housed at the

Warren County Jail.  Tr. I at 62.  On September 12, 2014, Hounsom gave Johnson Anderson's cell phone.  Tr. I at 64.  Attorney Johnson took it with him to Warren County Jail and gave it to Anderson during a meeting on September 12, 2014 at approximately 12:08 p.m.  Tr. I at 65, 67. The purpose of bringing the cell phone to Anderson was for him to get a phone number out of it that he needed to communicate with a person who could bring money to RSRG's office.  Tr. I at 69.  Anderson was not supposed to use the cell phone to make any phone calls and attorney Johnson did not know if the cell phone had the capacity to make phone calls.  Tr. I at 69. Unbeknownst to Johnson, while Anderson had the phone, he took a "selfie" photograph.  Tr. I at 70, 75; Defense Exhibits F & G.  Attorney Johnson rejected Anderson's proposal that they be "G" together and that Johnson leave the phone with him.  Tr. I at 75.  Attorney Johnson took the phone back to his office and left it at the front desk.  Tr. I at 72, 75.

Attorney Johnson attempted to negotiate a plea deal for Anderson, but there were "hang-ups" on the terms of cooperation.  Tr. I at 73.

Attorney Scott Rosenblum

The president and principal founding member of RSRG, Attorney Scott Rosenblum has been a defense attorney for 32 years.  Tr. II at 9-10.  Joel Schwartz and Adam Fein are his law partners and Marc Johnson is an associate at his firm and they have all been practicing together since at least 2011.  Tr. II at 11-12.  In order to detect possible conflicts of interest when taking on a new client, RSRG would look in "Time Matters," informally ask around the office, or be informed by the U.S. Attorney's Office of possible issues.  Tr. II at 15-17.

Attorney Rosenblum initially represented Anderson in 2008 in connection with a criminal charge in Kansas and the matter was resolved.  Tr. II at 18.  In 2011, attorneys Rosenblum and Fein began representing CS#1.  Tr. II at 20.  CS#1's sentencing was continued for almost a year

during which time RSRG requested six continuances so CS#1 could cooperate with DEA and earn a 5K1.1 motion.   Tr. II at 23.   Attorney Rosenblum set up the cooperation, but was unaware that CS#1 was providing information regarding Anderson.   Tr. II at 25-26.   At sentencing, Rosenblum represented CS#1 and he received a reduction in sentencing pursuant to § 5K1.1.   Tr. II at 26.

Attorney Rosenblum began representing Anderson in this case in November 2012.   TR. II at 31-32.   Attorney Rosenblum was out of town when the indictment came down on August 13, 2014, and it was only thereafter that he learned that attorney Joel Schwartz was representing co-defendant Corey Nuspl.   Tr. II at 35.   Attorney Rosenblum told attorney Schwartz that he should get off the case and attorney Schwartz almost immediately did so.   Tr. II at 37, 96.   When Corey Nuspl testified against Anderson at the second part of the detention hearing, Nuspl had attorney Patrick Kilgore representing him.   Tr. II at 41.   Prior to that hearing, attorney Rosenblum informed Anderson that he did not know that Schwartz was representing Nuspl and that Rosenblum was unsure as to how Nuspl played into the case.   In light of those facts, Rosenblum told Anderson he had a right to ask Rosenblum to withdraw.   Tr. II at 42-43. Anderson responded that he did not want to lose Rosenblum as a lawyer.   Tr. II at 42.

Nuspl testified against Anderson on the second day of the detention hearing and talked about Anderson having a gun in a gym bag.   Tr. II at 56.   Rosenblum did not cross examine Nuspl on his criminal history, but the fact that Nuspl was cooperating was discussed at the hearing and Rosenblum believed he did a very effective job on the cross examination.   Tr. II at 58-62. Rosenblum never looked at any privileged information regarding Nuspl before cross examining him.   Tr. II at 62.

Rosenblum represented Anderson during the initial appearance and arraignment and

waived speedy trial rights to obtain more time to review the extensive discovery in the case.   Tr. II at 65.

Brian Hounsom appeared at RSRG's offices with Anderson's family on multiple occasions.   On one occasion, Hounsom was talking to Anderson on the phone.   Tr. II at 68-69. Rosenblum took the phone and reprimanded Anderson for talking on the phone against advice of counsel.   Tr. II at 69.   When Hounsom complained to Rosenblum about attorney Shostak's representation, Rosenblum gave him two other lawyers' names, but did not talk to him about his case.   Tr. II at 69.   Rosenblum did not tell Shostak about any contact between Marc Johnson and Brian Hounsom, but tell Shostak that Hounsom visited RSRG's offices frequently and was unhappy with Shostak's representation.   Tr. II at 71.

At one point, AUSA Davis contacted Rosenblum about contacts between Marc Johnson and Brian Hounsom, Tr. II at 73-74.   Prior to the motion for inquiry being filed, Rosenblum heard from U.S. Attorney Callahan and learned the subject matter of the motion, including the cellular telephone at Warren County Jail.   Tr. II at 82-83.   Rosenblum, who had read the Government's motion for inquiry and the addendum thereto, testified that AUSA Davis's summary of their communication was accurate.   Tr. II at 74, 101.   Rosenblum had no knowledge of any sort of plan for attorney Johnson or anyone from RSRG to bring a cellular telephone to Anderson in jail. Tr. II at 81.

With respect to proffer and plea negotiations, Rosenblum testified that the Government's proposed proffer agreement terms were unacceptable to Anderson.   Tr. II at 89.   Additionally, Rosenblum testified that AUSA Davis informed him that, cooperation or not, the Government would not agree to a sentence less than the 10-year mandatory minimum.   Tr. II at 90.

