UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
      vs.                       )      Case No. 4:14CR00246AGF (NAB)
                                )
THOMAS GREGORY ANDERSON, JR.,   )
                                )
            Defendant.          )

## ORDER ADOPTING REPORT AND RECOMMENDATION

This matter is before the Court on the Government's Motion for Inquiry into Potential Conflicts of Interest (Doc. No. 303), and Defendant's Motion to Dismiss for Irreparable Denial of Defendant's Constitutional Right to Effective Assistance of Counsel (Doc. No. 315). In his motion, Defendant Thomas Gregory Anderson, Jr., asserts that dismissal is required due to certain pre-indictment and post-indictment conflicts of interest of and improprieties by Defendant's prior counsel, that Defendant contends caused irreparable harm. Defendant further asserts that one such conflict was known to, and should have been prevented by, the lead prosecutor. In his motion and post-hearing brief, Defendant also asserts that the prosecutor engaged in other improper conduct post-indictment. Defendant asserts this conduct, in toto, is so outrageous that it shocks the conscience, and rises to the level of a due process violation, requiring dismissal of the indictment.

All pretrial motions were referred to United States Magistrate Judge Nannette A. Baker under 28 U.S.C. § 636(b).   The motions were fully briefed, and thereafter an evidentiary hearing was held on June 23 and 24, 2015.   Numerous witnesses testified at the hearing, including the lead agent, Brandon Moles, four of the attorneys from Defendant's prior defense firm, co-Defendant Brian Hounsom, and the lead prosecutor, John Davis.   The parties submitted post-hearing briefs and Judge Baker heard oral argument.   Judge Baker thereafter submitted a Report and Recommendation ("R&R"), recommending that Defendant's motion be denied.   (Doc. No. 483.)   While finding that the case presented "some troubling ethical issues," Judge Baker found nothing in the extensive record before her that warranted dismissal of the indictment.

Defendant filed objections to the R&R (Doc. No. 497), to which the United States responded.   In his objections, Defendant reasserts some of the grounds raised in his motion.   He disagrees with the Magistrate Judge's conclusion that the constitutional right to effective assistance of counsel does not attach pre-indictment, and the further conclusions that the conduct at issue does not warrant dismissal of the indictment.

When a party objects to a Report and Recommendation concerning a motion to dismiss in a criminal case, the court is required to "'make a de novo determination of those portions of the record or specified proposed findings or recommendations to which objection is made.'"   *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)).

I have conducted a *de novo* review of the motions, including a review of the testimony of the witnesses and exhibits introduced at the hearings, and have listened to

recordings of all of the relevant related court proceedings, as well as the oral argument of the parties. Many of the facts were not in dispute. Based on my review, I conclude that the Magistrate Judge made proper factual findings and correctly analyzed the issues. For the reasons set forth below, I adopt and incorporate the thorough reasoning in the Report and Recommendation.[1]

### A.   Ineffective Assistance of Counsel Pre-Indictment

The facts related to the pre-indictment conflict of interest are recited in the R&R, and will be summarized and supplemented only as necessary. As reflected in the forfeiture provisions of the indictment, in July and November, 2012, the United States began seizing items from the co-conspirators named in this case, including the seizure of firearms and currency from Anderson in November, 2012. Search warrants were executed on the residence Anderson shared with co-Defendant Brian Hounsom and the residence of Anderson's parents on November 13, 2012. It appears that the firm of Rosenblum, Schwartz, Rogers & Glass, P.C. ("RSRG"), primarily through associate Marc Johnson, provided representation with respect to forfeiture proceedings that occurred thereafter related to property seized from Anderson and Hounsom.

Attorney N. Scott Rosenblum of RSRG first "began communicating with AUSA Davis regarding Anderson and a potential indictment" in approximately November or December, 2012. Rosenblum was assisted by his partner, Adam Fein, and Johnson.

---

[1] The parties and the Magistrate Judge divided their discussions into pre-indictment conflicts of interest, post-indictment conflicts of interest, and improper conduct by the government, and I will do the same.

The investigation continued throughout 2013 and much of 2014, as reflected by the significant seizures of currency, property and firearms that continued through April, 2014 listed in the indictment. On February 19, 2014, agents approached co-Defendant Corey Nuspl, who consented to a search of his home. He further indicated a willingness to cooperate, but agents were unable to contact Nuspl for some time thereafter. In the summer of 2014, sometime prior to mid-July, Attorney Joel Schwartz, also of RSRG, contacted AUSA Davis to set up a proffer interview with Nuspl. That interview took place on July 15, 2014, approximately one month before the indictment. Davis, Moles and Schwartz were in attendance at the proffer, during which Nuspl repeatedly provided information regarding Anderson. Neither Rosenblum nor Schwartz was aware of the other's involvement with individuals alleged to be members of the same conspiracy.

