**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-CR-246 AGF NAB |
| | ) | |
| THOMAS GREGORY ANDERSON, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**SECOND REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the undersigned on Defendant's Motion to Reconsider Defendant's Motion to Dismiss Indictment and Request for Supplemental Evidentiary Hearing filed August 4, 2016. [Doc. # 751.]  The Government filed its Response on August 11, 2016. [Doc. #761.]  The Honorable Audrey G. Fleissig, United States District Judge, granted Defendant's request for a supplemental evidentiary hearing and referred Defendant's motion for reconsideration to the undersigned. [Doc. #769.]  On September 8 and 9, 2016, the undersigned held a supplemental evidentiary hearing.  Defendant was represented by Attorneys William S. Margulis and Justin K. Gelfand.  The Government was represented by Assistant United States Attorney James C. Delworth.  Following the hearing, the parties submitted post-hearing briefs. [Doc. #831, Doc. #838.]  The following findings of fact and conclusions of law with regard to Defendant's motion for reconsideration are based upon the parties' briefs and evidence adduced at the supplemental evidentiary hearing.  For the reasons set forth below, the undersigned recommends that Defendant's Motion to Reconsider Defendant's Motion to Dismiss Indictment be denied.

## BACKGROUND

Defendant is charged in a multi-defendant indictment with conspiracy to distribute and possess with intent to distribute one thousand kilograms of marijuana and conspiracy to launder the proceeds of drug trafficking in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1956(h). [Doc. #2.]  This case was originally referred to the undersigned for pretrial motions pursuant to 28 U.S.C. § 636(b).   On April 9, 2015, Defendant filed a Motion to Dismiss for Irreparable Denial of Defendant's Constitutional Right to Effective Assistance of Counsel. [Doc. #315.]  Initially represented by Rosenblum, Schwartz, Rogers & Glass, P.C. (RSRG), Defendant argued through new counsel that RSRG had labored under conflicts of interest due to the firm's representation of two cooperating witnesses, and that the Government had capitalized on the conflicts, justifying dismissal of the indictment.   An evidentiary hearing was held on June 23 and 24, 2015.   After post-hearing briefing, the undersigned issued a Report and Recommendation recommending that Defendant's motion to dismiss be denied on September 28, 2015. [Doc. #483.]  On January 14, 2016, Judge Fleissig issued an Order Adopting Report and Recommendation. [Doc. #602.]

On March 11, 2016, Defendant waived his right to file additional pretrial motions as well as his right to have a hearing on those motions. [Doc. #678.]  However, on July 27, 2016, roughly one month before his trial date, Defendant filed a Pro Se Motion for Subpoena which was referred to the undersigned. [Doc. #744.]  At the August 2, 2016 hearing on Defendant's motion, defense counsel indicated that Defendant was concerned that he had not received all of the discovery to which he was entitled.   Specifically, Defendant was concerned that his new counsel had not received all of the discovery from RSRG and that he had not received discovery from a related case involving Kyle Kienstra (4:14-cr-250 CDP) that pertained to his case.   The

Government agreed to provide defense counsel with a copy of all of the discovery, including what was originally disclosed to RSRG, and to review the discovery in the Kienstra case for any mention of Defendant.  Two days later, based on defense counsel's review of the discovery, Defendant filed the instant Motion to Reconsider Defendant's Motion to Dismiss Indictment and Request for Supplemental Evidentiary Hearing. [Doc. # 751.]

On August 15, 2016, Judge Fleissig and the undersigned heard argument on the motion. Defendant argued that he was entitled to a supplemental evidentiary hearing based on newly discovered evidence that a defendant in the Kienstra case, Michael Saracino, mentioned him in proffers with the Government while both he and Saracino were represented by RSRG.  In addition, Defendant produced a report of Saracino's arrest that contained incriminating statements by Saracino about Defendant.  Defendant obtained the report through a defendant in the Kienstra case.  In light of this newly discovered evidence, Judge Fleissig granted Defendant's request for a supplemental evidentiary hearing and referred the motion for reconsideration to the undersigned. [Doc. #769.]  The undersigned will make the following findings of fact based on evidence adduced at the supplemental evidentiary hearing held on September 8 and 9, 2016.

