UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,    )
                             )
              Plaintiff,     )
                             )
       vs.                   )    Case No. 4:14CR00246AGF (NAB)
                             )
THOMAS GREGORY ANDERSON, JR.,    )
                             )
              Defendant.     )

## ORDER ADOPTING SECOND REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion to Reconsider Defendant's

Motion to Dismiss Indictment and Request for Supplemental Evidentiary Hearing, filed on

August 4, 2016.  (ECF #751.)  In his initial motion, Defendant requested dismissal of the

indictment, based primarily on certain pre-indictment and post-indictment conflicts of

interest by Defendant's prior counsel, Rosenblum, Schwartz, Rogers and Glass ("RSRG"),

and the failure of the prosecutor to prevent the conflicts of interest and other claims of

alleged improper conduct by the prosecutor.   By Order dated January 14, 2016, I adopted

the first Report and Recommendation (the "R&R") of the Magistrate Judge, and denied

Defendant's Motion to Dismiss for Irreparable Denial of Defendant's Constitutional Right

to Effective Assistance of Counsel.   (ECF #315.)

Shortly before trial, Defendant obtained from a defendant in another case, involving

the drug trafficking organization ("DTO") of Kyle Kienstra, certain witness statements of

Michael Saracino, a cooperating defendant in the Kienstra case, which included three

references to Defendant.  Because Saracino was represented by RSRG, Defendant filed the instant motion, requesting that I reconsider my prior Order denying Defendant's request to dismiss the indictment.  Defendant asserts that these statements of Saracino show that his prior attorneys had yet another conflict of interest, and that this conflict, together with the conflict previously asserted, negatively impacted his representation. Defendant also contends that the prosecutors should have been aware of and advised Defendant and the Court of this additional conflict, and that the prosecutors also misstated the facts to the Court.  He argues that this misconduct, together with the alleged misconduct discussed in his initial motion, warrants dismissal of the indictment.

The United States filed a Response (ECF #761), and I granted Defendant's request for a supplemental evidentiary hearing.  I again referred the matter to Magistrate Judge Nannette A. Baker, under 28 U.S.C. § 636(b).  Judge Baker held a supplemental evidentiary hearing on September 8 and 9, 2016, at which Defendant was represented by his attorneys, William S. Margulis and Justin K. Gelfand.  The United States was represented by Assistant United States Attorney James C. Delworth.  Numerous witnesses testified at the hearing, including government agents who were present for Saracino's proffer statements, two attorneys from RSRG, the lead prosecutors from the Anderson and the Kienstra cases, and Saracino.  Following receipt of the transcript, the parties submitted post-hearing briefs, and Judge Baker thereafter submitted a Second Report and Recommendation ("Second R&R"), recommending that Defendant's motion for reconsideration be denied.  (ECF # 873.)

Judge Baker found with respect to the new evidence that Defendant failed to demonstrate that RSRG labored under an actual conflict of interest that adversely affected their representation of Defendant. Judge Baker further found that Defendant still had not shown that the prosecutors had committed the kind of intentional misconduct that is required to warrant dismissal of the indictment, based in part on her subsidiary finding that the prosecutors had no actual knowledge that the cooperating witness had made incriminating statements about Defendant until August of 2016.

Defendant filed objections to the Second R&R (ECF #883), to which the United States responded (ECF #888). In his objections, Defendant reasserts some of the grounds raised in his motion for reconsideration. He further contends that the Magistrate Judge erred by failing to make an express finding with respect to whether RSRG had an actual conflict of interest, and erred in concluding that Defendant failed to demonstrate that any such conflict adversely affected counsel's representation. He also asserts that the prosecution team failed to do their jobs to discover and advise Defendant and the Court of this additional conflict of interest, and objects to the Magistrate Judge's conclusion that this failure, together with other alleged improprieties and the "troubling" conduct found in the prior Order, do not constitute the type of outrageous conduct that requires dismissal of the indictment.

When a party objects to a Report and Recommendation concerning a motion to dismiss in a criminal case, the court is required to "'make a de novo determination of those portions of the record or specified proposed findings or recommendations to which

objection is made.'"  *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003)

(quoting 28 U.S.C. § 636(b)(1)).

I have conducted a *de novo* review of the record, including a careful review of the

testimony of the witnesses and exhibits introduced at the hearings.   Based on my review, I

conclude that the Magistrate Judge, after a full and fair hearing, made proper factual

findings and correctly analyzed the issues.   I adopt and incorporate the Magistrate Judges'

factual findings, with three slight clarifications discussed below.[1]   The facts are recited in

the first and Second R&R, and will be summarized and supplemented only as necessary.   I

also adopt and incorporate the thorough reasoning and conclusions in the Second R&R.

