UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CR246 AGF (NAB) |
| | ) | FILED UNDER SEAL |
| THOMAS GREGORY ANDERSON, Jr., | ) | |
| | ) | |
| Defendants. | ) | |

## GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S TWO MOTIONS TO COMPEL

Comes now the United States of America by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri and John T Davis, Assistant United States Attorneys for said District, and responds to Defendant's two separate Motions to Compel [Doc. 1068] and [Doc. 1074] as follows:

### Introduction

On November 11, 2017, Defendant Anderson, through counsel, filed a Motion to Compel the government to provide Anderson access to a cellular iPhone bearing telephone number 480-842-6409 (**subject phone**) that had previously been smuggled into the Warren County Jail for reasons still not completely known.   [Doc. 1068]   Defendant Anderson then filed a separate, *pro se,* Motion to Compel AT&T to provide certain documents. [Doc. 1074]   The government hereby provides its consolidated response to both motions.

Defense counsel's Motion to Compel [Doc. 1068] states that it is being filed at Anderson's request and is "based on evidence obtained since [substantial pretrial litigation], Anderson is investigating the possible existence of new evidence that he believes may be

1

necessary to at least raise at the district court level to preserve issues prior to filing an appeal with the United States Court of Appeals for the Eighth Circuit."   This motion fails to identify either the evidence allegedly obtained subsequent to the pre-trial litigation, or the "new evidence" for which he states there is a "possible existence."

**Background**

On February 25, 2015, Attorneys Arthur Margulis, William Margulis and Justin Gelfand of Capes, Sokol, Goodman & Sarachan, P.C. (Capes Sokol) met with representatives of the United States Attorney's Office concerning their client Thomas Anderson, Jr. (hereinafter, "defendant Anderson") in the above-styled cause.   During the meeting, counsel for defendant Anderson raised issues that occurred prior to their involvement in the case while defendant Anderson was represented by the firm Rosenblum, Schwartz, Rogers and Glass, PC (RSRG). Specifically, Capes Sokol reported that during the time defendant Anderson was represented by RSRG, an RSRG attorney had smuggled the **subject phone** into the Warren County Jail and provided it to defendant Anderson.   Capes Sokol further claimed that the RSRG lawyer had provided defendant Anderson with the **subject phone**, knowing full well that defendant Anderson intended to use the **subject phone** to arrange a drug shipment of marijuana or wax, the purpose of which was to raise funds to pay RSRG an additional fee they were requesting.

At the time of the February 2015 meeting between the United States Attorney's Office and Capes Sokol, co-defendant Brian Hounsom (hereinafter, "Hounsom") was on bond and residing with Rachel Anderson, defendant Anderson's sister.   Also at that time, the government possessed recordings of telephone calls placed by defendant Anderson from the jail facility. During one such call on September 11, 2011, defendant Anderson spoke with Hounsom and

requested that Hounsom deliver an unspecified item to RSRG lawyer Scott Rosenblum, who

planned to visit defendant Anderson on the following day.   Hounsom agreed to contact another

RSRG attorney, Marc Johnson, to make arrangements to meet and deliver the item to Johnson.

Sworn testimony elicited during multiple pre-trial hearings in the instant case revealed that the

unspecified item to which defendant Anderson was referring (and which Hounsom agreed to

provide to Johnson) was the **subject phone**.

In an effort to confirm or dispel the allegations that members of RSRG law firm

counselled defendant Anderson to conduct a narcotics transaction from the Warren County Jail,

the undersigned met with Hounsom and his attorney on March 19, 2015.   During that meeting,

Hounsom advised that defendant Anderson had utilized the **subject phone** to make a call while it

was in his possession in the Warren County Jail.   According to Hounsom, defendant Anderson

placed the call utilizing a downloaded cell phone application (app) that allows wi-fi assisted

conversation.   This technology, if utilized properly, enables users to avoid detection by

traditional law enforcement wiretaps.   Hounsom claimed that because the call was made using

this particular app, the conversation was memorialized in text on the **subject phone.**   Although

Hounsom claimed to have read portions of the text, he stated that he could not recall the topic of

the conversation.

Hounsom provided the government with the telephone number and service provider

corresponding to the **subject phone.**   Thereafter, the government served a subpoena on AT&T,

requesting that AT&T provide toll records for the **subject phone** for a period including the date

on which the **subject phone** was in defendant Anderson's possession at the Warren County Jail.

