UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:14CR246 AGF (NAB) |
| | ) |
| THOMAS GREGORY ANDERSON, Jr., | ) |
| | ) |
| Defendants. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
OBJECTIONS TO PRESENTECE INVESTIGATION REPORT**

Comes now the United States of America by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri and John T Davis, Assistant United States Attorney for said District, and responds to Defendant's Objections to Presentence Investigation Report [Doc. 1067] as follows:

**Introduction**

By counsel's own admission, defendant Thomas Anderson's objections to the Presentence Investigation Report are "extensive."   However, at the conclusion of defendant's objections, counsel classifies them in five (5) summary categories: (1) the quantity of marijuana attributable to Anderson; (2) role enhancement; (3) gun enhancement; (4) use of violence enhancement; and (5) inclusion of facts regarding the Kienstra conspiracy in the Anderson Presentence Report.

**Quantity of marijuana attributable to Defendant Anderson**

The final Presentence Investigation Report contains an addendum to paragraph 71 that amends the amount of marijuana attributable to defendant Anderson from between 3,000 and

1

10,000 kilograms to between 1,000 and 3,000 kilograms.   The government concurs with this amendment.   A jury specifically convicted defendant Anderson – beyond a reasonable doubt - of conspiracy to distribute in excess of 1,000 kilograms of marijuana.   The addendum to the Presentence Investigation Report thus appears to moot defendant's objection regarding the quantity of marijuana attributable to him.   As a result, the final Presentence Investigation Report correctly adjusts defendant Anderson's base offense level, including the other Chapter 2 enhancements (firearm and threat or use of violence), from level 36 to level 34.

### Role Enhancement

Defendant Anderson next objects, without argument, to the imposition of a four level enhancement pursuant to Section 3B1.1(a).   Defendant Anderson provides no legal basis for his objection, stating only that in his view, "this enhancement is not warranted by the evidence presented at trial."   (Doc. #1067, p. 7).

United States Sentencing Guidelines Section 3B1.1(a) provides that if a defendant was an organizer or leader in any criminal activity that involved five or more persons, or if his participation was otherwise extensive, four levels should be added to his Base Offense Level. The Government bears the burden of proving, by a preponderance of the evidence, that the two-level enhancement pursuant to Section 3B1.1(c) is warranted.   United States v. Ortiz-Rodriguez, 461 Fed. Appx. 525, 537 (8th Cir. 2012).

The government freely concedes that,

> [m]erely distributing or selling drugs is not sufficient for the enhancement.   Nonetheless, [the Court] define[s] "organizer" and "leader" broadly and "manager" and "supervisor" quite liberally. In fact, defendants are subject to this enhancement even where they manage or supervise only one other participant in the conspiracy. Furthermore, the enhancement "may apply even if the

2

> management activity was limited to a single transaction." The defendant[s] must direct or enlist the aid of others. [W]e have always required evidence that the defendant directed or procured the aid of underlings.
>
> Additionally, [the Court] ha[s] never construed the terms ... so narrowly as to restrict application of the enhancement solely to the organizer who first instigated the criminal activity. In fact, the defendant need not be the only leader or organizer, and the defendant need not lead or organize all of the participants. Finally, we have previously rejected a defendant's contention that others helped him in furtherance of the conspiracy sua sponte and without coordination where it was clear that the defendant was the "driving force" behind the crime.
>
> The key factors in this analysis are control and organization. However, the enhancement may apply despite the record being scant on the degree of control and decision-making authority, for these are merely two factors that we consider. In fact, "a defendant's control over another participant is sufficient but not necessary for a § 3B1.1(b) enhancement."

United States v. Irlmeier, 750 F.3d 759, 763–64 (8th Cir. 2014)(internal citations and quotations omitted).

In the instant case, evidence abounds that defendant Anderson exercised decision-making authority over other members of the conspiracy, and that he "procured the aid of underlings." The Court will likely recall the testimony of numerous co-conspirators who testified that they became involved in the conspiracy at the behest of defendant Anderson (e.g. Brian Lord, Kim Rohlfing, Travis Champ, Lee Perkins).  These witnesses testified, in summary, that defendant Anderson scouted and selected sources of supply, orchestrated the timing (and at least to some extent, the method) of transportation of loads of marijuana, and recruited and paid couriers to transport marijuana and/or the proceeds of the sale of marijuana.  This evidence is more than sufficient to establish by a preponderance of the evidence that defendant Anderson occupied a

3

position as an organizer or leader of criminal activity that involved five or more persons. As a result, the enhancement is appropriate and defendant Anderson's objection should be overruled.

