UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CR246 AGF (NAB) |
| | ) | |
| THOMAS GREGORY ANDERSON, Jr., | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING
MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**

Comes now the United States of America by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri and John T Davis, Assistant United States Attorney for said District, and responds to Defendant's Sentencing Memorandum and Motion for Downward Variance [Doc. 1094] as follows:

**I.     Background**

On August 2, 2017, following an eight day trial, a jury found defendant Thomas Anderson, Jr. guilty of two counts: (1) conspiracy to distribute and to possess with the intent to distribute 1,000 kilograms or more of marijuana in violation of Title 21, United States Code, §§841(a)(1) and 846; and (2) conspiracy to commit money laundering in violation of Title 18, United States Code, §§1956(h) and 1956(a)(1).   Sentencing is currently scheduled for Friday, January 12, 2018.

**II.     Legal Standard**

The government concurs with the defendant's Sentencing Memorandum's recitation of the proper legal standard to be applied pursuant to Title 18, United States Code, §3553 in regards

1

to the sentence to be imposed.

### III. Guideline Computations

The government concurs with the final Presentence Investigation Report's conclusion that the total offense level is 40.  This result is achieved beginning with the base offense level for the amount of marijuana attributable to the defendant, then adding levels (as discussed below) for the possession of a firearm, and use of violence or directing the use of violence that, pursuant to USSG §2D1.1.  These preliminary calculations, taken together, lead to a base offense level of 34.  Two levels are then added pursuant to USSG §2S1.1(b)(2)(B), as the defendant was convicted under Title 18, United States Code, §1956, increasing the offense level to 36.  Finally, four more levels are added pursuant to USSG §3B1.1(a) as the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.  Combining all of these elements and their assigned levels, the Total Offense Level is 40. In support of this guideline calculation, the government states as follows:

### A. Possession of a firearm - 2 level enhancement pursuant to USSG §2D1.1(b)(1)

On December 12, 2014, this Court presided over Thomas Anderson's detention hearing wherein co-defendant Brian Lord testified regarding an encounter wherein he witnessed Defendant Anderson confront Steve Ballard with a handgun.  Lord testified that over the 2011 Memorial Day weekend, several co-conspirators from Boston and St. Louis were together drinking at the Horizon Nightclub in downtown St. Louis.  Lord observed Anderson, armed with dual holstered Glock handguns, approach Ballard and discreetly point one of the handguns at Ballard and have words with him.  Lord testified that he later asked Anderson about the incident and Anderson advised that he told Ballard to stay away from his family.

At the same hearing, Brian Lord also testified concerning an October 2012 wiretap recording wherein defendant Anderson telephoned Lord from Boston and offered Lord $5,000 if he would drive his pistols and assault rifle to him.

Following the detention hearing, this Court's denied defendant Anderson's motion to revoke the earlier detention order of the Magistrate Judge and in its Order Denying Motion To Revoke The Detention Order Of The Magistrate Judge [Doc. 249] stated:

> [f]urther, based on all of the testimony, there is uncontroverted evidence that Defendant owned multiple firearms, including two Glock pistols, that he sometimes carried in a dual holster under his jacket. At times he also carried a firearm on his person while he was drinking. In 2011, Defendant threatened an individual in a nightclub by surreptitiously pointing his Glock at him and warning him to stay away from his (Defendant's) family. And in October, 2012, in a telephone call intercepted through the Government's wiretap, Defendant offered to pay a co-Defendant $5000 to transport his firearms to him in Boston.

[Doc. 249 page 6]

Further, at trial the government introduced two assault style rifles seized during the execution of a search warrant at the 4749 East Concord residence belonging to defendant Anderson's parents. Testimony concerning those weapons showed that they were in what appeared to be defendant Anderson's sleeping quarters and very close to the bed.

There exists abundant evidence to support the two level enhancement pursuant to §2D1.1(b)(1).

### B. <u>Use or directing the use of violence</u> – 2 level enhancement pursuant to 2D1.1(b)(2)

Following the aforementioned December 12, 2014 detention hearing before this Court,

3

the Court also made findings as to defendant Anderson's use, or directing use, of violence in conjunction with this offense. Specifically, this Court found:

> based on credible evidence that in 2009-2011, while the conspiracy was on-going, Defendant hired a bodyguard, and that in 2010 or 2011 Defendant paid that individual $5000 and expenses to fly to California, with an another individual (who was also paid in cash), to threaten and rough up an "associate" of Defendant's who was also involved in the drug trade and who has been indicted separately. Defendant brought the associate to the room where the assault occurred, was present during the assault, and concluded the incident by threatening the associate with even more serious harm or death.

[Doc. 249 page 6]

At trial, the testimony and evidence that supported this finding was repeated by Mitchell Hughes, a/k/a "Bigg," who testified that during the course of the charged conspiracy, defendant Anderson hired and paid him to travel to California to assault Kyle Kienstra. Hughes testified that he did, in fact, travel to California with another man, "Conflict," and located Kienstra at a resort hotel. According to Hughes, at Anderson's direction, he and "Conflict" lay in wait for Kienstra to return. When he did, Hughes and "Conflict" ambushed him, striking him repeatedly in the face and head. Hughes testified that the assault continued until defendant Anderson indicated, "that's enough."

In addition, Hughes' testimony was corroborated by airline records (admitted as exhibits) reflecting defendant Anderson's purchase of airline tickets in the names of Hughes and his companion. The airline ticket exhibits bear the names of the passengers and an email address subscribed to Thomas Anderson. There is more than ample evidence that defendant Anderson directed Hughes to utilize force against Kyle Kienstra.