<u>Brian Hounsom</u>

Brian Hounsom is a co-defendant of Anderson's in the instant case. Tr. II at 102-03. Hounsom is friends with Anderson and is in a relationship with his sister, Rachel. Tr. II at 104. In August 2014, Hounsom was represented by attorney Burt Shostak. Tr. II at 104. Prior to the indictment, Hounsom was represented by RSRG in a forfeiture matter. Tr. II at 105. Hounsom met with Anderson's attorneys, Rosenblum and Johnson, during which time they discussed keeping Anderson off the recorded phone lines at the jail. Tr. II at 106-08. Hounsom testified that on other occasions, he talked to attorney Johnson about the case and how an indictment works. Tr. II at 109. During their "two to five" meetings, Hounsom said he discussed the case with Johnson, but that Johnson "kept it general really." Tr. II at 111.

Hounsom brought Johnson the cellular telephone that was subsequently taken to the Warren County Jail. Tr. at 111-12. Hounsom testified that the plan was for "Tommy to make a phone call and get money for his attorneys," but did not indicate whose plan that was or to whom it was communicated. Tr. II at 112. Attorney Johnson asked Hounsom to call a California area code on a prepaid phone, but did not tell him what he was supposed to say. Tr. II at 114.

Attorney Johnson never represented Hounsom in this case. Tr. II at 115.

<u>Attorney Adam Fein</u>

Attorney Adam Fein has been a partner at RSRG for six years. Tr. II at 119. Attorney Fein represented CS#1 beginning in 2011 through the sentencing hearing in 2012. Tr. II at 122. It came to Fein's attention much later that CS#1 cooperated against Anderson. Tr. II at 122. At no time during his representation of CS#1 was Fein present when CS#1 talked about Anderson. Tr. II at 128.

On August 20, 2014, Fein's appearance was entered as an attorney of record for Anderson.

Tr. II at 123.   Fein's representation of Anderson was limited to assisting with self-surrender, initial appearance and possibly arraignment.   Tr. II at 128.   He did not review discovery in the Anderson case.   Tr. II at 129.

DEA Special Agent Brandon Moles

Brandon Moles has been a special agent with the Drug Enforcement Administration for approximately 10 years and was the lead agent in the investigation targeting Anderson.   Tr. II at 134.   In that capacity, SA Moles personally participated in a number of interviews with CS#1 during which CS#1 provided information regarding Anderson.   No Assistant United States Attorneys were present at any of the interviews of CS#1 that he attended.   Tr. II at 134, 146.

SA Moles was present for a proffer interview with Corey Nuspl on July 15, 2014 at which attorney Schwartz was also present.   Tr. II at 140-41.   During the interview, Nuspl provided information regarding Anderson.   Tr. II at 142.   SA Moles testified before the grand jury regarding information provided by CS#1 and Nuspl, but also provided a great deal of other information in securing the indictment.   Tr. II at 144-46.

Attorney Joel Schwartz

Joel Schwartz is an attorney and has been a partner at RSRG since 1999.   Tr. II at 148-49. Schwartz represented Nuspl briefly prior to the indictment in this case.   Tr. II at 152.   At the onset of the representation, Schwartz did not know who Anderson was.   Tr. II at 152.   Schwartz represented Nuspl during one proffer interview on July 15, 2014.   Tr. II at 153.   At some point, AUSA Davis brought up a potential conflict that Schwartz discussed with Nuspl, but Nuspl wanted to waive the conflict and have Schwartz continue to represent him.   Tr. II at 156.

Schwartz entered his appearance on behalf of co-defendant Corey Nuspl on August 20, 2014.   Tr. II at 151.   Once it became clear that there was an unwaivable conflict, Schwartz ceased

representing Nuspl. Tr. II at 160. Schwartz was not present at any court proceeding during which Anderson was present and specifically was not present at either the August 27 or 29, 2014 detention hearings. Tr. II at 159.

Even when he was no longer on the case, attorney Schwartz still received notice of motions filed under seal in the case, though not the motions themselves. Tr. II at 162.

<u>Assistant United States Attorney John Davis</u>

John Davis has been employed by the U.S. Attorney's Office since September 1997 and is lead counsel in the Anderson case. Tr. II at 164. On February 25, 2015, AUSA Davis and other members of the U.S. Attorney's Office met with William Margulis, Arthur Margulis and Justin Gelfand, then attorneys for Anderson, to discuss issues related to the cell phone and potential conflicts of interest. Tr. II at 167-68. AUSA Davis conducted inquiries regarding alleged unauthorized conduct between Brian Hounsom and attorney Marc Johnson. He initially contacted attorney Burt Shostak who relayed that he was unaware of any such contact and then contacted attorney Rosenblum. Tr. II at 169-72. Rosenblum said he was unaware of any unauthorized contact and that he would call AUSA Davis back. Tr. II at 176. Marc Johnson contacted AUSA Davis and told him the contact was a result of Hounsom doggedly pursuing Johnson's representation. Tr. II at 176-77.

As to the cell phone, AUSA Davis contacted Warren County Jail for a record of attorneys coming for visitation and concluded that Marc Johnson brought the cell phone to Anderson on September 12, 2014. Tr. II at 178-79.

Rosenblum first contacted AUSA Davis about Anderson after the execution of search warrants in November 2012 and they had conversations about Anderson thereafter. Tr. II at 181, 184. Following Anderson's indictment, Rosenblum asked AUSA Davis whether CS#1 was a

particular person.   It was only then that AUSA Davis learned CS#1's identity.   Tr. II at 185.

AUSA Davis was present for a proffer interview of Corey Nuspl on July 15, 2014.   Tr. II at 188-89.   Attorney Joel Schwartz, who accompanied Nuspl to the proffer, was pleading with AUSA Davis not to include Nuspl in any upcoming indictment.   Tr. II at 189.   At that time, AUSA was juggling 30 potential defendants and no conclusive determination had been made as to whom the Government would ask the Grand Jury to indict.   Tr. II at 189-90.

As to the potential conflict of interest, what AUSA Davis typically does is advise counsel of the potential problem.   In this particular case, it became obvious after indictment that RSRG could not continue representing both Nuspl and Anderson at the detention hearing.   Tr. II at 194. On August 29, 2014, the same day as the second day of the detention hearing, a conflicts hearing was set by the court for September 5, 2014; however, Patrick Kilgore began representing Nuspl on August 27, 2014.   Tr. II at 203-04.