By this time, Davis had had several interviews with Rosenblum regarding Anderson, and was well aware that Rosenblum and Schwartz were partners. Davis testified that at the time of Nuspl's proffer, the fact that attorneys from RSRG represented two different co-conspirators, one of whom was attempting to cooperate, "had not gelled in his mind." At the time, the prosecutors were looking at approximately 30 potential targets, and Davis did not know whom he would ultimately name in the indictment. The prosecutors ultimately determined that the conspirators had split into two groups, and each group was charged in a separate indictment, with different lead prosecutors.

In the R&R, among the "troubling ethical issues," Judge Baker noted that the AUSA could have advised Nuspl to obtain new counsel at the proffer, a month before the indictment. But Judge Baker correctly found no violation of Anderson's constitutional

right to counsel, as the constitutional right to effective counsel does not attach prior to formal proceedings, such as an indictment, information or preliminary hearing. *United States v. Gouveia*, 467 U.S. 180, 188 (1984).

Defendant objects to the Magistrate Judge's determination, asserting that the legal landscape was changed by *Missouri v. Frye*, 132 S. Ct. 1399 (2012) and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), which noted the importance of plea negotiations in today's criminal proceedings, and recognized that counsel could render constitutionally ineffective assistance in the context of plea negotiations. Given that so many important plea negotiations take place pre-indictment, Defendant argues that it must follow that the right to effective assistance of counsel should apply during pre-indictment negotiations and discussions. He further asserts that RSRG's simultaneous representation of Nuspl and Anderson[2] deprived him of his right to effective assistance of counsel.

For the reasons stated in the R&R, however, I find Defendant's contention is not well-taken. As Judge Baker discussed, both *Frye* and *Lafler* addressed plea negotiations

---

2 In his motion, Defendant also asserted that RSRG had a conflict that deprived him of effective assistance of counsel based on the fact that RSRG represented CS#1 in connection with CS#1's sentencing in 2011 and 2012, and that CS#1 provided cooperation to the government, including information regarding Anderson, which led to the investigation of Anderson. Defendant did not raise this specific issue in his objections to the R&R, and therefore, the issue is not properly before me on review of the R&R. I note, however, that the record reflects after an initial proffer session, at which attorney Fein was present, CS#1, who was very secretive, thereafter provided cooperation directly to the agents, without counsel for either party present. I agree with the findings in the R&R that at the time the RSRG attorneys undertook to represent Anderson, they had no knowledge that CS#1 provided cooperation against Anderson. Nor did RSRG have any reason to know that CS#1 provided such cooperation, until they later reviewed the discovery in this case with Anderson and engaged in further investigation. Likewise, the prosecutor in this case did not know that CS#1 provided cooperation against Anderson or that such cooperator was represented by the RSRG firm.

in a post-indictment context, and nothing in either opinion, nor in the case law thereafter, suggests any intention to change this longstanding Sixth Amendment principle.   Because Defendant had no constitutional right to effective assistance of counsel prior to the indictment, his claims based on pre-indictment conflict of interest must fail.

Nor is an extension of the right to effective counsel necessary to provide proper recourse on these facts, as Defendant contends in his Objections.   Even if I were to determine that Defendant had a Sixth Amendment right to effective assistance of counsel that attached pre-indictment, the most lenient standard would be the standard set forth in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), which presumes prejudice if a defendant can show that counsel's performance was adversely affected.   *Id.* at 350; *Plunk v. Hobbs*, 766 F.3d 760, 764 (8th Cir. 2014) (noting, "[t]he presumption arises because when joint representation of conflicting interests has an adverse effect on counsel's performance, it is difficult to measure the precise harm arising from counsel's errors"), *cert. denied*, 135 S. Ct. 981 (2015).   But there is no *per se* rule that a defendant advised by an attorney who also represents a co-defendant is deprived of effective assistance of counsel.   *Plunk*, 766 F.3d at 764.   To demonstrate a violation, "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."   *Cuyler*, 446 U.S. at 350. Defendant cannot make that showing based on his pre-indictment claims.