## FINDINGS OF FACT

The findings of fact set forth in the initial Report and Recommendation and Order Adopting Report and Recommendation are incorporated by reference herein. [Doc. #483, Doc. #602.]  Michael Saracino was indicted in a separate, related case involving Kyle Kienstra (4:14-cr-250 CDP).  The Anderson case and the Kienstra case began as one investigation in January of 2012.  Years before the investigation began, Anderson and Kienstra were partners in marijuana trafficking, but they had a falling out and went their separate ways.  As the investigation developed, it became clear to investigators that there were two separate marijuana trafficking

organizations, which were ultimately indicted separately.  However, as of July 15, 2014, the Government was still determining whom to indict and had not yet decided to split the case into two indictments.  Both the Anderson indictment and the Kienstra indictment were filed on August 13, 2014.

RSRG represented Anderson from the end of 2012 through January of 2015.  Anderson was represented by Scott Rosenblum, with assistance from Adam Fein and Marc Johnson. Johnson filed a motion to withdraw on behalf of RSRG on January 14, 2015.  However, according to Johnson, it had become clear by the end of December of 2014 that Anderson would hire new counsel.

In addition, Rosenblum represented Saracino from approximately March of 2013 through his sentencing on December 17, 2015, with assistance from Johnson.  Johnson testified that he became personally involved in Saracino's representation in approximately July of 2014 and was therefore personally involved in representation of both Anderson and Saracino from August of 2014 through January of 2015.

From the very beginning, Saracino was cooperating with the Government.  Sararcino participated in approximately seven proffers between June of 2014 and January of 2015.  Over the course of the proffers, Saracino mentioned Anderson twice, once in a pre-indictment proffer on June 24, 2014 and once in a post-indictment proffer on January 8, 2015.

Rosenblum represented Saracino at the June 24, 2014 proffer, which was conducted by Contract Forfeiture Investigator James L. Ramey and DEA Special Agent Brandon Moles at the U.S. Attorney's Office for this district.  The focus of the proffer was Saracino's involvement in Kienstra's organization.  The report prepared by Investigator Ramey states that Saracino provided the following information regarding Anderson: "Last year, Tommy Anderson hired a

black male whom Saracino identified from a photograph as Mitchell Hughes to help Anderson rob Kienstra of several hundred thousand dollars.  After the robbery, Kienstra hired Hughes to be his enforcer." (Ex. B p. 8.).  Saracino volunteered the statement in response to questioning about Hughes.  There is some dispute as to whether Rosenblum interjected to halt discussion of Anderson.[1]  AUSA Stephen Casey was present for part of the proffer but was not present when Anderson was mentioned.[2]

Six days before he moved to withdraw from representing Anderson on behalf of RSRG, Johnson represented Saracino at the January 8, 2015 proffer in which Saracino mentioned Anderson a second time.  FBI Special Agent Owen Cunningham and Agent Moles conducted the proffer at the U.S. Attorney's Office for this district.  The report prepared by Agent Cunningham states that Saracino provided the following information regarding Anderson: "SARACINO added TOMMY ANDERSON, KIENSTRA's initial marijuana source of supply had a number of marijuana customers in the Boston, MA area." (Ex. C p. 3.)  The context of the statement was a discussion of Kienstra's customers in the Boston area and, more specifically, a trip Saracino made to Boston to collect money for Kienstra.  There is a dispute as to whether Johnson raised a

---

[1] Rosenblum testified that he might have stepped out to use the bathroom or get a cup of coffee and that he did not recall Saracino mentioning Anderson, except to say that he had no information about Anderson and did not know him. (Tr. Vol. I p. 21, 27.)  Saracino testified that, when he mentioned Anderson, Rosenblum said something like he wasn't getting into it, indicating that Anderson was off limits, and they continued with the proffer. (*Id.* at 211-12.)  Investigator Ramey testified that Rosenblum did not interject to halt discussion of Anderson. (*Id.* at 80.)