### A.   Claims of Conflict-of-Interest by Defense Counsel

As set forth in the Second R&R, some years prior to 2011, Defendant Anderson and

Kyle Kienstra were jointly involved in a marijuana trafficking enterprise.   In

approximately 2011, however, Anderson and Kienstra had a falling out with respect to

their drug trafficking operations, and they parted ways, with each setting up his own drug

trafficking operation.   The criminal investigation of Anderson and Kienstra began in

approximately January of 2012.   Although the precise date when the decision was made to

---

[1] Statements on pages 7 and 9 of the Second R&R could be read to suggest that Saracino
had some involvement with the Anderson drug trafficking organization, as evidenced by
his involvement in the controlled delivery from an individual identified as "CS."
However, while CS had previously been involved with the Anderson DTO, at the time of
the controlled delivery, CS was not involved with the Anderson DTO and was at that time
purchasing narcotics from the Kienstra DTO.   Secondly, from the record of both hearings,
it is now unclear when the decision was made to split the cases into two separate
prosecutions, and I can no longer say whether the decision had or had not been made by
July 15, 2014, the date when the proffer of Corey Nuspl discussed in the first R&R took
place.   As discussed further below, I also do not agree with the statement on page 8 of the
Second R&R that "AUSA Casey represented that Saracino had never mentioned
Anderson."

split the case into two indictments is unclear, that decision had been made by sometime during the summer of 2014, and on August 13, 2014, two separate indictments were filed, one with respect to the Kienstra DTO, with Assistant United States Attorney (AUSA) Stephen Casey as the lead prosecutor, and one with respect to the Anderson DTO, with AUSA John Davis as lead prosecutor.

Prior to the indictments, in July and November, 2012, the United States began seizing items from the co-conspirators in the Anderson case, including the seizure of firearms and currency from Anderson in November, 2012. RSRG, primarily through associate Marc Johnson, provided representation with respect to forfeiture proceedings related to Anderson and co-defendant Hounsom. Although the representation pertained primarily to forfeiture proceedings, Attorney N. Scott Rosenblum ("Rosenblum") of RSRG first "began communicating with AUSA Davis regarding Anderson and a potential indictment" in approximately November or December, 2012.

In approximately March, 2013, Rosenblum began representing Michael Saracino, a close friend of Kyle Kienstra's who had become involved in Kienstra's drug trafficking operation. Attorney Johnson became personally involved in the representation of Saracino in approximately July of 2014. The record is undisputed that Rosenblum advised Anderson and Kienstra of the firm's representation of the other, and they each consented. From the outset of Rosenblum's representation of Saracino, Saracino made clear his decision to provide cooperation to the government with respect to the Kienstra investigation. Rosenblum also understood that Saracino did not really know Anderson,

had not been involved in any drug dealing with Anderson, and did not intend to cooperate against Anderson or the Anderson DTO.

As set forth in the Second R&R, Saracino participated in seven proffers with government agents, five pre-indictment, and two post-indictment. The first proffer was on June 24, 2014.[2] It lasted approximately three and one-half hours, and is summarized in a report that is 13 pages long, single-spaced. Both this proffer, and the six that followed, focused solely on the Kienstra organization, providing extensive details regarding the Kienstra DTO. Together, the summaries of the seven proffers span more than 30 pages, single-spaced.

At issue in the motion for reconsideration are two isolated statements made by Saracino during the course of his seven proffers. The first occurred pre-indictment, on June 24, 2014. In discussing enforcers used by Kienstra, the summary of the proffer reflects that Saracino mentioned that Anderson had hired a man identified as Mitchell Hughes to rob Kienstra, and that Saracino later approached Hughes to work for him as an enforcer. The second mention of Anderson occurred on January 8, 2015. Saracino had been asked about his own activities in Boston on behalf of Kienstra, and about one trip in particular. And after discussing the details of the trip he made on behalf of Kienstra to pick up marijuana proceeds and return them to St. Louis, Saracino added that Anderson, who had been Kienstra's initial source of supply, also had marijuana customers in Boston.

The third item at issue relates to a DEA summary provided as discovery in the Kienstra case that was given to Anderson by one of the Kienstra defendants. That DEA

---

[2] The pre-indictment proffers occurred on June 24, July 2, July 22, August 6, and August 11, 2014, and the post-indictment proffers occurred on January 14 and July 10, 2015.

summary showed that in March, 2013, Saracino falsely implicated Anderson in connection with a marijuana transaction.   Specifically, on March 15, 2013, Saracino went to make a pick-up of marijuana and cash on behalf of Kienstra, not knowing that the individual from whom he was making the pickup ("CS") was cooperating and that it was in fact a controlled delivery being conducted in connection with the investigation.   CS had previously been a member of Anderson's organization, but became disenchanted with Anderson and started getting his marijuana from Kienstra, which was the status in March of 2013.   Saracino was arrested, and interviewed by the agents.   In an effort to protect his friend, Kienstra, Saracino falsely told the agents that Anderson was the source of the marijuana.   He also falsely identified the person from whom he had made the pickup, identifying him as a person named "Smoke," and made other false statements.   Because it had been a controlled delivery and CS was cooperating, the agents knew that Saracino was lying about both the source and the customer, and they terminated the interview and placed him under arrest.