In response to the subpoena, AT&T reported that the number provided was not an AT&T

number.   The response further stated that the **subject phone** *may have* roamed on the AT&T network or received/made calls from/to an AT&T subscriber during the date range requested. However, that usage was not enclosed.

In a further effort to investigate Hounsom's claims about the **subject phone**, on April 20, 2015, the government served a subpoena upon Capes Sokol requiring that Capes Sokol relinquish the **subject phone** to the government.   Capes Sokol complied, and the government thereafter conducted forensic testing on the **subject phone** in an effort to determine whether it confirmed Hounsom's claim that it contained a text transcript of the conversation in which defendant Anderson allegedly orchestrated a drug transaction from the Warren County Jail. Forensic testing failed to yield any evidence of any such recording.   The government continued to seek information from Hounsom, only to be denied.   Hounsom ceased cooperating with the government and did not testify at trial.

### Recorded Jail Calls

In the weeks and months leading up to trial of the Anderson matter, the government reviewed countless recorded jail calls between defendant Anderson and his parents, sister and various others who were joined to the calls utilizing the Anderson family's 3-way calling feature. A review of these calls leaves no doubt that defendant Anderson is convinced that a conspiracy exists (or existed) involving members of the prosecution team, the RSRG law firm, member(s) of Capes Sokol (namely Arthur Margulis), and even this Court to manipulate, hide and/or destroy evidence in the Anderson matter.

Included herein are excerpts from a small fraction of the calls between defendant Anderson and his family and others.   These excerpts clearly reveal defendant Anderson's true

motivation in seeking production of the **subject phone.**   It is abundantly and inescapably clear

that defendant Anderson seeks production of the **subject phone** (and/or records allegedly

associated with it), not because it contains information "material to his defense," or even

"relevant to defenses he has advanced in this case," but because he has embarked on a personal

vendetta against untold numbers of people associated with his criminal case. Among defendant

Anderson's targets are the members of the prosecution team, RSRG lawyers, DEA Special

Agents, this Court, and even Capes Sokol.

<u>July 13, 2017 – conversation between defendant Anderson and his mother</u>:

As trial of defendant Anderson's case loomed closer, he engaged in multiple conversations

with his family, during which he spoke of his near obsession with records associated with the

**subject phone.**   During one call, defendant Anderson informed his mother,

> Justin is getting ready to file that motion for the AT&T s**t which
> is really going to knock their noodles out of their heads.[1]

Defendant Anderson then directed his attention elsewhere, telling his mother,

> [y]ou see what kind of cowards and fa***ts they are…They talk the
> s**t from a distance.[2]

This conversation not only demonstrates defendant Anderson's preoccupation with the

**subject phone,** it provides a clear indication of the relationship between the **subject phone** and

defendant Anderson's personal vendetta against the prosecution team.

<u>July 13, 2017 – conversation between defendant Anderson, his parents and his sister</u>:

On the same date as the above-referenced call, defendant Anderson once again spoke

---

[1] Based upon context, it is clear that "Justin" is Justin Gelfand, defendant Anderson's lead trial counsel.   "That
AT&T s**t" is believed to be a reference to records associated with the **subject phone.**
[2] Based upon context, it is clear that "they" is a collective reference to members of the prosecution team.

with family members, venting his frustration about what he perceived as AT&T's failure to

comply with a previous subpoena.   This call, which occurred some 11 days prior to trial, reveals

defendant Anderson's anger that the government gave him "GPS s**t" relating to a *different*

cellular telephone that he maintained (bearing number 314-779-8314), but not the information

regarding the **subject phone** that he requested.

Defendant Anderson complained,

"I'm frustrated with this subpoena s**t.   It's a big deal."

Then, defendant Anderson expressed concern that this Court would not be receptive to his

complaints about the importance of the information regarding the **subject phone.**   Specifically,

defendant Anderson lamented,

> I'm concerned that this stupid b***h is gonna to say 'Oh it's doesn't
> matter.   Blah, blah, blah.'[3]

Defendant Anderson then seemingly suggested that the Court was in league with the

government, observing,

> The government didn't object to my bringing Saracino.   The court
> did.   The Court was like, 'Wait a minute, what's going on here?'
> Ya know what I mean?   That gives you an idea of what kind of
> f***ing idiot we're dealing with.[4]

Still later, defendant Anderson once again insisted, incorrectly, that the government was

engaged in wrongdoing:

> I'm telling you they are hiding T-III wiretaps….I know what they
> did and it is driving me f***ing insane.[5]

---

3 Based upon context, it is clear that in referring to the "stupid b***h," defendant Anderson was referring to this
Court.