### Use of violence enhancement

Defendant Anderson is subject to a two-level enhancement "[i]f the defendant used violence, made a credible threat to use violence, or directed the use of violence." U.S.S.G. § 2D1.1(b)(2). "Application of sentencing enhancements must be supported by a preponderance of the evidence, and the government has the burden to prove the factual basis for an enhancement." United States v. Mitchell, 825 F.3d 422, 425 (8th Cir. 2016), cert. denied, 137 S. Ct. 687, 196 L. Ed. 2d 567 (2017).

In United States v. Sykes, 854 F.3d 457, 460–61 (8th Cir.), cert. denied, 138 S. Ct. 346 (2017), and cert. denied, 138 S. Ct. 367 (2017), the United States Court of Appeals for the Eighth Circuit affirmed the application of Section 2D1.1(b)(2) where a detective testified at sentencing that person acting as a confidential source, "CS,"

> reported that, at a meeting with [defendant] at an automotive shop, [defendant] said he was going to find and shoot an individual who allegedly stole cocaine base from one of [defendant's] customers. When [defendant] made this threat, the CS reported, [defendant] had a .45 caliber pistol with a black handle and gray slide, and an unnamed passenger in [defendant's] vehicle had an all-chrome .380 caliber pistol. Second, the day after officers executed the search warrants, a "frantic" and "obviously excited" CS reported that [defendant] threatened the CS with a firearm. The CS said he met with [defendant] at a barbershop and, there, [defendant] accused the CS of stealing cocaine base and cash. The CS reported that [defendant] told the CS he had "some hours" to return the items before [defendant] began killing the CS's family members and that [defendant] then lifted up the front of his shirt, revealing a black pistol. And, third, the CS reported an altercation with [defendant] shortly after the barbershop incident. Specifically, the CS said [defendant] pulled out into an intersection to stop the CS's vehicle from moving; the CS exited his vehicle; and [defendant]

4

and the CS got into a fistfight in the middle of the street.

Id.

On appeal, defendant Sykes argued that the information provided by CS was uncorroborated and not credible, and that the District Court had erred in relying upon it to justify the application of a Section 2D1.1(b)(2) enhancement. Importantly, CS did not testify at Sykes' sentencing. Rather, an investigator testified as to information relayed to him by CS. Nevertheless, the Eighth Circuit Court of Appeals had no difficulty concluding that there was "no error in the district court's application of the enhancement for 'us[ing] violence' or 'mak[ing] a credible threat to use violence.'" Id. at 461.

In the instant case, this Court need not rely on second-hand information to conclude that the enhancement under Section 2D1.1(b)(2) is warranted. The Court will no doubt recall the memorable testimony of Mitchell Hughes, a/k/a "Bigg," who testified that during the course of the charged conspiracy, defendant Anderson hired and paid him to travel to California to assault Kyle Kienstra. Hughes testified that he did, in fact, travel to California with another man, "Conflict," and located Kienstra at a resort hotel. According to Hughes, at Anderson's direction, he and "Conflict" lay in wait for Kienstra to return. When he did, Hughes and "Conflict" ambushed Kienstra, striking him repeatedly in the face and head. Hughes testified that the assault continued until defendant Anderson indicated, "that's enough."

Defendant Anderson redundantly urges, without elaboration or argument, that this "Court should not credit Hughes' credibility." (Doc. #1067, p. 3). This Court is in perhaps the best position to evaluate Hughes' testimony, and to determine whether such testimony demonstrates, by a preponderance of the evidence, that defendant Anderson "directed the use of violence"

5

during the course of the charged conspiracy. As the Court likely recalls, Hughes was almost refreshing in his candor; on at least one occasion, he inadvertently used an obscenity while testifying. Perhaps most compellingly, Hughes' story was corroborated by airline records (admitted as exhibits) reflecting defendant Anderson's purchase of airline tickets in the names of Hughes and his companion. The government submits that Hughes' story was not only credible, but it provided more than ample evidence that defendant Anderson directed Hughes to utilize force against Kyle Kienstra.