The testimony of Mitchell Hughes, corroborated by business records, demonstrates by a preponderance of the evidence that defendant Anderson "directed the use of violence" during the course of the conspiracy for which he has been convicted. As a result, the enhancement pursuant to Section 2D1.1(b)(2) was properly applied.

**C. Organizer/Leader Enhancement – 4 level enhancement pursuant to 3B1.1(a)**

Based on testimony adduced at trial, evidence abounds that defendant Anderson exercised decision-making authority over other members of the conspiracy, and that he "procured the aid of underlings." The Court will likely recall the testimony of numerous co-conspirators who testified that they became involved in the conspiracy at the behest of defendant Anderson (e.g. Brian Lord, Kim Rohlfing, Travis Champ, Lee Perkins). These witnesses testified, in summary, that defendant Anderson scouted and selected sources of supply, orchestrated the timing (and at least to some extent, the method) of transportation of loads of marijuana, and recruited and paid couriers to transport marijuana and/or the proceeds of the sale of marijuana.

Defendant Anderson suggests that co-defendant Natale is, in fact, *the* organizer and leader of this conspiracy. However, co-defendant Natale, unlike defendant Anderson, was just one of multiple sources of marijuana supply that Anderson utilized to supply the marijuana distribution organization that he oversaw. The evidence and testimony is more than sufficient to establish by a preponderance of the evidence that defendant Anderson occupied a position as an organizer or leader of criminal activity that involved five or more persons. As a result, the four level enhancement is appropriate.

5

## IV. Downward Variance

As stated in the final Presentence Investigation Report and as defended herein and in the Government's response to defendant Anderson's objections to the Presentence Investigation Report, the correct Guidelines calculation is 292 to 365. A downward variance from the Guidelines computations for Defendant Anderson is not warranted.

### A. Sentences of other related parties

Defendant Anderson states that the even the mandatory minimum 120 month sentence as required by statute is significantly longer than any related party's sentence in this matter. However, of the 25 co-defendants and related co-defendants as reported in the Presentence Investigation Report, defendant Anderson was the only one who elected to proceed to trial. To compare himself with those co-conspirators is disingenuous. While some of the co-defendants may have received leadership, violence and/or weapon possession adjustments, by virtue of their pleas, all of them received acceptance of responsibility adjustments. To compare defendant Anderson, who clearly is the architect of a massive marijuana distribution organization and who for years lavishly enjoyed the ill-gotten financial gains in innumerable ways, to any of the co-defendants is absurd. Defendant Anderson squandered the profits of his criminal organization in such a way as to truly be a standout among his co-conspirators, marijuana customers and law-abiding citizens.

With absolutely no verified employment, and no history of employment, virtually no education or ownership of property in the Eastern District of Missouri or elsewhere, defendant Anderson lived an extravagant lifestyle during the course of his extensive drug trafficking

operation.  As reflected in his Pretrial Services Report, defendant Anderson has enjoyed extended stays in Cancun, Mexico (two different times); United Arab Emirates; Medellin, Columbia; and Sao Paolo, Brazil; along with Boston, Los Angeles and St. Louis.  Testimony and evidence at trial and other hearings further established that defendant Anderson availed himself of a lifestyle of luxury.  Examples include extravagant hotel suites, extensive international and domestic travel, incredible shopping sprees as reflected by his Nordstrom credit card records, multiple trips a month to Las Vegas and the expenditure of large sums of cash for gambling, bodyguards, tour buses and a private aircraft.  All while his co-conspirators, who have accepted responsibility for their actions and with whom he now wishes to compare himself, labored to keep the conspiracy afloat in a much less extravagant, if not routine, fashion.

In short, defendant Anderson is in no way even remotely close in culpability, responsibility or accountability as any of the co-conspirators.  In addition, each previously sentenced co-conspirator brought to his or her own sentencing hearing a set of facts unique to only that person.  Defendant Anderson should be judged and punished based on his own unique set of circumstances notwithstanding the well-reasoned and justified sentences of the others.

### B. **Defendant Anderson was harmed by conduct of prior counsel and the United States Attorney's Office**

Defendant Anderson appears to state in his Presentence Memorandum that in Doc. 602 *this* Court adopted a portion of Judge Baker's findings in Doc. 483 that "the case presented 'some troubling ethical issues[.]'" (emphasis added)  However, *this* Court did not make such a finding in its review of Judge Baker R&R.

To the contrary, this Court found "no factual support for Defendant's contentions in his

7

motion to dismiss that "the Government simply decided to look the other way and capitalize on the fact that Anderson lacked effective assistance of counsel." (Doc. No. 315 at 11.) Further, although Davis did not have a recollection of raising the potential conflict with Schwartz, or even recall Nuspl's proffer, Schwartz recalls that Davis did raise the issue with him at some point. Schwartz, in turn, raised the issue with Nuspl, who wanted Schwartz to continue to represent him, and waived any conflict." [Doc. 602]

Defendant's extensively litigated pre-trial motions have been repeatedly denied.   No harm or prejudice befell defendant Anderson.   A downward variance for perceived harm that has never been shown or proven is undeserved.

THEREFORE, the United States respectfully requests the Defendant's Motion For Downward Variance be denied and the defendant be sentenced within the established Guidelines range.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*s/ John T Davis*
John T Davis, #40915MO
Assistant United States Attorney
111 South 10th Street, 20th Floor
St. Louis, MO 63102

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2017, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Courts electronic filing system upon all counsel of record.

*s/ John T Davis*
Assistant United States Attorney

8