Post-indictment, AUSA Davis had conversations regarding the best possible plea offer the Government could make and AUSA Davis responded that it would never be lower than 120 months.   Tr. II at 207.   The parties explored the possibility of Anderson engaging in a proffer interview, but were unsuccessful in negotiating the terms.   Tr. II at 208-09; Exh. J.

## ARGUMENT

The evidence presented at the hearing failed to establish that Anderson's constitutional rights were violated.   The vast majority of RSRG's alleged conflicts of interest took place pre-indictment, before Anderson's right to effective assistance of counsel attached.   Regardless, Anderson has failed to show any adverse impact or prejudice to him as a result of the alleged conflicts.

With respect to the allegations of Government misconduct, Anderson has wholly failed to

demonstrate any wrongdoing, outrageous or otherwise.   The Government had no duty to inquire

into the conflicts Anderson alleges.   The Government did nothing improper as to sealed filings.

Moreover, there was nothing improper about the proposed plea agreement.   As such, Anderson is

not entitled to any relief he has not already been granted.

## I.    Applicable Law

The Government previously filed a detailed response to Anderson's motion to dismiss

indictment which fully sets forth the law applicable to these issues.   That response is incorporated

by reference herein.   A summary appears below.

### A.    The Sixth Amendment Right to Counsel Does Not Attach Before the Initiation of Criminal Proceedings

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal

prosecutions, the ***accused*** shall enjoy the right . . . to have the Assistance of Counsel for his

defense." U.S. Const. amend VI (emphasis added).   It is axiomatic that the Sixth Amendment

right to counsel does not attach until "the initiation of adversary judicial criminal

proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or

arraignment."   *United States v. Morriss*, 531 F.3d 591, 593 (8th Cir. 2008) (quoting *Kirby v.*

*Illinois*, 406 U.S. 682, 689 (1972)); *Texas v. Cobb*, 532 U.S. 162, 166 (2001); *Moran v. Burbine*,

475 U.S. 412, 428 (1986) (holding that Sixth Amendment right to counsel does not attach until

"the government's role shifts from investigation to accusation").   As recently as 2008, the

Supreme Court has upheld this principle and reiterated that the right to counsel does not attach

until a prosecution is commenced.   *See Rothgery v. Gillespie County*, 554 U.S. 191, 194 (2008)

(holding that although involvement of a prosecutor is not required for attachment of the right to

counsel, "a criminal defendant's initial appearance before a judicial officer, where he learns the

charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel").

### B.   Even If a Conflict of Interest Exists, a Defendant Must Show Adverse Actions or That the Conflict of Interest Affected the Representation

In *Cuyler v. Sullivan*, the Supreme Court held that in cases involving an attorney's concurrent representation of defendants, a defendant need not demonstrate prejudice in order to obtain relief only where they can show "that a conflict of interest ***actually affected the adequacy of his representation.***" 446 U.S. 335, 349-50 (1980) (emphasis added).   "The purpose of the *Sullivan* rule is not to enforce the Canons of Legal Ethics, and there is no *per se* rule that a defendant who is advised by the same attorney as a co-defendant is deprived of his right to effective assistance of counsel under the Sixth Amendment."   *Plunk v. Hobbs*, 766 F.3d 760, 764 (8th Cir. 2014) (internal citations omitted) (citing *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978)). As the Supreme Court clarified, seven years after *Sullivan*:

> We have never held that the possibility of prejudice that inheres in almost every instance of multiple representation justifies the adoption of an inflexible rule that would presume prejudice in all such cases . . . . Instead, we presume prejudice only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance.

*Burger v. Kemp*, 483 U.S. 776, 783 (1987) (quoting *Strickland v. United States*, 466 U.S. 668, 692 (1984) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)).   Thus, Anderson bears the burden of showing that an actual conflict exists, specifically one that adversely affects counsel's performance.   *Morelos v. United States*, 709 F.3d 1246, 1252 (8th Cir. 2013).

"To prove a conflict produced an adverse effect, a defendant must 'identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, *and* establish that

defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.'"
*Morelos*, 709 F.3d at 152 (quoting *Winfield v. Roper*, 460 F.3d 1026, 1039 (8th Cir. 2006)
(emphasis added)).

**C.      For Dismissal to be Warranted, There Must be a Showing of Outrageous Government Conduct**

In order for the Court to dismiss an indictment under its supervisory power, it must find government misconduct in violating a defendant's recognized rights or engaging in illegal conduct that must be deterred.   *United States v. Black*, 733 F.3d 294, 310 n.12 (9th Cir. 2013); *see also United States v. Williams*, No. 04-313, 2007 WL 518856 at *3 (D. Minn. Feb. 15, 2007) ("[A[lleged deficiencies by [defendant's] private counsel, without the allegation of any irregularity by a Government actor, are not an appropriate impetus to dismiss the indictment against [the defendant]") (citing *United States v. Williams*, 372 F.3d 96, 111 (2d Cir. 2004)).

The level of outrageousness needed to prove a due process violation is high. Outrageous government conduct requires dismissal of a charge "only if it falls within the narrow band of the most intolerable government conduct." *United States v. Bugh*, 701 F.3d 888, 894 (8th Cir. 2012) (quoting *United States v. Morse*, 613 F.3d 787, 792-93 (8th Cir. 2010)); *see also United States v. Horton*, 756 F.3d 569, 576 (8th Cir. 2014); *United States v. King*, 351 F.3d 859, 867 (8th Cir. 2003).   The conduct "must shock the conscience of the court," *Horton*, 756 F.3d at 576 (quoting *United States v. Pardue*, 983 F.2d 842, 847 (8th Cir. 1993)), or violate "that fundamental fairness, shocking the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment," *Bugh*, 701 F.3d at 894 (quoting *United States v. Russell*, 411 U.S. 423, 432 (1973)).