Clearly, RSRG should have maintained a better system for monitoring potential conflicts of interest, and the prosecutor probably should have advised Nuspl to obtain new counsel if he wished to cooperate.   But the fact remains that here, the conflict had no impact on counsel's performance, and the prosecution did not gain any advantage *by virtue*

*of* the conflict. Nuspl had offered to cooperate with the agents months before he was represented by any attorney. There is no suggestion that his pre-indictment cooperation would have been any different with different counsel. When Schwartz did begin to represent Nuspl, he was unaware of Rosenblum's representation of Anderson, and Rosenblum knew nothing about Nuspl or Schwartz's representation of Nuspl. Neither attorney was aware of or used any confidences gained from the other. And nothing in this record indicates that Schwartz's representation of Nuspl pre-indictment adversely affected the pre-indictment performance of Anderson's attorney in any manner – nor does Defendant suggest any such adverse effect. Thus, even under the more lenient standard set forth in *Cuyler,* Defendant's contention that he is entitled to relief – beyond what he has received by obtaining new counsel – fails.

### B.  Post-Indictment Right to Effective Assistance of Counsel

For the reasons set forth in the R&R, I also reject Defendant's assertion that he is entitled to dismissal of the indictment or other relief based on any violations of his post-indictment right to effective assistance of counsel. Primarily at issue are three events that occurred during the time period from August 13, 2014, when the indictment was issued, and January, 2015, when Anderson obtained new attorneys from the Capes Sokol law firm. First, detention hearings were held regarding Anderson on August 27 and 29, 2014, and later in December, 2014, at which the United States called Nuspl as a witness and he was cross-examined by Rosenblum. Nuspl obtained new counsel prior to his testimony, and was represented by new counsel at both hearings at which he testified. Second, in September, 2014, Anderson, through Hounsom, induced Johnson to bring

Anderson's cell phone to him while he was confined at the jail, and Anderson may have used the phone in violation of the jail policy and the law. Third, in November, RSRG had discussions with Davis regarding the possibility of a proffer by Anderson. Defendant claims that Johnson's unlawful actions with respect to the cell phone created a conflict that deprived Defendant of effective counsel and of his ability to engage in proper plea negotiations. I find that none of these matters, alone or together, deprived Defendant of his right to effective assistance of counsel.

Again, I will summarize the facts that are set forth in more detail in the R&R. After the indictment was issued on August 13, 2014, Schwartz continued to represent Nuspl, and Rosenblum, Fein and Johnson continued to represent Anderson, with both sets of attorneys entering their appearances on August 20, 2014. At the time, Anderson was out of the country, and Rosenblum arranged for Anderson to surrender on August 25, 2014. (Doc. No. 44.) The prosecutor was seeking pretrial detention for Anderson, and Judge Mensah, the duty magistrate judge, held a detention hearing on August 27. Based on statements by Judge Mensah that she would like to hear more on the issue of dangerousness, and from witnesses with more first-hand knowledge, the detention hearing was continued to August 29, 2014 at 3:30 p.m. After the August 27 hearing the prosecutor decided, for the first time, that he would call Nuspl and other individuals involved in the conspiracy as witnesses. Nuspl testified at the continuation of the hearing on August 29, 2014, and was cross-examined by Rosenblum. The case agent also testified that some of the information presented to the grand jury included information provided by Nuspl.

Schwartz recalled that "probably days" before the detention hearing, it became clear to him that the conflict existed and was not waivable, and he advised Nuspl that he could no longer represent him.   (Tr. II, at 36.)   Davis recalled that after the August 27 detention hearing, when it became clear that Nuspl would be called to testify, he advised Schwartz or Rosenblum that the firm could not continue to represent both defendants.   But the testimony is uncontradicted that when Schwartz advised Nuspl of the conflict, Nuspl waived the conflict and advised Schwartz that he had no objection to the firm's continued representation of Anderson.   Schwartz discontinued his representation of Nuspl, at the latest, prior to the August 29 hearing, and Nuspl was referred to attorney Patrick Kilgore.   Although Kilgore represented Nuspl at the August 29 hearing, he did not formally enter his appearance until September 4, 2014, after which Schwartz formally withdrew.   Schwartz did not appear at either detention hearing.

Prior to the August 29 hearing, Rosenblum orally advised Anderson of the conflict and of his right to obtain new counsel to represent him.   Anderson advised Rosenblum that he wanted Rosenblum to continue as his attorney.   At the August 29 hearing, Rosenblum represented Anderson, and cross-examined Nuspl.   Defendant thereafter filed a motion to revoke the detention order and a further hearing was held before me on December 12, 2014.   Nuspl and other witnesses were presented by the prosecutor, and Rosenblum cross-examined the witnesses.