[2] The proffer began around 2:00 p.m. and ended some time after 5:30 p.m. but probably before 6:00 p.m. (Tr. Vol. I p. 82; Tr. Vol. II p. 24-25, 72.)  AUSA Casey recalled that he left the proffer to attend a surprise party for AUSA Jim Crowe that began at 4:30 p.m. and that Investigator Ramey popped into Casey's office around 6:00 p.m. (Ex. 8; Tr. Vol. II p. 25, 72.)  Investigator Ramey took handwritten notes of the proffer that are in time sequence. (Ex. F; Tr. Vol. I p. 83.)  The mention of Anderson occurs on page 12 of 14, leading Ramey to estimate that it occurred in the last hour of the proffer. (Tr. Vol. I p. 83.)  Casey would not have been present then.

potential conflict when Saracino mentioned Anderson.[3]  AUSA Casey was only present briefly at the end of the proffer and was not present when Anderson was mentioned.[4]  AUSA John Davis' memory was that he began the proffer as a favor to Casey and then left. (Tr. Vol. II p. 109.) Davis had no memory of Anderson being mentioned. (*Id.*)

In addition to his statements in the June 24, 2014 and January 8, 2015 proffers, Saracino made incriminating statements about Anderson when he was first arrested.  On March 15, 2013, with the cooperation of an individual referred to as CS who would become a defendant in the Anderson case, investigators conducted a controlled delivery of ten pounds of marijuana and $27,000 in U.S. currency. (Ex. D.)  Saracino picked up the delivery for Kienstra and was arrested.  The report prepared by Agent Moles contains the following description of statements made by Saracino upon his arrest:

> Officer Earley asked SARACINO what was in the two boxes in the rear of his vehicle.  SARACINO stated, "I think it's like $25,000 to $30,000 in one box and ten (10) to twenty (20) pounds of weed.  I don't know.  I just pick it up and deliver it."  Officer Earley asked SARACINO whom he had picked up the boxes from and SARACINO described the area of 1605 South 9th Street.  SARACINO described the subject as a black male named "Smoke."  SARACINO stated that he met Smoke about a month ago and shortly after meeting him, SARACINO was offered the opportunity to pick up U.S. currency and deliver it to the supplier, who he identified as Thomas ANDERSON.  SARACINO described ANDERSON as a white male, approximately twenty-five years of age and SARACINO stated ANDERSON resides on Von Talge in St. Louis.  SARACINO stated he recently picked up $25,000 and delivered it to ANDERSON.  SARACINO stated that Tom

---

[3] Johnson testified that he recognized and raised the potential conflict, indicating that he could not be present while Anderson was discussed, and they moved on. (Tr. Vol. I p. 105-10, 129-30.) Agent Cunningham testified that Johnson did not interject to halt discussion of Anderson. (*Id.* at 138-39.)

[4] According to Agent Cunningham, the proffer started around "nine-ish" and lasted approximately two hours. (Tr. Vol. I p. 135-36.)  AUSA Casey had a plea hearing that day that began at 10:30 a.m. and concluded at 11:05 a.m. (Ex. 7.)  Casey recalled talking with defense counsel and the probation officer afterward and then going upstairs and talking to the agents on the case for a while. (Tr. Vol. II p. 77-78.)  He recalled that, when he appeared at the proffer, it was ending. (*Id.* at 77.)  He testified that he was not present when Anderson was mentioned. (*Id.* at 78.)

> COX was also involved in the distribution of marijuana.  SARACINO stated that COX was a white male, approximately twenty-five years of age and that COX resides on Tapawingo in St. Louis County.  Officers identified that SARACINO was in possession of three cellular telephones and SARACINO stated one of the telephones was supplied by Smoke.

(*Id.* at 8.)  The report goes on to state that, "Based on the investigation that led to the controlled delivery of the U.S. currency and marijuana to SARACINO, the officers confirmed that SARACINO was not telling the truth and SARACINO was placed under arrest for possession of marijuana." (*Id.*)  Because it was a controlled delivery, investigators knew that Saracino had picked up the delivery from CS, not "Smoke," and that Kienstra was the supplier, not Anderson.

Beyond the controlled delivery from CS, Saracino had no involvement with the Anderson organization.  He testified that he encountered Anderson socially through Kienstra on five to ten occasions, often in large groups. (Tr. Vol. I p. 220-23, 236-37.)  Saracino never had Anderson's phone number, Anderson never called him, and he had very little occasion to talk to Anderson even when they were in the same room together. (*Id.* at 223, 237.)  Anderson never discussed his involvement in drug trafficking or criminal activity with Saracino. (*Id.* at 237.)  At the evidentiary hearing, Saracino confirmed that the statements he made about Anderson after his arrest were false and that he was just trying to protect Kienstra. (*Id.* at 218-20.)  He further testified that he had no firsthand knowledge regarding the two statements he made about Anderson in the proffers and that they were largely based on things he heard from Kienstra. (*Id.* at 229-35.)