Defendant contends that Rosenblum's representation of both Anderson and Saracino at the time that Saracino made the two incriminating statements about Anderson during his proffers constitutes an irreconcilable conflict of interest, and that the conflict adversely impacted Rosenblum's representation of Anderson.   Defendant objects to the Magistrate Judge's finding that Defendant failed to show that any conflict adversely affected RSRG's representation of Anderson, and further contends that the Magistrate Judge erred by failing to make an express finding with respect to whether there was a conflict of interest.

For the reasons discussed below, Defendant's objections to the Second R&R related to the conflict of interest are not well-taken. At the outset, I reiterate the conclusion in my prior Order that because Defendant has no constitutional right to effective assistance of counsel prior to the indictment, his claims based on any alleged pre-indictment conflict of interest must fail. *See United States v. Gouveia*, 467 U.S. 180, 188 (1984). Assuming *arguendo* that Defendant has such a right, even under the more liberal standard of *Cuyler v, Sullivan*, 446 U.S. 335 (1980), for a presumption of prejudice to apply, Defendant would be required to demonstrate that there was an actual conflict of interest that adversely affected his lawyers' performance. *Id.* at 350; *Plunk v. Hobbs*, 766 F.3d 760, 764 (8th Cir. 2014). This, in turn, requires Defendant to (i) identify a plausible alternative defense strategy or tactic that counsel might have pursued, (ii) show that the alternative strategy was objectively reasonable under the facts, and (iii) establish that defense counsel's failure to pursue the alternative strategy was linked to the actual conflict. *Morelos v. United States*, 709 F.3d 1246, 1252 (8th Cir. 2013).

From a full review of the record, I agree with the Magistrate Judge that Defendant has failed to show that any conflict of interest adversely affected defense counsel's representation, and that Defendant therefore fails to meet the standard under *Cuyler*.

In his objections, Defendant first argues that the conflict adversely affected his representation because Rosenblum should have called Saracino as a witness at Anderson's detention hearing to impeach Hughes's testimony that he was unaware of any plan to rob Kienstra when he flew to California to rough him up for Anderson. But like the Magistrate Judge, I find that calling Saracino to impeach Hughes was not a plausible,

objectively reasonable alternative strategy.   This is so for several reasons.   First, inasmuch as Judge Mensah had requested to hear from witnesses with first-hand knowledge with respect to any allegations of violence[3], there is little reason to believe that Judge Mensah would have found Saracino's hearsay testimony at all persuasive.[4]   Further, from my review of the exhibits, it is not at all clear that Saracino's statement at the proffer actually differed from Hughes' testimony at the detention hearing.   The handwritten notes of the agent recite that Saracino said Anderson hired Hughes to beat up Kienstra, just as Hughes testified.   (Def. Ex. F.)   Only the typed summary references robbing Kienstra. Even if one disregards the contemporaneous handwritten note, there is still no reason to believe Sarasino's testimony would have impeached Hughes' testimony.   Saracino only knew what Kienstra had told him had occurred.   Any reasonably experienced defense attorney would have ascertained the basis of Saracino's knowledge before calling him to testify, and determined that it was hearsay.   And Saracino's hearsay knowledge from Kienstra would have had no bearing, whatsoever, on what Anderson in fact discussed with Hughes.   What is more, it is difficult to accept that experienced defense counsel would have believed that impeaching Hughes to establish that he was hired by Anderson both to beat up Kienstra *and to rob him* would have helped Anderson's cause at the detention hearing.

[3] To understand the context, it is important to note that the incident related to Hughes was not the only evidence of violence by Anderson offered at the detention hearing, and his violent actions and carrying of firearms were not the only basis for the motion for pretrial detention.

[4] Defendant makes much of the fact that Saracino did not tell the agents at his proffer that his information was hearsay.   But the agents were well aware of the incident at the time ofSaracino's proffer, and knew Saracino had not been present.   Indeed, Saracino incorrectly recalled that the incident had happened in Boston, instead of California.