4 Based upon context, it is clear that this vulgar insult was directed at the Court.

5 The government has always maintained – and maintains to this day – that there was NEVER a Title III wiretap (or
any other kind of wiretap) on the **subject phone.**

<u>October 10, 2017 – conversation between defendant Anderson and his mother</u>:

Even after defendant Anderson's conviction at trial, he continued his dogged pursuit of information related to the **subject phone.**   In an October 10, 2017 conversation, defendant Anderson's mother informed him that his sister [Rachel] was able to access his Apple account, but in order to obtain the information he sought, she would need the answers to three security questions that defendant Anderson would have established at the time he purchased the **subject phone.**   Defendant Anderson was attempting to circumvent AT&T's subpoena procedures by accessing his old Apple account in an attempt to pull stored information from the digital "cloud." Presumably, this is the same information defendant Anderson hopes to acquire by inspection of the **subject phone**.

During this same call, defendant Anderson's mother expressed her mistaken belief that this Court was involved in the prosecution of "CS#1," who was the focus of extensive pre-trial litigation in the instant case.   Defendant Anderson attempted to correct her, stating that he did not believe this Court was involved with CS#1's case.   In an attempt to convince her son otherwise, defendant Anderson's mother read aloud from a document that she had acquired from a source she refused to disclose. Specifically, defendant Anderson's mother read,

> Indictment returned in open court…to Judge Audrey G. Fleissig by the foreperson of the Grand Jury and referred to Magistrate Judge Medler as to [CS#1].[6]

In response, defendant Anderson stated,

> Save that…I want to give it to uhh, I want to give it to the special investigator.[7]

---

6 A cursory investigation revealed that defendant Anderson's mother was reading from the United States District Court, Eastern District of Missouri's official docket in the criminal case against CS#1.

7  Based upon context, as well as information gleaned from similar calls, the "special investigator" is believed to be

Later, defendant Anderson embarked on a rant, during which he made direct threats against numerous individuals associated with his investigation, prosecution, and conviction:

> I'm gonna f**k them up.  Don't worry. . . I just need to get this phone thing and then I'll be able to destroy all of them….Starting with Davis and then Fleissig.   All of them. Callahan, f***in' garden gnome, f***in'. . . that red head b***h.  All of them.  That fat b***h, Jenne, whatever her name is.[8]

Defendant Anderson continued to rail against the aforementioned, all of whom he believes have wronged him, until his father warned, "Stop talking about it!"

October 18, 2017 – conversation between defendant Anderson and his sister:

During a conversation with his sister on October 18, 2017, defendant Anderson revealed his belief that the government has destroyed the **subject phone**.   He stated that he had discussed the matter with trial counsel Justin Gelfand, who apparently expressed skepticism that the government would have done so.   In his attempt to convince his sister that the **subject phone** no longer existed, defendant Anderson leveled accusations against a member of his own defense team.   More specifically, he stated,

> I'll tell ya exactly what happened Rachel, as soon as they thought I was taking the plea, that f***ing jerk off Art is the first thing he did was destroy that phone.   I'm telling ya.[9]

---

an investigator with the Missouri State Bar's Office of Chief Disciplinary Counsel, whom defendant Anderson has contacted (or attempted to contact) on multiple occasions and who, according to other recorded telephone calls, has visited defendant Anderson in jail.

8 "Davis" is clearly a reference to the undersigned, who has been involved in the investigation of defendant Anderson longer than any others.   "Fleissig" is clearly a reference to this Court.   "Callahan" is clearly a reference to former United States Attorney Richard G. Callahan, who was personally involved in the prosecution of defendant Anderson.   "F***in' garden gnome" is believed to be a reference to Assistant United States Attorney Stephen Casey, who served as trial counsel for the government.   "That red head b***h" is believed to be a reference to Assistant United States Attorney Sirena Miller Wissler, who served as trial counsel for the government, and who has red hair.   "That fat b***h" refers to an unknown person.   "Jenne" is clearly a reference to DEA Special Agent Alex Jenne, who participated in the investigation of defendant Anderson.

9 "Art" is clearly a reference to Arthur Margulis, who served as a member of the defense team, although he did not participate in the jury trial.