As if Hughes' testimony were not sufficient, defendant Anderson wholly fails to acknowledge that *his own witness*, Michael Saracino, corroborated Hughes' story. Saracino testified that Kyle Kienstra once reported to him that defendant Anderson had sent someone to assault Kienstra. Although Saracino denied that Kienstra appeared beaten at the time of the conversation, Saracino also testified that he could not recall when the conversation with Keinstra had occurred, nor could he recall many of the details. In fact, Saracino testified – incorrectly – that Keinstra reported having been assaulted in Boston when, in reality, he had been assaulted in California. Defendant Anderson does not so much as mention Michael Saracino's testimony in launching his objection to the Section 2D1.1(b)(2) enhancement.

The testimony of Mitchell Hughes, corroborated by business records and by the testimony of Michael Saracino, demonstrates by a preponderance of the evidence that defendant Anderson "directed the use of violence" during the course of the conspiracy for which he has been convicted. As a result, the enhancement pursuant to Section 2D1.1(b)(2) was properly applied, and defendant Anderson's objection to the same should be overruled.

6

**Firearm enhancement**

Defendant Anderson next objects to the 2 level firearm enhancement pursuant to USSG §2D1.1(b)(1), denying that he possessed a firearm.  However, as the Court will recall, co-defendant Brian Lord testified before this Court at the December 12, 2014 detention hearing. Specifically, Lord testified regarding an encounter wherein he witnessed defendant Anderson confront Steve Ballard with a handgun.  Lord testified that over the 2011 Memorial Day weekend, several co-conspirators were in town from Boston and were together drinking at the Horizon Nightclub in downtown St. Louis.  Lord observed Anderson, armed with dual holstered Glock handguns, approach Ballard and discreetly point one of the handguns at Ballard and have words with him.  Lord testified that he later asked Anderson about the incident and Anderson advised that he told Ballard to stay away from his family.

At the same hearing, Brian Lord also testified concerning an October 2012 wiretap recording wherein defendant Anderson telephoned Lord from Boston and offered Lord $5,000 if he would drive his pistols and assault rifle to him.

Lastly, at trial the government introduced two assault rifles that were seized during the execution of a search warrant at the 4749 East Concord residence belonging to defendant Anderson's parents.  Testimony concerning those weapons revealed that they were located in what appeared to be defendant Anderson's sleeping quarters and very close to the bed.  There is overwhelming evidence that defendant Anderson possessed firearms in connection with the offense for which he was convicted.  As a result, the enhancement pursuant to §2D1.1(b)(1) was properly applied, and defendant Anderson's objection to the same should be overruled.

**Facts regarding the Kienstra conspiracy**

Defendant Anderson last objects to the inclusion in the Anderson Presentence Investigation Report of details concerning co-conspirators in the Kienstra Drug Trafficking Organization that, as the Court is well aware, is loosely related to the Anderson Drug Trafficking Organization. (DTO)   While it is important to note the Presentence Investigation Report is not prepared by the United States Attorney's Office, the information used by the Probation Officer in writing the report is generally supplied to the preparer by the U.S. Attorney's Office.   In this case, the discovery supplied contained information regarding both DTO's as the investigation initially began as a single endeavor.

However, the government does not seek to hold defendant Anderson accountable for any marijuana or criminal actions attributable to the Kienstra DTO.   In fact, with the concession that the correct amount of marijuana attributable to defendant Anderson is between 1,000 and 3,000 kilograms, this issue becomes moot.   The government concurs with the addendum to the final Presentence Investigation Report in that having heard the evidence at trial, the Court will ultimately determine if the information presented in the Offense Conduct portion of the Report clearly outlines the scope of the Anderson conspiracy.

For the foregoing reasons, the United States respectfully requests the Defendant's Objections to the Presentence Investigation Report be overruled.

                                      Respectfully submitted,

                                      JEFFREY B. JENSEN
                                      United States Attorney

                                      *s/ John T Davis*
                                      John T Davis, #40915MO
                                      Assistant United States Attorney
                                      111 South 10th Street, 20th Floor
                                      St. Louis, MO 63102

## CERTIFICATE OF SERVICE

I hereby certify that on _____, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Courts electronic filing system upon all counsel of record.

                                      *s/ John T Davis*
                                      Assistant United States Attorney