The standard is so high that the Ninth Circuit noted as recently as October 2013 that were only two reported decisions in which federal appellate courts have reversed convictions under this

doctrine, citing a 1978 Third Circuit case and a 1971 Ninth Circuit case. *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013).

## II.  Application

### A.    The Government Committed No Misconduct in Connection with Pleadings Filed Under Seal and Anderson Suffered No Prejudice as a Result

Anderson first claims that the disclosure of two "sealed pleadings" to attorney Rosenblum interfered with his right to a fair hearing.   Anderson ignores the nature of the Government's motion for inquiry, the certificates of service on the motion and the addendum thereto and the Government's right to investigate allegations of a past conflict of interest that may affect an ongoing prosecution.

In February 2015, Anderson's current counsel, Capes Sokol, approached the Government with a claim of misconduct by RSRG.   Tr. II at 167-68.   Before presenting the matter to the Court, however, the Government also informed attorney Rosenblum of the claimed misconduct. Tr. II at 83.   The Government certainly had the right and the responsibility to investigate the claimed misconduct prior to making a filing with the Court to ascertain what additional facts might be relevant or should be brought to the Court's attention.

On March 27, 2015, the Government filed its motion for inquiry. Doc. 303.   The Court did not order this filing be made under seal.   In fact, the Government could have filed this motion as a publicly accessible document.   The document was "filed under seal" by the Government because it contained some unsubstantiated claims made by Anderson and Capes Sokol, the veracity of which the Government could not vouch for.   Additionally, the motion contained the identity of a cooperator as well as information related to attorney-client relationships. The certificate of service on the Government's motion clearly states, "A copy was sent via electronic mail to:   Attorneys

Patrick Kilgore, Scott Rosenblum, Adam Fein, Marc Johnson, Arthur Margulis, William Margulis, Justin Gelfand and Burt Shostak." Motion for Inquiry, at 10. This list is comprehensive of all of the attorneys potentially affected by the motion.[2]

On April 8, 2015, Capes Sokol filed "Defendant Anderson's Addendum to Government's Previously Filed Motion for Inquiry into Potential Conflicts of Interest." Doc. 314. While the filing contained the notation "filed under seal" in the caption, attorney Arthur Margulis's certificate of service read, "I hereby certify that on April 7, 2015, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney and all other counsel in this case." Addendum to Motion for Inquiry at 2. As was established at the hearing, even lawyers no longer actively representing a defendant in the case receive notification of filings, even those made under seal. Tr. II at 162. As such, and in light of the specific certificate of service on the Government's motion for inquiry, it was reasonable for the Government to assume that the affected parties and attorneys had been served with the addendum. Additionally, this was an "addendum" to a pleading with which these attorneys had specifically been served.

Anderson argues that the Government's disclosure of its own motion and Anderson's addendum to that motion to attorney Rosenblum in advance of his testimony interfered with Anderson's right to a fair hearing and violated a court order.[3] Anderson Brief at 2. There are at least two serious problems with these contentions.

First, Anderson cannot show that there was any interference with his right to a fair hearing

---

[2] Joel Schwartz was inadvertently excluded from the certificate of service, but he was also an individual affected by the inquiry motion and should have received a copy electronically as well.

[3] Anderson further states, "it is unknown whether any other witnesses who testified at this hearing had access to sealed documents disclosed by the Government." Anderson Brief at 3. Anderson's counsel asked several of the witnesses about these pleadings during the hearing and nothing impeded them from asking every witness.

because, at the time of the disclosure, Anderson had not filed any motion that might have been affected by the disclosure. The only matter then pending before the Court was the Government's own motion for inquiry. Anderson did not file his motion to dismiss the indictment until April 9, 2015, a day after Anderson filed the addendum.   Doc. 315.   Disclosure of pleadings related to the motion for inquiry to an attorney whose conduct was within the scope of the inquiry could not have interfered with a right to a hearing on a motion that had not yet been filed.

Second, contrary to Anderson's suggestion that the disclosure was an "egregious violation of a court order," there was no "court order" requiring that the Government's motion or Anderson's addendum be kept from attorney Rosenblum; each party simply made its filing as a "sealed document." The Government filed its motion as a "sealed document" not because any court order or rule required it—and certainly not because it wished the attorneys whose conduct was at issue to be ignorant of the allegations—but on its own accord in order to prevent public disclosure of unsubstantiated allegations, information about individuals cooperating in the Government's investigation, and matters involving attorney-client relationships. Likewise, Anderson's addendum raised serious criminal allegations against RSRG. The Government had a duty to investigate those allegations as part of its motion for inquiry, which required disclosure of the allegations themselves to the individuals against whom they had been made. Where no court order prevented the disclosure, and where both parties' certificates of service indicated that the disclosure had been or would be made, the Government had no reason to doubt that it could make the disclosure in furtherance of that investigation.

In support of his claim that disclosure of these pleadings is sufficient to warrant dismissal of the indictment, Anderson argues that the Government has pursued criminal contempt orders for disclosing sealed documents in other cases and has sought to maintain the seal of documents

related to CS#1 in this case.   The situation is dramatically different here.   The Government had a responsibility to conduct an investigation of the allegations made by Capes Sokol related to Anderson's case.   The only way to do that was inquire of the accused attorneys.   The Government expressly acknowledged in the certificate of service on the motion for inquiry that it served its motion on those attorneys.   The addendum to the motion filed by Capes Sokol indicated service on all attorneys of record.   While the Government did in fact oppose the disclosure of sealed documents related to CS#1 in this case on policy grounds, it did not oppose an in camera review of those documents or the disclosure of any relevant information therein to the defense. For reasons of confidentiality and safety, PSRs and § 5K1.1 substantial assistance motions have enjoyed longstanding and well-deserved protections.   *See* E.D. Mo. L.R. 83-13.05(B)(1) (requiring PSRs and other sentencing documents be filed under seal).   There is no similar policy argument which would prevent disclosure of the Government's own motion to a limited number attorneys affected by the motion.