The events with respect to the cell phone occurred in September, 2014.   Brian Hounsom, Anderson's roommate and Anderson's sister's fiancé, was also indicted, and was represented by Burton Shostak.   However, Johnson continued to have a fair amount

of direct contact with Hounsom, as Hounsom acted as a go-between, relaying communications between Anderson, who was in custody, and Anderson's family, to and from the attorneys at RSRG.[3]   As detailed more fully in the R&R, on September 12, 2014, Hounsom contacted Johnson and convinced him to bring Anderson's cell phone to Anderson at the jail.   Anderson was the one who asked Hounsom to arrange to have RSRG bring the phone to him.   Johnson was told, and believed, that Anderson was only going to look up a number on the phone, but Anderson in fact used the phone apparently to make a call, and also took two "selfie" photos.   Johnson then took the cell phone from Anderson and returned it to the law firm, and it was later retrieved by Anderson's father.

Meanwhile, Rosenblum attempted to negotiate the terms of possible cooperation for Anderson.   Davis had advised RSRG that Anderson was looking at approximately 17 years under the Sentencing Guidelines.   Davis said the best he could offer would be 120 months, and that the office had no interest in any plea of less than 120 months. Rosenblum's testimony, which is undisputed, is that Anderson did not want to cooperate regarding the case he was involved in.   Rather, he wanted to get out and work proactively, advising Rosenblum that he could lead the prosecutor to "millions" and connections in the

---

[3] Though Defendant did not directly rely on the issue as grounds for his motion, or raise it in his Objections, at the evidentiary hearing and in his post-hearing brief, Defendant suggested that Johnson violated the rules of ethics with respect to contact with represented persons by communicating with Hounsom without Shostak's knowledge.   However, I find that the contacts consisted of (i) Hounsom relaying communications between Anderson or his family members and RSRG and (ii) Hounsom repeatedly expressing concerns about his attorney and continually seeking to have Johnson represent him.   On September 9, 2014, following a conversation with Davis the previous day, Davis confirmed to Johnson that he could not represent Hounsom without creating a potential conflict of interest.   Johnson thereafter advised Hounsom that he could not represent him.   There is no evidence that Johnson provided specific legal advice to Hounsom.

Middle East.   Davis advised Rosenblum that he thought Anderson was a liar, and though he was not interested in Anderson's cooperation, he would relay the terms of a proffer.

On November 26, 2014, Davis sent RSRG an email regarding his position on a proffer by Anderson, which expressly states that it differs from "a standard proffer with a standard proffer letter."   Ex. J.   The email further states that the proffer would have to "begin with a complete and honest recitation of [Anderson's] knowledge of, and involvement in, the conspiracy.   This, of course, will include the roles of each co-defendant and others not charged including his parents and sister."   After a complete recitation of his knowledge and involvement in the conspiracy, the proffer could move into areas he might know about that could be of "substantial assistance," that could possibly lead to a "5K/3553 departure."   Davis added, however, "the information must amount to 'testifying up.'   The government is not interested in securing Anderson as an additional witness against those already indicted or adding others to the indictment that are any less culpable than he."   *Id.*   Johnson, of RSRG, responded, inquiring if there would be any way to remove the potential indictment of Anderson's family members if Anderson came in to proffer, and Davis responded, "Unfortunately, no."   *Id.*   The terms of Davis's email were relayed to Anderson.   Anderson was not interested in the proposal, and the discussion related to a possible proffer went no further.

In his motion to dismiss, Defendant asserted that when Rosenblum cross-examined Nuspl at the detention hearings, the firm had not yet formally withdrawn from representing Nuspl, and the firm's continued representation of Anderson for several months, during critical stages of the court proceedings, was improper.   Defendant specifically referenced

Rosenblum's cross-examination of Nuspl at the two detention hearings, Anderson's waiver of his speedy trial rights soon after the indictment, and the firm's representation of him during proffer negotiations as the critical proceedings impacted by the conflict. With respect to the plea negotiations, Defendant asserted that his attorneys were in an untenable position and had the "most inherent conflict of interest," because full cooperation would have required disclosure of Johnson's own unlawful conduct with respect to the cell phone.

Judge Baker rejected each of these arguments. Recognizing that an actual conflict of interest occurred for at least a brief period of time post-indictment, Judge Baker applied the test under *Cuyler*, which presumes prejudice if a defendant can show counsel's performance was adversely affected. To meet this test, a defendant must (i) identify a plausible alternative defense strategy or tactic that counsel might have pursued, (ii) show that the alternative strategy was objectively reasonable under the facts, and (iii) establish that defense counsel's failure to pursue the alternative strategy was linked to the actual conflict. *Morelos v. United States*, 709 F.3d 1246, 1252 (8th Cir. 2013).