On July 7, 2015, a little over two weeks after Anderson's first evidentiary hearing before the undersigned, the Honorable Catherine D. Perry held a change of plea hearing for Saracino where the issue of conflicts related to Anderson and RSRG came up. (Ex. A.)  Saracino was represented by Johnson and the Government was represented by AUSA Casey.  In what Casey

conceded was "inartful drafting," the plea agreement stated that Saracino received proceeds from "members of the Thomas Anderson, Jr. conspiracy" in order to protect CS. (*Id.* at 16.)  In light of this language and her general knowledge of the recent hearing before the undersigned, Judge Perry expressed concern regarding potential conflicts of interest related to RSRG's multiple representations, as well as an incident to which Johnson had testified at the evidentiary hearing. AUSA Casey represented that Saracino had never mentioned Anderson and Saracino stated on the record that, while he had met Anderson, he did not know him. (*Id.* at 16, 28, 37.)  Following an inquiry by Judge Perry, Saracino waived any potential conflicts on the record.

After the plea hearing, AUSA Casey sent an email to AUSA Jim Delworth informing him of what had happened. (Ex. 9.)  He copied First Assistant U.S. Attorney Carrie Costantin and AUSAs Tiffany Becker and John Davis.  Casey also met with Costantin in person to discuss the matter.  The focus of the discussion was Judge Perry's concern regarding a potential conflict related to Johnson's conduct and how that would impact future pleas and cases involving Johnson, not a potential conflict involving Anderson and Saracino. (Tr. Vol. II p. 58-59.)  There was no further discussion of a potential conflict involving RSRG's representation of Anderson and Saracino and no further action was taken on the issue, until it was raised by defense counsel following their review of the discovery on or around August 3, 2016.

## DISCUSSION

Anderson argues that the denial of his motion to dismiss the indictment should be reconsidered in light of evidence that Saracino made incriminating statements about Anderson while they were both represented by Rosenblum and Johnson.  Applying the *Cuyler* standard,[5] Anderson has not shown that Rosenblum and Johnson labored under an actual conflict of interest

---

[5] *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

that adversely affected their representation of Anderson.  Consistent with what all parties believed to be true and what was represented to Judge Perry at Saracino's plea hearing, the evidence establishes that Saracino had no involvement with the Anderson organization, beyond the controlled delivery from CS, and that he had no relationship with or information on Anderson.

Anderson argues that his representation was adversely affected insofar as Rosenblum should have called Saracino to impeach Mitchell Hughes' testimony at Anderson's detention hearing before the Honorable Shirley Padmore Mensah on September 29, 2014, a little over two months after the June 24, 2014 proffer in which Saracino was represented by Rosenblum and mentioned that Anderson hired Hughes to help him rob Kienstra.  Anderson asserts that Saracino could have impeached Hughes' testimony that he was unaware of a plan to rob Kienstra when he flew to California to rough him up on Anderson's behalf.  Rosenblum testified that he did not think about calling Saracino because his information at the time was that Saracino did not know Anderson and had no information about him. (Tr. Vol. I p. 33.)

Regardless of whether Rosenblum interjected and was therefore aware of Saracino's statement at the June 24, 2014 proffer, Saracino's testimony would have had little impeachment value.  Calling into question Hughes' ignorance of a plan to rob Kienstra hardly undermines Hughes' testimony and Judge Mensah's conclusion that Anderson hired Hughes to go to California to assault and intimidate Kienstra.  Moreover, while hearsay is allowed at detention hearings, Judge Mensah specifically continued Anderson's detention hearing so that she could hear testimony from witnesses with direct knowledge of Anderson's dangerousness, such as Hughes.  The undersigned finds that calling Saracino to impeach Hughes at Anderson's detention hearing was not a plausible, objectively reasonable alternative defense strategy. *Morelos v.*

9

*United States*, 709 F.3d 1246, 1252 (8th Cir. 2013).  The undersigned further notes that the remedy for ineffectiveness at the detention hearing would be a new detention hearing, not dismissal of the indictment.