Perhaps recognizing the weakness of his initial argument, Defendant contends that the real problem was that due to his conflict of interest, Rosenblum was not in a position fairly to evaluate whether to call Saracino to impeach Hughes. But this is not persuasive. Rosenblum understood that Saracino had no first-hand knowledge about Anderson's drug trafficking activities, a fact Saracino confirmed through his testimony at his plea and at the evidentiary hearing. Rosenblum therefore would know that any hearsay knowledge Saracino had would not be relevant on the narrow issue of what Anderson had in fact hired Hughes to do – just rough up, or rough up and rob. Further, Saracino's personal doubt about whether the assault had actually occurred, because he did not see any marks on Kienstra, was not mentioned at the proffer. It also would have carried little if any weight, as Hughes had testified that he only hit Kienstra once and then threatened him.

Defendant's final claim of adverse impact on his representation also lacks merit. Defendant contends that RSRG's representation of Anderson was adversely impacted by RSRG's failure to inform Anderson that Saracino had provided information about him to the government. But the Magistrate Judge correctly found that Rosenblum was unaware of Saracino's false March 2013 statement, and I believe that Rosenblum either did not hear or did not register the single sentence Saracino mentioned about Anderson in his June 24, 2014 proffer.[5] Moreover, both of these statements were given pre-indictment, when Defendant had no constitutional right to conflict-free representation. While the statement

---

[5] Although summaries of Saracino's statements were provided to Rosenblum at some point, I accept and find credible Rosenblum's explanation that he had little cause to review the written summaries during the time period at issue here because Saracino was actively cooperating from the outset, and all of the defendants in the Kienstra case ultimately pleaded guilty, such that Saracino was never required to testify. Further, either Rosenblum or Johnson attended each of Saracino's proffers.

at the January 2015 proffer about Anderson having marijuana customers in Boston occurred post-indictment, it did not recount anything that was not already recited, in far greater detail, in the indictment.   I simply cannot accept the proposition that knowing that Saracino had made a general hearsay statement, consistent with what the indictment alleged in great detail, would have been of any importance to Anderson,[6] especially where, as here, Anderson must have known that Saracino had no involvement in Anderson's DTO.

Furthermore, Defendant's contention, that "[t]his is important because Anderson did not have the benefit of this information when considering whether to enter a plea of guilty and to cooperate in November 2014," is both disingenuous and unsupported by the record.   (ECF No. 883, at 26.)   Defendant has never expressed interest in any plea the government was willing to offer, and it is not believable that these insignificant bits of information would have changed that.   In addition, both Defendant and his attorneys had been advised that the prosecutors were not interested in any cooperation from Anderson, either in November 2014 or any other time.   *See Plunk*, 766 F.3d at 765 (holding that a conflict of interest cannot adversely affect representation regarding the exploration of potential plea opportunities if the prosecutor would not have been receptive to a more favorable plea bargain).

---

[6] Defendant's contentions with respect to the pre-indictment statements also fail for similar reasons.   It is not plausible that Anderson somehow would have benefited from knowing that Saracino had falsely implicated him in a statement the agents knew to be false.   Nor can Defendant credibly argue that Saracino's statement about Anderson hiring Hughes to rob or rough up Kienstra would have been important for him to know.   Anderson knew that Saracino had no first-hand knowledge of the event.   He and his counsel also knew that the government already had other sources who had provided information about the incident, including those to whom Anderson had bragged about the incident and of course Hughes – who had first-hand knowledge.

As discussed in the Second R&R, having found no adverse effect on Defendant's representation as a result of any alleged conflict, it is not necessary to determine whether there was an actual conflict of interest.   But on this record I further find that RSRG had no reason to know of any actual conflict of interest as a result of its representation of both Saracino and Anderson.   There is nothing in this record suggesting that Rosenblum knew about Saracino's March 15, 2013 statement during the time period that he was representing Anderson.   Because the agents knew it to be untrue, they did nothing, whatsoever, to follow up on the false statement with respect to Anderson.   Importantly, at his initial proffer, at which Rosenblum was present, Saracino discussed the transaction that led to his arrest in March of 2013, and truthfully identified CS as the customer and Kienstra as the source of the marijuana.

With respect to the statement about Anderson at the June 24, 2014 proffer, which was also pre-indictment, I do not find that Rosenblum even registered that Saracino had made the statement.   He does not recall being aware of the statement.   Given the context, overall, this is not unreasonable.   Rosenblum understood that Saracino neither had, nor intended to offer, cooperation against Anderson; his cooperation was solely with respect to the Kienstra organization.   Because Saracino was cooperating and speaking pursuant to a proffer agreement, Rosenblum credibly testified that he did not need to listen to Saracino's statements with the same degree of care as he might otherwise.   And it was but a single sentence made during the course of a three and one half hour proffer.   Further, the focus of even that comment was on Kienstra's conduct, not Anderson's.   Saracino was either asked about or had moved on to discuss enforcers used by Kienstra, and he discussed "Big," later

identified as Hughes, and proceeded to discuss Big's activities for Kienstra, as well as another enforcer Kienstra used. The information about Anderson was offered in the context of background. The agents did not follow up with any questions regarding Anderson's dealings with Hughes, and did not show Saracino a picture of Anderson. Thus, it was nothing more than a single background statement, made in passing, explaining how Kienstra came to know Hughes, and would not reasonably have put Rosenblum on notice of a conflict of interest. This is especially true as Saracino had advised Rosenblum that he did not have any knowledge about Anderson's DTO.