Defendant Anderson's sister then expressed the opinion that if the **subject phone** had indeed been destroyed, those responsible would face repercussions.   Defendant Anderson agreed, stating,

> Yeah I know.   Concealing material evidence, oh my God, relating to an extortion?   And then prosecuted me?   Are you f***ing crazy?   You have any idea?   You might as well pretend I have the winning Powerball numbers because that's what that's worth.[10]

This comment lays bare defendant Anderson's true motivations in filing the instant motion(s) to compel.   Defendant Anderson seeks production of, and/or information pertaining to, the **subject phone,** not because it is relevant to any issue at trial, but in furtherance of his personal crusade against the prosecution team, investigating agents, and now even his own lawyers.   As if the above remark weren't sufficient evidence, defendant Anderson left no doubt whatsoever that no one is safe from his delusion. After expressing his frustration that his lawyers were afraid to file a complaint against a judge, defendant Anderson advised his sister that,

> [s]he is concealing evidence relating to an extortion because her relationship as the prior U.S. Attorney with John Davis.   So, I don't know what the f**k to say about that but it's pretty sick if you ask me.[11]

October 27, 2017 – conversation between Defendant Anderson and his mother:

Recently, telephone calls between defendant Anderson and his mother revealed that defendant Anderson has made contact with the National Legal Professional Associates. (NLPA) According to the NLPA's website, this organization is a team of researchers who provide

---

10 The **subject phone** has not been destroyed.   It remains in the possession of the United States Attorney's Office and is available for this Court's inspection at any time.
11 "She" is clearly a reference to this Court.   This Court previously served as United States Attorney for the Eastern District of Missouri.

research and consulting assistance to individual defendants or defendant's counsel in preparing

for trial, appeal or post-conviction relief matters.

During two calls to his mother on October 27, 2017, defendant Anderson's family

connected a third party to their call by way of a 3-way calling feature.   This third party, a male,

identified himself as a case manager of a law firm that defendant Anderson believes the NLPA

may have contacted regarding defendant Anderson's case.   The male specifically informed

defendant Anderson that he was **not** a lawyer.   He further advised that it did not appear that

NLPA had forwarded the firm any materials and that, as a result, he could not commit to the

firm's future involvement in defendant Anderson's case.   Notwithstanding these warnings,

defendant Anderson embarked on a roughly 26 minute explanation of his theory alleging

systemic corruption in and around his prosecution, which included his (erroneous) belief that the

government had acquired "illegal" precision location orders and/or wiretaps on the **subject**

**phone.**   The government will seek leave to play the call or otherwise introduce it into evidence.

Defendant Anderson explained to the unknown male that his counsel from RSRG

smuggled the **subject phone** into the Warren County Jail, allegedly knowing full well that

defendant Anderson intended to utilize the **subject** phone to arrange a drug transaction.

According to defendant Anderson, his RSRG lawyers acquiesced to this plan (if not suggested

it), because they required additional funds in order to represent him.   Defendant Anderson

explained,

> I called these people from the jail and I orchestrated the delivery of
> 100 pounds of marijuana from a federal detention facility under the
> direction of my attorney.   After I was done with that, and I sent a
> couple of text messages, I gave the phone back to my attorney.   He
> left the jail.   Twelve days passed before the phone was returned.   I
> called repeatedly, my family called repeatedly, they kept giving the

run around about it.[12]

Barely acknowledging that the **subject phone** contains evidence of his own criminal conduct, defendant Anderson then made the wholly unsubstantiated claim that the **subject phone** also contained evidence of illegal wiretaps, illegal GPS monitoring and prosecutorial misconduct. He offered no explanation for this claim and no supporting evidence.

### Availability of the Subject Phone

On May 18, 2017, the undersigned sent a letter to defense counsel in response to a request regarding the government's possible use of Stringray technology in this investigation.   In that letter, the government referenced one of defendant Anderson's pro se letters to the Court wherein defendant Anderson asserted, among other things, that (a) the government was withholding evidence, and; (b) the RSRG law firm had extorted (or attempted to extort) money from him.   Not surprisingly, these two claims closely mirror his asserted justification behind his Motion to Compel (Doc. 1068).   In that motion, defendant Anderson recalls that the **subject phone** was provided to the government in connection with pre-trial litigation regarding "conflicts of interest and Government misconduct."   Defendant Anderson fails to acknowledge that in its May 18, 2017 letter, the undersigned *invited defense counsel* – with or without their client present - to meet and discuss these matters.   Defense counsel did not avail themselves of this offer.   Yet now, days before sentencing, they ask this Court to compel the government to produce an item *that was not the source of any evidence admitted at trial.*

---

12  RSRG attorney Marc Johnson testified at a pre-trial hearing in the instant case. He admitted that he had provided defendant Anderson with the **subject phone** in the Warren County Jail. (Doc. 391, pp. 65, 69)   When asked whether defendant Anderson made any calls using the **subject phone**, Johnson testified, "I'm not sure.   He put the phone up to his ear. I'm not sure if he spoke with anyone or not."   (Doc. 391, p. 69).