Additionally, while Anderson baldly claims that disclosure of these documents to the affected attorneys interfered with his right to a fair hearing, he articulates no specific way in which the disclosure hampered his prosecution of his motion to dismiss.   The Government did nothing improper with these pleadings, much less something that rises to the level of misconduct warranting dismissal of the indictment.   Anderson's claim of prejudice is unsubstantiated and without merit.

    **B.**    **The Government Committed No Misconduct in Connection with its Plea Offer to Anderson**

In his second argument, Anderson cites a plea offer by the Government to his defense team on May 15, 2015 as a basis for dismissal.   Despite the fact that this communication was made well

in advance of the June 23, 2015 hearing, Anderson's defense team did not file a supplement to its motion to dismiss. Nor did the defense raise the issue to the Court in any way before the hearing. Despite AUSA Davis's appearance as a witness, Anderson's defense team asked him no questions whatsoever and elicited no testimony from any witness regarding the plea offer. The defense team also failed to offer the exhibits it now attaches to its motion as evidence at the hearing. Accordingly, Anderson's defense team deprived the Government of an opportunity to respond to these allegations until after the evidence had closed.

Now, after the hearing and for the first time in post-hearing briefing, Anderson attaches documents not admitted into evidence at the hearing as exhibits and alleges that the Government levied an unethical plea offer which requires dismissal of the indictment. This allegation is unsubstantiated by the record and wholly false.

Exhibit A to Anderson's post-hearing brief is an email sent by AUSA Davis to Anderson's current defense counsel. Therein, the Government indicates that if Anderson wished to plead guilty to Count I prior to the June 23 hearing, it would attempt to fashion a plea agreement whereby he would receive a 120-month sentence. The email further explains that, in the event Anderson were convicted at trial or pled without a plea agreement, that the Government would pursue various enhancements in the offense level pursuant to the sentencing guidelines, which would result in a much higher sentencing range, 360 months to life. These enhancements included: a two-level increase for possession of firearms in connection with the offense; a two-level increase for the use of violence; a four-level increase for Anderson's role as an organizer and leader; a two-level increase for having committed the offense as a part of a pattern of criminal conduct engaged in as livelihood and a two-level increase as a result of the money laundering. Each of these enhancements is supported by evidence and applicable to Anderson's case. AUSA

Davis's email further states that any plea agreement would contain a detailed appellate waiver *of matters set forth in Anderson's motion to dismiss*, including ineffective assistance of counsel.

Anderson attacks the Government's offer on two grounds: (1) that it is unduly coercive in threatening him with a life sentence; and (2) that it is unethical because it seeks a waiver of claims of ineffective assistance of counsel and prosecutorial misconduct claims set forth in Anderson's motion to dismiss. There is nothing unfairly coercive about the proposed agreement. The enhancements pointed to by AUSA Davis are supported by the evidence and thus legitimately faced by Anderson if he pursues trial or a contested sentencing hearing. The fact that Anderson's own conduct put him in the position of receiving a "life-shattering" sentence is not the fault of the Government. There is also absolutely nothing unethical about the plea offer's proposed appellate waiver. The Government asked Anderson to waive ineffective assistance of counsel claims related only to his *prior* counsel by specifying that the appellate waiver applied to matters in Anderson's motion to dismiss.

### 1. The Plea Offer Was Generous, Not Unfairly Coercive

Courts have repeatedly recognized the prevalence and benefits of plea agreements:

> Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pre-trial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.

*Santobello v. New York*, 404 U.S. 257, 261 (1971). The fact that Anderson faces the possibility of a much higher sentence in the event he does not accept a plea agreement does not make the Government's offer unduly coercive:

For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious—his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated. For the State there are also advantages—the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof. It is this mutuality of advantage that perhaps explains the fact that at present well *over three-fourths of the criminal convictions in this country rest on pleas of guilty, a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury.*

*Brady v. United States*, 397 U.S. 742, 752 (1970) (internal citations omitted) (emphasis added).

Here, the Government was willing to craft a plea agreement by which Anderson could be sentenced to as low as 120 months, the statutory mandatory minimum and one third of the sentence at the low end of the guideline range.   This does not change the fact that under the circumstances of the case, he risks a sentence as high as 360 months to life under the sentencing guidelines.   The Government is not making empty threats to pursue the enumerated guideline enhancements. Instead, the Government has extended a generous plea offer.   There is simply nothing improper about the Government laying out Anderson's worst case scenario in connection with its offer. While Anderson may find the discrepancy in potential sentences coercive, his own conduct has put him in this position.   If anything, the discrepancy between the sentence recommended under the Guidelines and the sentence offered by the Government shows restraint, not coercion.

Similarly, the timing of the offer is not improper.   If the Government is willing to forgo pursuit of certain sentencing enhancements, it should receive the benefit of avoiding unnecessary hearings such as the litigation of Anderson's motion to dismiss.   That said, the Government ultimately chose to allow the litigation and leave its offer open until shortly after the adjudication of the instant motion, although it was certainly not required to do so.   Anderson Brief, Exhibit E.

### 2. Seeking a Waiver Known Claims Relating to Past Counsel is Not Unethical

Next, Anderson contends "[t]he plea offer was unethical on its face." Anderson Brief at 13. While Capes Sokol may not ethically advise Anderson to waive ineffective assistance of counsel claims he may have against Capes Sokol, it certainly may advise him about the propriety of waiving an ineffective assistance of counsel claim against *prior* counsel that has already occurred and been fully developed. The same goes for Anderson's Government misconduct claim raised in the motion to dismiss (which is the only Government misconduct claim that would be waived as described in AUSA Davis's letter). The Government was not asking Anderson to waive ineffective assistance of counsel claims regarding his current counsel, just any ineffective assistance of counsel claims related to his prior attorneys – information which is known to Anderson and fleshed out ad nauseum in various filings by the parties.