In his Objections to the R&R, Defendant expressly raises only one argument with respect to any post-indictment ineffective assistance of counsel, namely, that counsel's performance in negotiating a proffer was adversely affected by the firm's conflict arising by virtue of Johnson's unlawful conduct in delivering the cell phone to Anderson. Defendant asserts he was prejudiced because his attorneys could not pursue a better plea under any circumstances, because a better deal would have required full cooperation, which in turn, would require Anderson to disclose and cooperate against his own attorneys regarding the cell phone incident.

12

Defendant's objection is not well-taken. For the reasons set forth in the R&R, I find that Defendant has not established that counsel's performance in negotiating a proffer in November was adversely affected by Johnson's conduct with regard to the cell phone. First, it is clear that Rosenblum, who was personally involved in the negotiation process, was unaware of the September cell phone incident when he was attempting to negotiate a plea. As such, the incident had no impact, whatsoever, on his negotiations. Anderson was, of course, aware of the conduct, but he evidently chose not to share this information with anyone. And Defendant has offered no evidence that the conflict of his counsel caused him to refrain from raising the matter. Further, the terms of the proffer required Anderson to provide full information regarding his own involvement in the conspiracy, as well as the involvement of co-Defendants, and his parents and sister. The uncontroverted evidence establishes that Defendant was unwilling to provide such cooperation. The record further supports the Magistrate Judge's finding that to obtain a sentencing benefit, Anderson would have to "testify up," or provide information about bigger fish than himself. And I find credible Davis's testimony that information about a possible misdemeanor by an RSRG associate would not have met that standard, coming from the lead Defendant in the conspiracy. It is also clear that the prosecutor was not willing to offer any deal that would bring Anderson's sentence below 10 years. Thus, in light of the 10-year plea offer that remained on the table – and still remains on the table – Defendant cannot show any adverse effect. *See Plunk*, 766 F.3d at 765 (holding that a conflict of interest cannot adversely affect representation regarding the exploration of potential plea

opportunities if the prosecutor would not have been receptive to a more favorable plea bargain).

Moreover, I am hard-pressed to believe that a defendant can induce an associate at his law firm to violate the law, and then use the conflict that is of his own creation as grounds to dismiss the indictment, especially where, as here, the prosecutor had no knowledge of or involvement in the incident.

Defendant did not specifically object to the Magistrate Judge's findings and conclusions with respect to his other arguments of post-indictment ineffective assistance of counsel, merely asserting that he suffered prejudice "for the many other reasons set forth in Anderson's pleadings and incorporated herein."   (Doc. No. 497 at 7.)   As such, I need not review the other post-indictment grounds raised in the motion.   Nevertheless, I will address them briefly.

First, I agree with Judge Baker's finding that Defendant failed to meet the *Cuyler* standard with respect to Anderson's waiver of the right to a speedy trial.   In a multi-defendant case of this complexity, involving dozens of co-conspirators, multiple search warrants and seizures, and two separate Title III wiretaps, I agree with Rosenblum's assessment, and the Magistrate Judge's finding, that it would not have been reasonable to assert Anderson's speedy trial rights.   I also agree that Defendant has failed to establish that his waiver of speedy trial rights was in any way linked to the firm's representation of Nuspl.

Although Defendant previously suggested that he could have objected to the Court's Complex Case finding, I find this argument to be disingenuous.   It is plain from a

review of the docket sheet that the assertion of Speedy Trial rights by any one Defendant during the few months immediately following the indictment would likely have been to no avail. Even without a Complex Case finding, the docket sheet shows that some of the co-Defendants were not arrested or did not appear in the district until mid-September or early October. At least one of the co-Defendants filed a motion to suppress, which had yet to be determined. And several of the co-Defendants requested and received additional time to file pretrial motions for independent reasons including, as to one Defendant, obtaining new counsel. These matters with respect to the co-Defendants were not resolved until well after Anderson obtained new counsel in January, 2015. *See, e.g.,* Doc. Nos. 200 & 292. And it is highly unlikely that any motion to sever would have been granted. Thus, the Speedy Trial clock would have been tolled during this time period under 18 U.S.C. § 3161(h)(1)(D) (delay resulting from the prompt disposition of any pretrial motion); § 3161(h)(1)(E) (delay resulting from the removal of any defendant from another district); and § 3161(h)(6) (a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted"). Indeed, upon entry of its appearance, the Capes Sokol firm immediately requested additional time to file pretrial motions on behalf of Anderson, citing the Court's prior Complex Case finding, as well as the "voluminous" nature of the discovery. (Doc. No. 255.)