Anderson has not alleged any other way in which his representation was adversely affected by a conflict involving Saracino.  Even if Anderson could show that an actual conflict adversely affected his representation, he still has not shown that the Government committed the kind of intentional misconduct required to dismiss the indictment against him. *United States v. Pardue*, 983 F.2d 843, 847 (8th Cir. 1993).

The evidence establishes that counsel for the Government had no actual knowledge that Saracino had made incriminating statements about Anderson until August of 2016.  Neither AUSA Casey nor AUSA Davis was present when Anderson was mentioned in the proffers.  In addition, Casey had no memory of investigators mentioning Anderson in any discussion of the proffers and Agent Cunningham testified that he did not mention Anderson to Casey in his debrief. (Tr. Vol. I p. 145; Tr. Vol. II p. 27, 75, 78-79.)  Both Casey and Davis testified that they first became aware Saracino had mentioned Anderson on or around August 2, 2016 when, in reviewing the Kienstra discovery for any mention of Anderson, Casey discovered the June 24, 2014 proffer report and brought it to Davis' attention. (Tr. Vol. II p. 28, 33-34, 84, 108, 126, 129.)  Shortly thereafter, Casey discovered and disclosed the January 8, 2015 proffer report as part of his ongoing review of the Kienstra discovery. (*Id.* at 40.)  Casey and Davis further testified that the first time they read Agent Moles' report of Saracino's arrest was when Anderson produced it at the hearing before Judge Fleissig and the undersigned on August 15, 2016. (*Id.* at 37, 85, 127, 129.)

Insofar as it occurred, nondisclosure of the reports does not constitute a due process violation. *Kyles v. Whitley*, 514 U.S. 419, 436–37, 115 S. Ct. 1555, 1567, 131 L. Ed. 2d 490 (1995) (government retains "a degree of discretion" and due process "is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense"); *United States v. Bagley*, 473 U.S. 667, 678, 105 S. Ct. 3375, 3381, 87 L. Ed. 2d 481 (1985) (prosecution's failure to disclose material, favorable evidence constitutes a due process violation).

Moreover, there is no evidence that the Government derived any benefit from the alleged conflict or that Anderson's defense strategy was somehow disclosed to the Government. *United States v. Levy*, 577 F.2d 200 (3d Cir. 1978).  Agent Moles, the lead investigator on both the Anderson case and the Kienstra case, testified that he first heard about the incident involving Mitchell Hughes toward the beginning of the investigation in 2012 and that, by the time Saracino mentioned it in the June 24, 2014 proffer, Agent Moles had heard about it from at least two individuals not represented by RSRG. (Tr. Vol. I p. 173, 176.)  Agent Moles further testified that it was easy to assume that Anderson had customers in the Boston, MA area since Anderson was primarily residing there when the investigation began. (*Id.* at 182.)  Neither Saracino nor investigators followed up on his statements and investigators never questioned Saracino about Anderson.

Finally, while it would have been better to litigate this alleged conflict along with Defendant's initial motion to dismiss the indictment, AUSA Davis had no knowledge at the time regarding any allegation of a potential conflict involving Saracino.  He testified that he never read AUSA Casey's email relaying Judge Perry's concerns at Saracino's plea hearing. (*Id.* at 116.)

The most Anderson has shown is a lack of diligence on the part of the Government in reviewing discovery materials and identifying potential issues related to RSRG's multiple representations.  The undersigned finds that the Government's conduct, as to the alleged conflict involving Saracino or *in toto*, does not rise to the level of "outrageous" misconduct that "shocks the conscience," justifying dismissal of the indictment. *Pardue*, 983 F.2d at 847.  For the foregoing reasons, the undersigned recommends that Anderson's motion for reconsideration be denied.

**ACCORDINGLY,**

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Reconsider Defendant's Motion to Dismiss Indictment [Doc. # 751] should be **DENIED.**

The parties are advised that they have fourteen (14) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1).  Failure to timely file objections may result in a waiver of the right to appeal questions of fact.

Dated this 24th day of January, 2017.


                /s/ Nannette A. Baker
                NANNETTE A. BAKER
                UNITED STATES MAGISTRATE JUDGE