Saracino's statement made during the January, 2015 proffer was made post-indictment and in the presence of Marc Johnson, and Johnson acknowledged that he was aware of the statement. In the context of discussing a trip to Boston he had made on behalf of Kienstra, Saracino mentioned that Anderson, who had initially been Kienstra's source for marijuana, also had marijuana customers in Boston. Again, it was a single sentence, made in passing, and was not deemed important. As agent Moles testified, the information about Anderson having been the source was historical information, relating to a time period well before the investigation. And that Anderson had marijuana customers in Boston was not news to anyone. This proffer took place nearly five months after the date of the indictment, which was replete with allegations regarding Anderson's marijuana trafficking in Boston, and after the government's disclosure of discovery in the Anderson case. The agents did not follow-up or ask any further questions about Anderson – because what he said was not material and the agents were not interested in discussing Anderson with Saracino. This was now Saracino's sixth detailed proffer focused solely on the

Kienstra organization. Though Johnson might have conducted himself differently, it was not unreasonable for him to ascribe little weight to the statement. As such, this single sentence would not have put Johnson on notice as to any real or potential conflict of interest vis-à-vis Anderson, and did not give rise to an obligation to advise Anderson of the statement.[7]

Defendant makes much of the fact that Rosenblum and Saracino had both discussed that Saracino was not going to provide information about Anderson. However, it does not follow that there must therefore have been a conflict of interest, as Defendant suggests. It was appropriate for Rosenblum to provide such an instruction to Saracino inasmuch as he disclosed to Saracino that he was representing Anderson, just as he disclosed his representation of Saracino to Anderson. Defendant's further attempt to suggest that there was a conflict, but that Defendant was somehow prevented from pursuing same based on the attorney-client privilege between Saracino and Rosenblum, has no basis in the record. Defendant had a full opportunity to question Saracino, who confirmed that he had no knowledge about Anderson's DTO. On this record it is clear that Saracino, the attorneys at RSRG, and the government attorneys all knew that Saracino was providing cooperation only with respect to the Kienstra organization. Equally important, Saracino and Anderson both knew that Saracino did not have any dealings with Anderson regarding Anderson's marijuana trafficking operation. These three, essentially immaterial statements on which Defendant relies do not suggest otherwise, and Defendant cannot create a conflict of

---

[7] The government notes that by this time Anderson had already decided to obtain new counsel. But while the relationship may effectively have ended, on this date RSRG was still counsel of record.

interest through unsupported innuendo. Thus, on this record Defendant has not established that Rosenblum or Johnson had reason to believe there was any actual conflict of interest.

Finally, there is no basis for the relief Defendant seeks. This case is not at all like *United States v. Levy*, 577 F.2d 200 (3d Cir. 1978), which involved a post-indictment conflict of interest between two defendants in the same case, and where the defendant established that his defense strategy had been disclosed to the prosecutors. The record here is devoid of any evidence of benefit to the government. As has been repeatedly noted, what Defendant has a right to is conflict-free representation. And he has had that for more than two years. Accordingly, Defendant's contention that he is entitled to dismissal of the indictment based on any alleged conflict of interest has no merit.

## B. Alleged Government Misconduct

In the Second R&R, the Magistrate Judge found that the most Anderson had shown was "a lack of diligence on the part of the Government in reviewing discovery materials and identifying potential issues related to RSRG's multiple representations" and that "the Government's conduct, as to the alleged conflict involving Saracino or *in toto*, does not rise to the level of 'outrageous' misconduct that 'shocks the conscience,' justifying dismissal of the indictment." (ECF No. 873, at 12.) Defendant objects to both of these findings.

Defendant recognizes that "[t]he level of outrageousness needed to prove a due process violation is quite high, and the Government's conduct must shock the conscious of the court." *United States v. Pardue*, 983 F.2d 843, 847 (8th Cir. 1993). He contends that

the Government's conduct discussed in the first R&R was already outrageous enough to justify dismissal. He then argues that the failure to disclose the additional conflict of interest with Saracino, together with what he suggests are misrepresentations by the prosecutors, requires dismissal. But I already rejected Defendant's argument that dismissal was warranted based on the conduct discussed in the first R&R, and nothing about the government's conduct with respect to Saracino provides a basis to change that conclusion.