### Argument

In support of his Motion to Compel production of the **subject phone** (Doc. 1068), defendant Anderson suggests that production is required pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and/or *Giglio v. United States*, 405 U.S. 150 (1972), alleging that it contains evidence that it is exculpatory and/or impeaching.   Defendant Anderson fails to elaborate and includes no description of the evidence believed to be contained within the **subject phone**, much less how that evidence is exculpatory or impeaching.   In point of fact, assuming, *arguendo*, that defendant Anderson's claims are true, the **subject phone** contains highly **inculpatory** information.   It would be difficult to conceive of evidence more damaging to a defendant facing trial in a drug trafficking case than evidence demonstrating that he orchestrated a drug transaction using a smuggled cellular telephone while incarcerated in a federal detention facility.   Moreover, to the extent that defendant Anderson suggests that the **subject phone** contains impeaching information, the only person against whom that **subject phone** could possibly be used as impeachment is Brian Hounsom, who did not testify at trial.   Defendant Anderson's claim that the **subject phone** contains exculpatory or impeaching information is frivolous.   As a result, he is not entitled to inspect it (although it does exist).

Moreover, in support of his second Motion to Compel wire/electronic communications and GPS data related to the **subject phone** (Doc. 1074), defendant Anderson cites to testimony of hearings and Grand Jury testimony which, in his mind, supports the notion that such information exists and that the government is hiding it.   This testimony, attached to defendant Anderson's *pro se* motion, does no such thing.   While it is true that the cited testimony does include a discussion of a cellular phone belonging to defendant Anderson, it was not the **subject phone.**   The phone

to which Special Agent Moles and Special Agent Jenne were referring in their testimony bore telephone number 314-779-8314.  The government *did* obtain a PLI warrant for GPS data for telephone number 314-779-8314 on July 17, 2014.  Those documents were produced to defense counsel prior to trial (4:14MJ7140 SPM).  Special Agent Moles testified before the Grand Jury in July 2014 that "pings" obtained from 314-779-8314 – not "pings" from the **subject phone** – placed the device in the Monterey, California area.  Later, at defendant Anderson's detention hearing before United States Magistrate Judge Shirley P. Mensah, Special Agent Alex Jenne gave testimony that was substantially similar, referencing 314-779-8314 and *not* the **subject phone**.

Defendant Anderson's reliance on statements made by AUSA James Delworth is similarly misplaced. When AUSA Delworth reported to United States Magistrate Judge Nannette Baker that there were no records for the **subject phone**, that statement was entirely true and not at all inconsistent with the prior testimony of SA Moles or SA Jenne.   In the throes of his obsession and in an effort to pursue his personal vendetta against the government, defendant Anderson has conflated two entirely different phones and now attempts to manipulate this Court into believing that the government, his attorneys, and even AT&T have engaged in misconduct.   It is abundantly clear that defendant Anderson's entire theory is based upon a faulty premise.  The records for which he seeks to compel production simply do not exist.  As a result, his motion to compel AT&T is frivolous.

**<u>Conclusion</u>**

It is unclear to the government as to whether defendant Anderson intends to pursue one or both or the pending motions to compel (or perhaps neither).   To the extent that he intends to pursue the Motion to Compel production of the **subject phone** (Doc. 1068), his motion is

factually and legally baseless and should be denied.   To the extent that he intends to pursue the

Motion to Compel AT&T to provide data related to the **subject phone** (Doc. 1074), the motion

should be denied as moot, inasmuch as the requested records have either already been provided

or do not exist.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*s/ John T Davis*
John T Davis, #40915MO
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of November 2017, the foregoing was filed electronically with the Clerk of the Court, UNDER SEAL, and was provided via electronic mail to counsel of record.

*s/ John T Davis*
Assistant United States Attorney