For the reasons stated in this and other filings, the Government stridently believes that Anderson's constitutional right to effective assistance of counsel was not violated in this case and that the Government committed no misconduct. To ask Anderson to waive a claim, the circumstances of which are fully known to him and which he can evaluate with conflict-free counsel is not unethical in any way and is a normal aspect of plea negotiations.

Although Anderson claims that it is impermissible for the Government to ask him to waive his claim of ineffective assistance by his prior counsel in a plea agreement, the Eighth Circuit has expressly noted that such waivers are enforceable so long as the claim of ineffectiveness does not go to the voluntariness of the plea itself. *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000) ("[W]e see no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in the plea agreement context."). While Anderson points

to an internal Department of Justice policy memorandum advising against the use of such waivers, the Eighth Circuit has recognized that internal Department of Justice policies are not enforceable by individuals such as Anderson. *See, e.g.*, *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001) (rejecting similar challenge and noting that "no case has ever held" that defendant may challenge the application of "the internal regulations of the DOJ"); *United States v. Halls*, 40 F.3d 275, 278 n.1 (8th Cir. 1994) ("This [Department of Justice policy] is an internal policy, however, and as such is not enforceable against the government." (internal citations omitted)). "Courts have generally refrained from judicial review of asserted violations of DOJ policies or regulations because of the unique nature of prosecution and the 'broad discretion' granted the Attorney General and federal prosecutors in their enforcement of the laws of the United States." *In re United States*, 197 F.3d 310, 315 (8th Cir. 1999).

Regardless, Anderson shows no prejudice as a result of this offer. The Government has agreed that the offer will remain open to him after the litigation of the claims made in his motion to dismiss indictment has been adjudicated. Anderson Brief, Exhibit E. Accordingly, he has demonstrated no harm whatsoever, and certainly nothing that would justify dismissal of the indictment.

C.    **Anderson Has Failed to Show That He Was Denied His Constitutional Right To Effective Assistance of Counsel Through RSRG's Simultaneous Representation of Anderson, Nuspl and CS#1**

Anderson next contends that RSRG's concurrent representation of Anderson, Nuspl and CS#1 constitutes a violation of his constitutional right to effective assistance of counsel. The evidence at the hearing established that RSRG began representing CS#1 in November 2011 after CS#1 had pleaded guilty. Tr. II at 22. It was CS#1's desire to cooperate with DEA to gain leniency in sentencing and it was RSRG's role to facilitate that cooperation. Tr. II at 24. CS#1

was very secretive and wanted to keep his cooperation "completely off the grid."   Although

attorney Fein was aware of some initial information that CS#1 provided, no one at RSRG knew

that CS#1 was cooperating against Anderson.   Tr. II at 25-26, 29-30.   CS#1 was sentenced on

November 1, 2102 and received a substantial assistance motion from the Government.   Tr. II at

187.   AUSA Jeannette Graviss was the prosecutor on CS#1's case and AUSA Davis did not know

CS#1's identity until after the indictment in the Anderson case.   Tr. II at 184-85.

Attorney Rosenblum began representing Anderson in the instant case in November 2012.

Tr. II at 32.   Additionally, attorney Schwartz from RSRG represented co-defendant Corey Nuspl

for a brief time prior to the indictment in this case.   Tr. II at 152.   Attorney Schwartz and Corey

Nuspl were present at a proffer interview with AUSA Davis on July 15, 2015, approximately one

month before the indictment in this case.   Tr. II at 1153-54.   Nuspl eventually testified against

Anderson at the second day of the detention hearing before the magistrate judge.   Prior to his

testimony, Nuspl retained attorney Patrick Kilgore and Schwartz was not present at the detention

hearing.   Attorney Rosenblum represented Anderson at the detention hearing and cross-examined

Nuspl.

Anderson claims that these circumstances constitute a violation of his right to effective

assistance of counsel.   As discussed above, it is clear that the right to effective assistance of

counsel attaches only when criminal proceedings are initiated.   *See Moran v. Burbine*, 475 U.S.

412, 428 (1986).   Thus, the fact that RSRG represented CS#1 and Anderson simultaneously

cannot be the basis for a claim of ineffective assistance of counsel especially where the

uncontroverted evidence shows that no one at RSRG knew that CS#1 was cooperating against

Anderson.   *See United States v. Hopkins*, 43 F.3d 1116, 1119 (6th Cir. 1995) (holding that, where

record showed that attorney was unaware of the fact that he simultaneously represented defendant

and a witness against him, there was no conflict of interest because defendant failed to demonstrate that the attorney "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other").

Similarly, Nuspl's July 15, 2014 proffer is not a proper basis for an ineffective assistance of counsel claim.   The only time that simultaneous representation of Nuspl and Anderson became an issue was after the indictment in this case.   Anderson made his initial appearance on August 25, 2014.  Doc. 44.   Before Nuspl testified, he obtained new counsel, Patrick Kilgore, and Schwartz for all intents and purposes withdrew from the case at that time.   The parties contacted the Court regarding the potential conflict issue and a hearing on that issue was set by the Court on August 29, 2015 and scheduled for September 5, 2014.   Doc. 64.   Prior to his cross-examination of Nuspl, Attorney Rosenblum discussed the potential conflict issue with Anderson, but he insisted that Rosenblum continue to represent him.   Tr. II at 42-43.

Under these circumstances, there was simply no constitutional violation and no harm to Anderson.   Anderson contends to the contrary and urges this Court to contradict long-term Supreme Court precedent and find that the right to effective assistance of counsel attaches prior to indictment. *See Rothgery v. Gillespie County*, 554 U.S. 191, 194 (2008); *Texas v. Cobb*, 532 U.S. 162, 166 (2001); *Moran v. Burbine*, 475 U.S. 412, 428 (1986); *Kirby v. Illinois*, 406 U.S. 682, 689 (1972).   Additionally, there are significant reasons why this right should not attach pre-indictment.   If the Government were required to assure conflict-free counsel prior to indictment, it would necessarily compromise the secrecy of important investigations and unnecessarily insert the Government into attorney-client relationships.   There is no basis for imposing such a duty on the Government.