Second, I also agree with Judge Baker's finding that Defendant failed to establish that the conflict adversely affected Rosenblum's performance at the detention hearings. The record reflects that Rosenblum effectively cross-examined Nuspl both at the hearing

before the Magistrate Judge, and the hearing before me. Rosenblum also credibly testified that he did not handle the cross-examination any differently than he would in any other case.

Defendant suggested in his motion that Rosenblum should have cross-examined Nuspl on his criminal history. Rosenblum did not have a copy of Nuspl's criminal history at the time of the hearing. Additionally, the fact that Nuspl was a co-conspirator who was cooperating with the government had been established in direct examination, and Rosenblum elected to focus, primarily, on the remoteness of the events to which Nuspl testified. This was a reasonable strategy. In light of all of the evidence presented at the detention hearing, there is nothing to suggest that evidence of one or more prior criminal convictions by a cooperating co-conspirator in a major narcotics conspiracy would have had any material impact. Further, Nuspl's prior criminal history is not a confidential matter, and it would not have required the breach of any confidentiality to obtain and use Nuspl's criminal history, had Rosenblum thought it would be effective. As such, Defendant has not shown that the decision not to cross Nuspl on his prior criminal history was in any manner due to the conflict of interest. Finally, Defendant would not be entitled to a dismissal of the indictment, in any event. He could be entitled to a new detention hearing – something new counsel could request at any time.

## C. Government Misconduct

In his objections, Defendant asserts that the government's conduct was outrageous and shocks the conscience, such that a dismissal of the indictment is warranted, and he objects to the Magistrate Judge's contrary conclusion. In support of his objections,

16

Defendant relies on Davis's actions in allowing Nuspl to cooperate against Anderson while RSRG represented both individuals, and failing to raise the issue with the court; and Davis's May, 2015 plea proposal for 120 months, which required that Defendant waive the matters Defendant was raising in the motion to dismiss, including the claim of ineffective assistance of counsel. I am not persuaded by Defendant's objections.

As discussed more fully in the R&R, a court may dismiss an indictment on due process grounds for "outrageous" misconduct by the government. *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991) (citing *United States v. Russell*, 411 U.S. 423, 431-32 (1973)). "The level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court." *United States v. Pardue*, 983 F.2d 843, 847 (8th Cir. 1993). None of the government action raised by Defendant, alone or together, rises to this level.

First, the record does not support Defendant's contention that Davis "intentionally" ignored a known conflict of interest when he permitted Nuspl to proffer with Schwartz as counsel in July, 2014. Davis's testimony was credible that, at that pre-indictment stage, it was unclear which of some 30 possible conspirators would be indicted; which attorneys would ultimately represent which client; which conspirators might wish to cooperate; and whether any conflicts might be waivable or unwaivable. He further testified that the fact that Nuspl and Anderson were actually represented by different partners in the same firm had not "gelled" in his mind. While unfortunate, I also accept this testimony. Though both Davis and RSRG should have been more mindful of the conflict, there is nothing to suggest knowing and "intentional" conduct on Davis's part. And, as discussed above, the

conflict had no impact on the performance of Anderson's counsel, nor did it afford any benefit whatsoever on the prosecution. Thus, I find no factual support for Defendant's contentions in his motion to dismiss that "the Government simply decided to look the other way and capitalize on the fact that Anderson lacked effective assistance of counsel." (Doc. No. 315 at 11.) Further, although Davis did not have a recollection of raising the potential conflict with Schwartz, or even recall Nuspl's proffer, Schwartz recalls that Davis did raise the issue with him at some point. Schwartz, in turn, raised the issue with Nuspl, who wanted Schwartz to continue to represent him, and waived any conflict.

Defendant further contends in his Objections that Davis *never* raised the potential conflict with the court, notwithstanding his (and Rosenblum's) testimony that he recalls raising the matter with the court in connection with the detention hearing. While the R&R correctly notes that the matter does not appear in the transcript, the docket itself suggests that the conflict issue was raised to some degree with the court. The decision to call Nuspl as a witness was not made until after the first day of the detention hearing before Judge Mensah, as a result of the Judge's expressed desire to have more first-hand testimony regarding the issue of dangerousness. On August 28, 2014, Judge Mensah issued an Order continuing the hearing for August 29, at 3:30 p.m. The docket next reflects that on August 29, at 10:05 a.m., Judge Baker issued an order setting a conflict hearing for September 5, 2014. Clearly, someone raised the potential conflict somehow with the magistrate judges.