Defendant essentially raises five objections to the Second R&R regarding his alleged due process violation. First, Defendant argues that it was inexcusable for the prosecution team to fail to disclose the conflict created by RSRG's representation of Saracino and Anderson because the agents, who were part of the prosecution team, certainly had access to the statements Saracino made, and the only reason the prosecutors did not know was because they failed to do their jobs. Second, Defendant argues that the discussion with Judge Perry at the Saracino plea regarding the possible conflict of interest, which occurred soon after the first evidentiary hearing and prior to the date the first R&R was adopted, was improperly ignored by the prosecutors. Third, Defendant complains that the government refused to disclose a second set of discovery to Anderson's current counsel, and contends the prosecutors would never have gone through the Kienstra discovery were it not for Defendant's insistence. Fourth, Defendant notes that Anderson would never have known of the 2013 statement had Anderson not obtained a copy, and contends that the government repeatedly represented to the Court that Saracino did not know Anderson, when at least three documents in their files reflect otherwise. Fifth,

Defendant asserts that the prosecutors have made inconsistent and untrue statements to the Court, and that their lack of candor justifies dismissal. After careful review of the record, I find Defendant's objections are not well taken.

As discussed above, the agents who were present for the three statements by Saracino did not consider his statements about Anderson to be material. They knew Saracino was not telling the truth in March, 2013, and totally dismissed the statement. Defendant attempts to inflate the importance of the statement by noting that Saracino never expressly told the agents he had lied. But what Defendant fails to mention is that when Saracino next spoke to the agents in his first proffer, he told them of this incident with CS, and truthfully identified CS as the customer and Kienstra as the supplier.

The agents also knew Saracino's statement in the June 2014 proffer with regard to Anderson hiring Hughes to be hearsay and did not follow up on the comment. Although Defendant repeatedly emphasizes that Saracino did not identify the June 2014 statement about Hughes as a statement based on hearsay, that makes no difference. As the Magistrate Judge noted, the agents had first heard about the incident toward the beginning of the investigation in 2012, and had heard about it from at least two sources not represented by RSRG by June 2014. As a result, they knew from their investigation that Saracino had not been present, and that what Saracino said about the location of the incident was even incorrect. When reporting about the proffer to AUSA Casey, the agents made no mention of the comment about Anderson.

The same is true with respect to the third statement, made in January 2015. Again, it was a single sentence, offered in passing. There was no follow-up whatsoever, and it

told the agents nothing they did not already know.   Anderson's marijuana trafficking

operations in Boston are detailed in the indictment and had been provided to the agents by

multiple sources.   Indeed, in December, 2014, Brian Lord testified in a hearing before me

in this case about the fact that Kienstra and Anderson used to traffic in marijuana together,

but had had a falling out over money, and also testified about certain customers in Boston

to whom Anderson shipped marijuana from California.   Again, Saracino's statement

simply was not important to their investigation and was not related to the prosecutors.

The prosecution team never even considered using Saracino as a witness about either of

these matters or about anything else related to Anderson.

Nor do I accept Defendant's contention that the failure of the prosecutors to learn of

Saracino's statements constitutes "misconduct."   The record is clear that neither Casey

nor Davis were present when Saracino uttered these two sentences at the proffers, and the

agents who conducted the proffers did not advise either prosecutor of the statements.

AUSA Davis was not given copies of the summaries of Saracino's proffers, because he was

not handling the Kienstra case and Saracino was not providing cooperation with respect to

any case but the Kienstra case.

The summary of the June 2014 statement was given to AUSA Casey at some point

after it was finalized on July 10, 2014.   But the date when he received it is unclear, and it

would have been shortly before the date of the indictment, when he had the obligation to

turn over discovery materials.   There were more than 700 pages of agent summaries of

witness statements, and almost 1000 pages of discovery in the Kienstra case, and he had

received an oral report of the proffers from the agents.   While a review of all of the

discovery prior to its turnover might be considered best practice, I cannot say on this record that AUSA Casey performed his obligations improperly by failing to review the summary of the June 2014 proffer. Defendant's argument with respect to the January 2015 proffer is even weaker. AUSA Casey did not receive the summary of that statement until later in the summer of 2015, near the time of the plea hearing of co-defendant Brecker in July, 2015. There was little need to review it at that time as the docket sheet reflects that by this time, almost every defendant in the Kienstra case had pleaded guilty, and Saracino was a cooperator whose testimony in the case was never needed.