In an attempt to show some kind of prejudice or adverse effect suffered as a result of the

alleged conflicts here, Anderson complains that attorney Rosenblum failed to properly attack Nuspl's credibility during cross examination and therefore Anderson was ordered detained pending trial. If Anderson and his current defense team think that Nuspl's cross examination was lacking, the remedy is not the extreme one sought here, dismissal of the indictment, but instead a motion for reconsideration of Anderson's detention with his current, conflict-free counsel.

Similarly, the unsuccessful plea negotiations Anderson cites are not a basis for finding prejudice. It was only well after the detention hearing and attorney Schwartz's withdrawal from representation of Nuspl, at a time when RSRG's sole duty of loyalty was to Anderson, that any plea negotiations began. Accordingly, RSRG did not labor under a conflict of interest during that process and Anderson can show no adverse impact to him from the failed negotiations as the same plea offer remains open to him to this day.

Finally, in his conclusion, Anderson claims he "forever lost his right to a speedy trial." Anderson Brief at 21. This argument is wholly without merit. The Supreme Court has clearly held that "a defendant may not prospectively waive the application of the [Speedy Trial] Act." *Zedner v. United States*, 547 U.S. 489, 500 (2006); *see also United States v. Jones*, 2015 WL 4546885 at *5 (8th Cir. July 29, 2015). Anderson's proper remedy for any alleged speedy trial violation is a motion to dismiss on that basis or a filing requesting a trial setting. Instead, Anderson's current attorneys have filed numerous motions and sought numerous continuances of hearings and deadlines. Moreover, the Court made complex case speedy trial findings in this matter and additionally, much of the time that has passed has been tolled by the filing of motions by Anderson himself as well as his codefendants. Regardless, Anderson shows no prejudice resulting from the speedy trial waiver he entered while represented by RSRG and is thus not entitled to any relief, let alone dismissal.

**D.** **The Government Had No Obligation to Inquire or Cure Conflicts of Interest Pre-Indictment and Acted Appropriately to Cure Potential Conflicts Post-Indictment[4]**

Next Anderson contends that AUSA Davis's conduct of a proffer interview with Nuspl and attorney Schwartz constituted misconduct and violated Anderson's constitutional rights by exploiting RSRG's conflict of interest.   As repeatedly established, neither Nuspl nor Anderson had a constitutionally recognized right to effective assistance of counsel pre-indictment. Moreover, AUSA Davis committed no misconduct.

In support of his argument, Anderson focuses on AUSA Davis's testimony regarding when various attorneys began "representation" of clients.   Although Anderson attempts to create a conflict in AUSA Davis's testimony by conflating his responses to various questions regarding "representation," AUSA Davis made clear in his testimony what he meant by that term.   *See* Tr. II at 180 ("When you say represented, what I'm thinking is he's filed an entry of appearance after an indictment. I had conversations with Mr. Rosenblum about Mr. Anderson, but I had never been told, 'Listen, I'm this man's attorney.'").   AUSA Davis conceded that he had conversed with attorneys regarding potential defendants on multiple occasions prior to indictment although he did not specifically know whether these attorneys had formally agreed to represent any defendant in any future criminal case that might be brought.   Tr. II at 182-83.

Regardless of the semantics, attorney Schwartz was present with Nuspl at a proffer interview as an attorney.   Nuspl provided information regarding Anderson during the interview. Tr. II at 155.   Although under no obligation to do so, AUSA Davis brought the potential conflict

---

[4] In Anderson's summary of argument he identifies his "fourth" argument relating to AUSA Davis engaging in a proffer interview with Nuspl and attorney Schwartz, knowing that Anderson was represented by attorney Rosenblum. His "fifth" argument is identified as the receipt of ineffective assistance of counsel post-indictment and the Government's exploitation of it.   In the body of his argument, Anderson addresses these points jointly in his argument labeled V. on page 16.   The Government will address these arguments jointly here.

up with attorney Schwartz.   Tr. II at 156.   In response, attorney Schwartz spoke with Nuspl about the issue and Nuspl indicated that he wished for Schwartz to continue representing him and agreed to waive any conflict.   Tr. II at 156.

Post-indictment, it became clear to RSRG and the Government that RSRG would not be able to represent both Nuspl and Anderson.   As soon as that became apparent, the parties took steps to resolve the conflict.   Attorney Schwartz withdrew from the case, and Nuspl obtained conflict-free counsel.   Anderson was advised of the potential conflict issue, but affirmatively urged Rosenblum to remain his attorney.

The Government committed no misconduct whatsoever, let alone misconduct egregious enough to warrant dismissal of the indictment.   As stated above, in order for the Court to dismiss an indictment under its supervisory power, it must find government misconduct in violating a *defendant's recognized rights* or engaging in illegal conduct that must be deterred.   *United States v. Black*, 733 F.3d 294, 310 n.12 (9th Cir. 2013) (emphasis added).

There was unquestionably no illegal conduct here.   Anderson cannot seriously claim that the Government violated his *recognized* rights when he himself calls the question of whether the Sixth Amendment grants a defendant the right to effective assistance of counsel before indictment "a question of first impression."   Anderson Brief at 16. In fact, it is a question that has been repeatedly decided against him by no less than the Supreme Court.   *See Rothgery v. Gillespie County*, 554 U.S. 191, 194 (2008); *Texas v. Cobb*, 532 U.S. 162, 166 (2001); *Moran v. Burbine*, 475 U.S. 412, 428 (1986); *Kirby v. Illinois*, 406 U.S. 682, 689 (1972).   Dismissal therefore cannot be a proper sanction for conduct (or lack thereof) that even Anderson concedes was not held to be unlawful at the time.   *See United States v. Solomon*, 679 F.2d 1246, 1250 (8th Cir. 1982) ("Even when [the government's] intrusion [on the defendant's rights] is deliberate or improperly

motivated, dismissal is not warranted.").