The evidence also shows that, rather than condoning a conflict, Davis made plain to counsel, shortly after the indictment, that they could not continue to represent both clients.

By the time of the second day of the detention hearing, on August 29, Nuspl was represented by new counsel. Then, on September 4, 2014, when new counsel formally entered his appearance on behalf of Nuspl, Schwartz formally withdrew, and Judge Baker cancelled the conflict hearing scheduled for September 5, 2014. I find that the fact that the prosecutor did not prevent this pre-indictment conflict, that persisted for a few days after Anderson's initial appearance, does not "shock the conscience," especially in light of my finding that there is no Sixth Amendment right to effective assistance of counsel pre-indictment.

This conclusion is not changed by the fact that RSRG continued to represent Anderson for several months after the indictment was issued. For the brief time RSRG represented both Nuspl and Anderson, no confidences were shared between counsel for either party. Though the better course clearly would have been to schedule a hearing under Federal Rule of Criminal Procedure Rule 44(c), there is no evidence that Davis had any reason to know that the conflict had not been resolved by disclosure to the clients and the firm's withdrawal from representing Nuspl. Further, it is undisputed that Rosenblum advised Anderson of the conflict, of Anderson's right to require the firm to withdraw, and of his right to obtain new counsel. While RSRG most certainly should have obtained Anderson's waiver of the conflict in writing, the uncontroverted evidence also shows that Anderson waived the conflict and advised Rosenblum that he wanted Rosenblum to continue to represent him.[4]

_____

[4] It is unclear from the evidence what, exactly, caused Anderson to seek new counsel. Defense counsel asserted in oral argument that Anderson's desire for new counsel arose after he learned that RSRG had also represented CS#1 at sentencing. Though Defendant

Nor does the prosecutor's May 15, 2015 plea offer – untimely raised for the first time by Defendant in the post-hearing brief – constitute such "outrageous" behavior as would require a dismissal. In his May, 2015 email, Davis proposed to the Capes Sokol attorneys that if Anderson wished to plead guilty, Davis would attempt to fashion a plea agreement whereby Defendant would receive a 10-year sentence, noting that this had always been the government's position. But he added that the plea offer would require "a detailed appellate waiver of matters you wish to contest in your motion to dismiss including ineffective assistance of counsel." (Doc. No. 405-1.) By this time, Anderson had been represented by new counsel for several months.

Eighth Circuit case law recognizes that a waiver of the right to appeal is inappropriate when "the defendant's claims of ineffective assistance relate to the negotiation of, and entry into, the plea agreement and waiver." *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000); *see also, United States v. Nance*, 500 F. App'x 171, 179 (3d Cir. 2012) (noting that an appellate waiver is unenforceable only if the waiver was the result of ineffective assistance of counsel). Consistent with this case law, the United States Attorney's Office in this district has long excepted claims of ineffective assistance of counsel or prosecutorial misconduct from appellate waivers in its plea agreements. The waiver proposed by Davis was clearly consistent with the Eighth Circuit case law. And as discussed in the R&R, Davis was proposing a waiver of a known claim[5] of ineffective

---

raised the conflict involving CS#1 in his motion to dismiss, he did not object to the R&R in this regard. I find, in any event, that neither Davis nor RSRG had any knowledge or reason to know that CS#1 had provided information regarding Anderson, and therefore had no reason to know of any conflict of interest.

[5] Defendant also objects because the offer required acceptance by May 21, 2015, five days

assistance of counsel, that Defendant could fully examine with new counsel who had no involvement in the conduct at issue.

Like Judge Baker, I do not believe the Advisory Committee of the Supreme Court of Missouri had this situation in mind when it issued Formal Opinion 126, pertaining to Waiver of Post-Conviction Relief.   Indeed, the language of the Opinion related to ineffective assistance of counsel confirms it has no application in this context.   The Opinion says it is not permissible for "defense counsel" to advise a defendant regarding waiver of claims of ineffective assistance of counsel "by defense counsel."   (Doc. No. 405-2.)   That the Advisory Committee had *the same* defense counsel in mind is clear from the proffered reasoning, that "[p]roviding such advice would violate Rule 4-1.7(a)(2) because there is a significant risk that the representation of the client would be materially limited by the personal interest of the defense counsel."   *Id.*   Rule 4-1.7(a)(2) likewise defines a "concurrent conflict of interest" as when "there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer."   Mo. Sup. Ct. R. 4-1.7(a)(2).   The Opinion further explains, "It is not reasonable to believe that defense counsel will be able to provide competent and diligent representation to the defendant regarding the effectiveness of defense counsel's representation of the defendant," citing to Rule 4-1.7(b)(1).   (Doc. No. 405-2.)   Here, the Capes Sokol lawyers had no personal interest in the prior actions of RSRG, and their advice to Anderson regarding whether he should waive the claims asserted in the motion to

---

before the scheduled evidentiary hearing on the Motion for Inquiry and Motion to Dismiss the Indictment.   Immediately after defense counsel raised this concern, however, the deadline to accept the 120 month offer was extended until after the issues have been adjudicated.   (Doc. 405-5.)

dismiss would not be limited, in any way, by their personal interest. And there is no reason to believe new counsel would not be in a position to provide competent and diligent representation, consistent with Rule 4-1.7(b)(1).