Moreover, neither prosecutor was required to disclose Saracino's statements as part of the discovery in the Anderson case. The statements are not reasonably within the scope of Rule 16 material regarding Anderson, and would only need to be disclosed if Saracino testified in Anderson's prosecution – which was never a possibility. Like Judge Baker, I do not agree that disclosure was required under *Brady*, as Saracino's statements about Anderson were not exculpatory and were never going to be offered in the prosecution against Anderson. Nor would the March 2013 statement require disclosure to Anderson under *Jencks* or *Giglio*, as the agents knew the statement was a lie, and Saracino was never even considered as a prosecution witness in the Anderson case. The summaries of Saracino's statements and all other *Brady* materials were properly disclosed to the defendants in the Kienstra case, which is the only case in which disclosure was required.

Even if AUSA Casey had reviewed the Saracino statements at an earlier point in time, it is doubtful in the context of the case overall that they would have alerted him to a possible conflict of interest. The first statement was a known lie, the two comments in the

proffers were made in passing and had little significance, and it was never a prospect that Saracino would be used as a witness in the Anderson case.

Nor was the prosecutors' conduct following Saracino's July 7, 2015 plea hearing unreasonable. Judge Perry stated that her concern arose from language in the Saracino plea agreement reciting that at certain points of the conspiracy Saracino delivered marijuana to or received proceeds from members of Thomas Anderson's marijuana drug trafficking organization. AUSA Casey explained at the plea hearing, however, that that language referenced the incident between Saracino and CS (*ie.*, the March 2013 incident), and that Casey had drafted the language in that manner to protect the identity of CS. At worst AUSA Casey is guilty of poor drafting. And I find no evidence that he made any misrepresentations of fact at the plea hearing. Although the Second R&R states that "AUSA Casey represented that Saracino had never mentioned Anderson," (ECF #873 at 8), a close reading of the transcript shows otherwise. What AUSA Casey said at the plea hearing was, "During the proffers preindictment that I sat in with Mr. Saracino, he never once mentioned Anderson and none of his information went to Mr. Anderson." (Def. Ex. A, at 16.) This was entirely true, as AUSA Casey was not present when Saracino uttered either sentence regarding Anderson. And at the plea hearing, Saracino did not say he did not know Anderson; he explained that he had met but didn't really know Anderson, which again is borne out by the record. Any potential conflict was resolved to Judge Perry's satisfaction. Notably, no information or facts were discussed at the plea hearing suggesting the existence of any real or potential conflict of interest by virtue of RSRG's representation of Anderson and Saracino.

The only notice that AUSA Davis, who was not involved in the prosecution against Saracino, received of the plea hearing was from AUSA Casey's email, which he did not read. Clearly it would have been better had AUSA Davis read the email, which possibly might have prompted him to inquire further. But the email's header did not reference the Anderson case; it said "FYI Johnson," and the main concern raised related to future cases that might be handled by Marc Johnson.[8] Nothing in the email or the plea hearing would reasonably have alerted AUSA Davis to any actual conflict of interest between Saracino and Anderson, and further inquiry would only have confirmed there was no conflict.

With respect to Defendant's third and fourth objections, it does appear to be correct that the prosecutors would never have located and produced these three documents from the Kienstra discovery had Defendant not obtained them from the Kienstra defendants. For the reasons discussed above, however, that is somewhat understandable in the context of the cases overall, and is far from outrageous. AUSA Casey did admit that he had missed the summary of the March 2013 arrest of Saracino, but Casey searched the file for any mention of Anderson, and there is nothing in the record to suggest that Casey did not search the voluminous Kienstra discovery in good faith.[9] That he missed this single document does not constitute outrageous government behavior.

---

[8] Judge Perry had a second concern, unrelated to Defendant's motion in this case, pertaining to evidence of possible unethical or unlawful conduct by Johnson arising from his delivery of a cell phone to Anderson while Anderson was in custody. Judge Perry was concerned about the need for Johnson to disclose to all of his clients, including Saracino, the possibility that ethics or other legal proceedings could be brought against Johnson, and she had Johnson address that matter with Saracino at the hearing.

[9] Defense counsel had a copy of the document, but refused to show it to the government attorneys until Defendant produced it at the hearing.

Nor did the prosecutors make misrepresentations to the Court, as Defendant suggests. Saracino represented to his attorneys that he didn't really know Anderson, and to the extent Rosenblum or Johnson discussed representation of both clients with the prosecutors either at the outset of the case or at the Saracino plea, this is what RSRG would have said. The prosecutors did not misrepresent Saracino's knowledge of Anderson. The record fairly reflects what Saracino has repeatedly stated, under oath: that he did not really know Anderson. He had met him 5 to 10 times by virtue of his friendship with Kienstra. Those meetings either took place at the gym, where Saracino worked out with Kienstra, or at social gatherings at bars or other places, where Kienstra and others were present. Saracino never discussed Anderson's drug trafficking with him and had never had any involvement in Anderson's marijuana trafficking. Tellingly, apart from these three isolated statements, Anderson has offered no evidence suggesting that Saracino and Anderson had any relationship, or that Saracino had any competent evidence to offer with respect to Anderson.