      **E.**      **Anderson Failed to Show That His Attorney Violated Federal Law and Even If He Had, Anderson Failed to Demonstrate He Suffered Any Prejudice as a Result**

Finally, Anderson argues that the fact that Attorney Marc Johnson took a cellular telephone into the Warren County Jail was a criminal act constitutes a conflict of interest that warrants dismissal of the indictment.   Again, Anderson points to absolutely no specific, identifiable prejudice he suffered as a result of this conduct.   So, even if his allegations were true, Anderson now has the only remedy to which he is entitled, conflict-free counsel.   Anderson shows no harm or prejudice to his case.   He is in exactly the same position, with the same plea offer that was initially extended to him.   Additionally, this ground for relief focuses on the conduct of attorney Johnson (and to some extent Rosenblum) of which the Government was unaware.   As such, dismissal of the indictment is a wholly inappropriate sanction.

In his motion, citing 18 U.S.C. § 1791, Anderson contends that attorney Johnson "admitted to a federal crime" in connection with activity related to the cell phone in this case.   Title 18 U.S.C. § 1791 makes it a federal misdemeanor to "provide[] to an inmate of a prison a prohibited object."   As pertinent here, a "prohibited object" is defined as "a phone or other device used by a user of commercial mobile service … in connection with such service."   *See* 18 U.S.C. § 1791(d)(1)(F).

While attorney Johnson admitted bringing the phone to Warrant County Jail, he specifically testified that the purpose of giving the phone to Anderson was because he "needed a phone number out of that phone to communicate with that person or to relay it back to Mr. Hounsom so that that person could get money to [RSRG's] office."   Tr. II at 68-69.   When asked whether Anderson used the cell phone to make a call, attorney Johnson responded, "Mr. Anderson

was not supposed to use the cell phone in the jail. I didn't even know if the cell phone worked. I'm not sure. He put the phone up to his ear. I'm not sure if he spoke with anyone or not." Tr. II at 69.

Under these circumstances, it is far from certain that attorney Johnson admitted a violation of 18 U.S.C. § 1791. *See Riley v. California*, 134 S. Ct. 2473, 2489 (2014) ("The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers."). Regardless, there is certainly nothing in the record that indicates that Anderson felt as though he could not engage in a proffer interview because he would have had to have provided information about a crime committed by his attorney. There is certainly no evidence that attorney Johnson or anyone at RSRG advised Anderson not to engage in a proffer interview to protect themselves from criminal exposure. In fact, that seems highly unlikely in light of the fact that the evidence presented at the hearing showed that Anderson himself was the one that orchestrated the cell phone being brought to him in the first place.

Anderson finds it "unbelievable" (Anderson Brief at 19) that AUSA Davis was not interested in hearing about the commission of federal misdemeanors committed at Anderson's direction during any proffer that would occur. This statement is imminently credible in light of the fact that Anderson is charged in a conspiracy to distribute more than 1,000 kilograms of marijuana and what prosecutors are interested in is moving up the chain of distribution, having defendants "testify[] up," so to speak. Tr. II at 218.

Anderson additionally argues that attorney Rosenblum falsely represented to AUSA Davis that he was unaware that attorney Johnson "was conversing" with Hounsom. Anderson Brief at

31

20.   This is a mischaracterization of the evidence presented.   The Government's motion for inquiry indicated that AUSA Davis asked whether Rosenblum was aware of whether attorney Johnson was "conversing with Attorney Marc Johnson *regarding this matter.*"   Motion for Inquiry, p. 6.   During his testimony, Rosenblum admitted that he was aware of that Hounsom and attorney Johnson had contact, but testified:

> Do I know that Mr. Hounsom, I think, looked to Mr. Johnson almost as a friend and was reaching out to him?   Yes.   It was my understanding that on several occasions Mr. Johnson repeatedly told him that he could not give him specific legal advice and to go back and talk to his lawyer, Mr. Shostak.

Tr. II at 69.   Additionally, Rosenblum recalled telling attorney Johnson that Johnson could not give legal advice to somebody else's client.   Tr. II at 73. Further, Rosenblum denied knowledge of "unauthorized" contact and testified that he was aware that Johnson and Hounsom would talk about things unrelated to the case.   Tr. II at 75.

Attorney Johnson admitted repeated contacts with Hounsom, but denied having substantive communications about his case.   Instead, attorney Johnson indicated that most of their communications regarded Hounsom's desire for Johnson to represent him or Hounsom conveying messages from Anderson to Johnson.

Regardless, even if Anderson had presented evidence that Johnson and/or Rosenblum had unauthorized substantive communications with Hounsom about his case, it would not warrant dismissing the indictment.   Improper conduct on the part of prior defense counsel does not necessitate dismissal of the indictment.   Moreover, Anderson points to no adverse effect that this had on RSRG's representation of him.   To the extent Anderson claims that he was prohibited from entering into a proffer with the Government as a result of his attorneys' wrongdoing, there is no evidence to support that conclusion.   Anderson now has the only remedy to which he is

entitled, new counsel, Capes Sokol.   He is entitled to no further relief.

## CONCLUSION

Anderson has failed to demonstrate any misconduct by the Government or any harm

suffered as a result of the alleged conflicts of interest by RSRG.   Any alleged deficiency in

Anderson's representation by previous private counsel has been remedied as Anderson has

conflict-free counsel sufficiently early in the proceedings to pursue reconsideration of the

detention order, to file pretrial motions, to attempt to negotiate a plea agreement, and to receive a

fair trial.

For all the foregoing reasons, the Government respectfully requests this Court deny

defendant Anderson's motion to dismiss the indictment for irreparable denial of defendant's

constitutional right to effective assistance of counsel.

Respectfully submitted,


_/s/ Richard G. Callahan_
RICHARD G. CALLAHAN #24290 MO
United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri   63102
(314) 539-2200


## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2015, the foregoing was filed electronically with the Clerk of
the Court to be served by operation of the Court's electronic filing system upon all counsel of
record.

_/s/ Richard G. Callahan_
RICHARD G. CALLAHAN #24290 MO
United States Attorney