As such, I am persuaded that Formal Opinion 126 has little application to the request for a waiver of the ineffective assistance of counsel claims asserted in the motion to dismiss, and does not provide a basis for finding any unethical behavior by the prosecutor in violation of the Missouri Rules of Professional Conduct. For similar reasons, I do not believe that the October 14, 2014 DOJ Memorandum, *Department Policy on Waiver of Claims of Ineffective Assistance of Counsel*, had a situation such as this in mind. Moreover, while setting Department policy, the Memorandum notes the Department's opinion "that a waiver of a claim of ineffective assistance of counsel is both legal and ethical." (Doc. No. 405-3.)

As the R&R correctly notes, the Advisory Opinion also states that it is not permissible for a prosecuting attorney to require waiver of all rights under Rule 24.035 (pertaining to post-conviction relief) when entering into a plea agreement, referencing both waivers of rights based on ineffective assistance of counsel or prosecutorial misconduct, finding such conduct could be contrary to the duty to refrain from conduct prejudicial to the administration of justice. But again, it is not at all clear that the Committee had a situation like this in mind, where the waiver was limited to matters that had already been raised in a motion, and that motion was filed by new counsel in a position fully to advise the client.

Additionally, because Defendant did not raise any arguments related to the May 2015 offer until post-hearing briefing, it is difficult to know whether the prosecutor even

intended to include a waiver of prosecutorial misconduct claims as a part of any plea agreement. The email itself references matters in the motion *including claims of ineffective assistance of counsel*, and makes no reference to claims of prosecutorial misconduct.[6] Had Defendant timely raised the matter in his motion, Davis could have provided testimony as to his intent.

Also germane to assessing the egregiousness of the government's conduct is the fact that the government did not persist in its request for the waiver. When the Capes Sokol attorneys objected to the waiver and the deadline contained in the offer, Assistant United States Attorney Jim Delworth, the Unit Supervisor, promptly mooted the matter. While taking issue with the "allegations and the characterization of the plea offer," he determined that the better course of action would be to allow Defendant to litigate the claims that have been made, and he extended the 120-month plea offer until one week after the issues in the motion have been adjudicated. (Doc. No. 405-5.) The government's response to the objections reflects that the government has since gone even further. Defendant has been advised that if he wishes to accept the 120-month plea offer, he may plead guilty and preserve his right to appeal these issues.

Thus, even if one assumes Davis intended to require a waiver of the claim of prosecutorial misconduct, and one assumes such a request would violate the Missouri

---

6 When the offer was made, the claim of prosecutorial misconduct asserted was intertwined with the allegations of conflict of interest and ineffective assistance of counsel by RBRG; it pertained to the prosecutor's failure to prevent a conflict that existed, primarily, in a pre-indictment setting. Inasmuch as the Supreme Court case law holds that no Sixth Amendment right attaches pre-indictment, it is certainly possible that Davis would not have been concerned with whether Defendant waived his right to appeal this aspect of his motion to dismiss.

ethics rules, the request was withdrawn within two business days, and the date to accept the plea was extended, permitting Defendant fully to litigate the claims.

## Conclusion

As the R&R notes, dismissal of an indictment on due process grounds "is reserved for conduct that falls within that narrow band of the most intolerable government conduct." *United States v. King*, 351 F.3d 859, 867 (8th Cir. 2003) (internal quotations omitted). For the reasons stated above, and the reasons stated in the R&R, I do not find that the standard for dismissal of the indictment has been met, whether the conduct is considered alone or together.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendations of United States Magistrate Judge [Doc. No. 483] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein, and Defendants Objections to the Report and Recommendations [Doc. No. 497] are **Overruled**. .

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss for Irreparable Denial of Defendant's Constitutional Right to Effective Assistance of Counsel [Doc. No. 315] is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion for Inquiry into Potential Conflicts of Interest [Doc. No. 303] is **DENIED as moot.**

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 14th day of January, 2016.