Further, the prosecutors' statements that they were unaware of these three isolated statements by Saracino are credible, and their explanation for why that occurred is reasonable in the context of the investigation overall. These were very large and complicated cases, with some historical overlap, and a bit of overlap with a few players, like CS, and Saracino was only one of several cooperating witnesses. The only inconsistent statement in the record relates to the date when the decision was made to split the cases into two. At the most recent hearing, AUSA Davis acknowledged that his prior statement that the cases had not been divided by July 15, 2014 is perhaps incorrect, and that

he really did not know either in 2015 or thereafter exactly when the division of the Kienstra and Anderson investigations occurred. Based upon the record as a whole, it is unclear when the decision was made to split the cases into two; it may have been made at or before the July 2014 proffer of Nuspl. Thus, the conduct in this case is nothing like the kind of intentional lack of candor that gave rise to a dismissal in the case cited by Defendant, *United States v. Omni Intern. Corp.*, 634 F. Supp. 1414, 1423 (D. Md. 1986). Moreover, the uncertainty as to the timing of the separation has little if any impact on the analysis, as the following material facts are true: the investigation began in early 2012 as a single investigation, with AUSA Davis as the lead prosecutor. At some point in the summer of 2014, the decision was made to split the case into two separate prosecutions. From that point forward, AUSA Davis handled the Anderson case and AUSA Casey handled the Kienstra case, and AUSA Casey knew little about the Anderson case. At the time that AUSA Davis was meeting with Corey Nuspl in July 2014, he had been and was still juggling a lot of potential defendants, and the decision of who to indict had not been made.

As I found in my prior Order regarding the issue of RSRG representing both Nuspl and Anderson, RSRG should have maintained a system for monitoring potential conflicts of interest. And even if Anderson has no Sixth Amendment right pre-indictment, AUSA Davis probably should have recognized the conflict and advised Nuspl to obtain new counsel if he wished to cooperate. But in this context, with AUSA Davis having been involved with more than thirty potential defendants, his failure to register that Rosenblum was representing Anderson while Rosenblum's partner, Joel Schwartz, was representing Nuspl, is disappointing, but does not constitute the type of outrageous conduct that

warrants a dismissal of the indictment. That is especially so where, as here, the proffer was pre-indictment, the representation of both continued post-indictment for a very brief period of time, and the government derived no benefit. I find no intentional misrepresentation by AUSA Davis or intent to mislead the Court. Thus, the fact that Davis has now admitted that he is uncertain when exactly the decision was made to split the cases does not cause me to reconsider my prior Order.

This further evidence with respect to Rosenblum's representation of Saracino and Anderson does not provide any additional basis for dismissing the indictment. There was no actual conflict of interest, and no reason for the prosecutors reasonably to be aware of any conflict. More importantly, I agree fully with the Magistrate Judge's finding that "there is no evidence that the Government derived any benefit from the alleged conflict or that Anderson's defense strategy was somehow disclosed to the Government." (ECF #873 at 11.) As such, this case is not at all like the situation the court addressed in *United States v. Levy*. Nor has Anderson offered any evidence whatsoever that RSRG's representation of Saracino affected Defendant's decisions or limited his ability to provide cooperation against Saracino, or that he even had any cooperation to offer against Saracino, and the record is undisputed that the government was not willing to accept any cooperation from Anderson in any event.

## CONCLUSION

Neither the fact that RSRG represented both Saracino and Anderson, nor the conflicts discussed in the prior Order, either alone or together, suggest that Defendant's counsel had an actual conflict of interest that adversely affected counsel's representation of

24

Defendant, and Defendant would not be entitled to dismissal of the indictment as a result of the type of conflict asserted herein in any event.   Nor do Defendant's allegations of purported misconduct by the Goverment warrant a dismissal of the indictment.   Dismissal of an indictment on due process grounds "is reserved for conduct that falls within that narrow band of the most intolerable government conduct."   *United States v. King*, 351 F.3d 859, 867 (8th Cir. 2003) (internal quotations omitted).   For the reasons stated above, and the reasons stated in the Second R&R, the conduct here, whether considered alone or in total, does not meet the standard for dismissal of the indictment.

Accordingly,

**IT IS HEREBY ORDERED** that the Second Report and Recommendation of United States Magistrate Judge [ECF # 873] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein, and Defendants Objections to the Report and Recommendations [ECF #883] are **Overruled**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Reconsider Defendant's Motion to Dismiss Indictment [ECF # 751] is **DENIED**.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 20th day of June, 2017.